# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**ALTRIA CLIENT SERVICES LLC** and
**U.S. SMOKELESS TOBACCO COMPANY LLC,**

                Plaintiffs,

v.

**R.J. REYNOLDS VAPOR COMPANY**,

                Defendant.

Civil Action No: 20-CV-472

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR PATENT INFRINGEMENT

Brian E. Ferguson *
Robert T. Vlasis III *
W. Sutton Ansley *
Stephen P. Bosco *
Stephanie Adamakos *
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Tel:  (202) 682-7000

Adrian C. Percer *
Robert S. Magee *
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel:  (650) 802-3000

Robert C. Van Arnam
N.C. Bar No. 28838
Andrew R. Shores
N.C. Bar. No. 46600
WILLIAMS MULLEN
301 Fayetteville Street
Suite 1700
Raleigh, NC 27601
Tel:  (919) 981-4000

Elizabeth S. Weiswasser *
Anish R. Desai *
WEIL, GOTSHAL & MANGES LLP
767 5th Avenue
New York, NY 10153
Tel:  (212) 310-8000

*Counsel for Plaintiffs Altria Client
Services LLC and U.S. Smokeless Tobacco
Company LLC.*

*\* Special Appearance Under Local Rule
83.1(d) in process*

For their Complaint against Defendant R.J. Reynolds Vapor Company ("Reynolds Vapor" or "Defendant"), Plaintiffs Altria Client Services LLC and U.S. Smokeless Tobacco Company LLC (collectively, "Altria" or "Plaintiffs") allege as follows:

## NATURE OF THE ACTION

1.    This is an action for infringement of United States Patent Nos. 7,798,319; 8,458,996; 8,556,070; 10,143,242; 10,264,824; 10,299,517; 10,485,269; 10,492,541; and 10,588,357 (collectively, "the Asserted Patents") under the United States Patent Laws, 35 U.S.C. § 100 *et seq*.

2.    Altria brings this action against Reynolds Vapor because of its systematic infringement of Altria's valuable patent rights.  As explained herein, Reynolds Vapor products, including its "VUSE" e-vapor line and its "VELO" smokeless pouches, infringe claims in one or more of the Asserted Patents. Reynolds Vapor is aware of Altria's valuable patents and nonetheless has infringed and continues to infringe them. As such, Reynolds Vapor is liable to Altria for monetary damages as a result of its infringement.

## THE PARTIES

3.    Plaintiff Altria Client Services LLC is a Virginia corporation with its principal place of business located at 6601 West Broad Street, Richmond, Virginia 23230.

4.    Plaintiff U.S. Smokeless Tobacco Company LLC is a Virginia corporation with its principal place of business located at 6601 West Broad Street, Richmond, Virginia 23230.

5.      Defendant Reynolds Vapor is a North Carolina corporation with its principal place of business located at 401 North Main Street, Winston-Salem, North Carolina 27101.

6.      Upon information and belief, Reynolds Vapor is a wholly-owned subsidiary of Reynolds American Inc., which in turn is a wholly-owned subsidiary of British American Tobacco plc, a publicly-traded company on the London Stock Exchange headquartered in London, England.

## JURISDICTION AND VENUE

7.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has personal jurisdiction over Reynolds Vapor because it is incorporated in North Carolina and has its principal place of business located in this District. Personal jurisdiction is also proper because Reynolds Vapor has committed infringing acts within this District.

9.      Venue is proper in this District under 28 U.S.C. § 1400(b) because Reynolds Vapor resides in this District and has its principal place of business in this District, and because Reynolds Vapor has a regular and established place of business in this District and has committed infringing acts within this District.

2

## THE ASSERTED PATENTS

10. On September 21, 2010, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,798,319, entitled "Container Device for Tobacco Articles" ("the 319 Patent"). A true and accurate copy of the 319 Patent is attached as Exhibit A.

11. U.S. Smokeless Tobacco Company LLC is the owner by assignment of all right, title, and interest in and to the 319 Patent, including the right to sue for and collect past damages.

12. The 319 Patent is valid and enforceable.

13. On June 11, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,458,996, entitled "Container Device for Tobacco Articles" ("the 996 Patent"). A true and accurate copy of the 996 Patent is attached as Exhibit B.

14. U.S. Smokeless Tobacco Company LLC is the owner by assignment of all right, title, and interest in and to the 996 Patent, including the right to sue for and collect past damages.

15. The 996 Patent is valid and enforceable.

16. On October 15, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,556,070, entitled "Container Device for Tobacco Articles" ("the 070 Patent"). A true and accurate copy of the 070 Patent is attached as Exhibit C.

17.     U.S. Smokeless Tobacco Company LLC is the owner by assignment of all right, title, and interest in and to the 070 Patent, including the right to sue for and collect past damages.

18.     The 070 Patent is valid and enforceable.

19.     On December 4, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,143,242, entitled "Cartomizer Flavor Enhancement" ("the 242 Patent"). A true and accurate copy of the 242 Patent is attached as Exhibit D.

20.     Altria Client Services LLC is the owner by assignment of all right, title, and interest in and to the 242 Patent, including the right to sue for and collect past damages.

21.     The 242 Patent is valid and enforceable.

22.     On April 23, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,264,824, entitled "Cartridge Assembly for an Electronic Vaping Device" ("the 824 Patent"). A true and accurate copy of the 824 Patent is attached as Exhibit E.

23.     Altria Client Services LLC is the owner by assignment of all right, title, and interest in and to the 824 Patent, including the right to sue for and collect past damages.

24.     The 824 Patent is valid and enforceable.

25.     On May 28, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,299,517, entitled "Pod Assembly, Dispensing Body,

4

and E-Vapor Apparatus Including the Same" ("the 517 Patent"). A true and accurate copy of the 517 Patent is attached as Exhibit F.

26. Altria Client Services LLC is the owner by assignment of all right, title, and interest in and to the 517 Patent, including the right to sue for and collect past damages.

27. The 517 Patent is valid and enforceable.

28. On November 26, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,485,269, entitled "Pod Assembly, Dispensing Body, and E-Vapor Apparatus Including the Same" ("the 269 Patent"). A true and accurate copy of the 269 Patent is attached as Exhibit G.

29. Altria Client Services LLC is the owner by assignment of all right, title, and interest in and to the 269 Patent, including the right to sue for and collect past damages.

30. The 269 Patent is valid and enforceable.

31. On December 3, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,492,541, entitled "Pod Assembly, Dispensing Body, and E-Vapor Apparatus Including the Same" ("the 541 Patent"). A true and accurate copy of the 541 Patent is attached as Exhibit H.

32. Altria Client Services LLC is the owner by assignment of all right, title, and interest in and to the 541 Patent, including the right to sue for and collect past damages.

33. The 541 Patent is valid and enforceable.

34. On March 17, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,588,357, entitled "Pod Assembly, Dispensing

Body, and E-Vapor Apparatus Including the Same" ("the 357 Patent"). A true and accurate copy of the 357 Patent is attached as Exhibit I.

35. Altria Client Services LLC is the owner by assignment of all right, title, and interest in and to the 357 Patent, including the right to sue for and collect past damages.

36. The 357 Patent is valid and enforceable.

## REYNOLDS VAPOR'S INFRINGING VUSE E-VAPOR PRODUCTS

37. Upon information and belief, Reynolds Vapor designs, manufactures, imports, offers for sale, and sells battery-powered e-vapor devices and associated liquid-filled inserts marketed under the name "VUSE" (collectively, "the Accused VUSE Vapor Products") in the U.S. *See https://vusevapor.com.* The acts of making, using, selling, and offering for sale the Accused VUSE Vapor Products in the U.S., and the act of importing the same into the U.S., constitute infringement of some of the Asserted Patents as detailed in the Counts below.

38. There are at least two models of the Accused VUSE Vapor Products that infringe one or more of the Asserted Patents, as described in detail in the below Counts. The two models and associated "Flavor Packs" (which Reynolds Vapor also refers to as "cartridges," "tanks," and "pods") are the following: (a) the VUSE ALTO Power Unit and associated liquid-filled "Flavor Pack" pods ("the Accused VUSE ALTO Products"); and (b) the VUSE VIBE Power Unit and associated liquid-filled "Flavor Pack" tanks ("the Accused VUSE VIBE Products"). The Accused VUSE Vapor Products are described in more detail in the following paragraphs.

39.     The Accused VUSE ALTO Products are shown below:






*Accused VUSE ALTO Power Unit, Flavor Pack Pods, and Packaging*

40.     The VUSE ALTO Power Unit is charged through a USB connector that is provided in the Power Unit kit.  Reynolds Vapor markets and sells the VUSE ALTO in a "Complete Kit" containing a "Power Unit," USB charger, and one or more "Flavor Pack" pods.  Reynolds Vapor also markets and sells the VUSE ALTO Power Unit and USB charger without any Flavor Pack pods.  The Flavor Pack pods are also sold separately, for

example, in packages containing two Flavor Pack pods.  The Flavor Pack pods currently available for purchase and use with the VUSE ALTO Power Unit include "Menthol," "Golden Tobacco," and "Rich Tobacco" flavors.  The Flavor Pack pods are also sold with different levels of nicotine (e.g., 1.8%, 2.4%, or 5%).

    41.    The Accused VUSE VIBE Products are shown below:



*Accused VUSE VIBE Power Unit, Flavor Pack Tanks, and Packaging*

    42.    The VUSE VIBE Power Unit is charged through a USB connector that is provided in the power unit kit.  Reynolds Vapor markets and sells the VUSE VIBE in a "Complete Kit" containing a "Power Unit," USB charger, and one or more "Flavor Pack"

tanks.  Reynolds Vapor also markets and sells the VUSE VIBE Power Unit and USB charger without any Flavor Pack tanks.  The Flavor Pack tanks are also sold separately, for example, in packages containing two Flavor Pack tanks.  The Flavor Pack tanks currently available for purchase and use with the VUSE VIBE Power Unit include "Menthol" and "Original" flavors.

43.  The Accused VUSE Vapor Products are strategically and economically important to Reynolds Vapor and its parent companies, Reynolds American Inc. ("RAI") and British American Tobacco plc ("BAT"). When it announced the launch of the first VUSE Vapor Product, the President of Reynolds Vapor called VUSE a "game-changing product in the e-cigarette category." Reynolds Vapor has promoted the Accused VUSE Vapor Products through advertisements in magazines and newspapers, on television, via direct-mail marketing, and on the Internet. A Reynolds Vapor executive described the opportunity to sell the VUSE Vapor Products to U.S. consumers as a "marketer's dream."

44.  The Accused VUSE Vapor Products achieved early success; by 2015 VUSE Vapor Products were the best-selling product in the e-vapor category in the United States. Following that success, VUSE's share of the e-vapor category in the United States by 2018 fell below 10 percent, as a result of the success of Juul Lab's "Juul" vaping device.

45.  Reynolds Vapor responded by introducing the Accused VUSE ALTO Product in July 2018, which it described as a "pod mod" e-vapor device similar to the

Juul vaping delivery mechanism. BAT told investors that the VUSE ALTO was a key element of its "vapor reimagined" promotional campaign.

46.     The Accused VUSE ALTO Product achieved wide success. BAT told investors in November 2019 that the Accused VUSE ALTO Product was growing volume in the U.S. even when the e-vapor market was declining. BAT's Finance Director stated that he was "very, very happy with the performance" of the VUSE Vapor Products in the U.S., noting specifically that the Accused VUSE ALTO Product had doubled Reynolds Vapor's market share in just three months.

47.     BAT reiterated the "success" of the Accused VUSE ALTO Product in its February 2020 earnings call with investors. During its March 2020 "Capital Markets Day," BAT executives continued to laud the success of the Accused VUSE Vapor Products. Describing the U.S. as the "most important market," a BAT executive stated that during the last reporting period "65% of all new device kits that were sold were from Vuse and as a result we have been consistently growing share in the last six months, tripling our Alto share and doubling our Vuse share over that six months period."

48.     The success of the Accused VUSE Vapor Products is attributable to those products embodying the inventions described and claimed in some of the Asserted Patents.

## REYNOLDS VAPOR'S PMTA SUBMISSIONS

49.     In July 2017, the Food and Drug Administration ("FDA") announced a "Comprehensive Plan for Tobacco and Nicotine Regulation" ("FDA Plan") that endorsed

the concept of a "continuum of risk" among tobacco products, with combustible products (such as conventional cigarettes) at one end as most harmful, and nicotine replacement therapies on the other end as least harmful. *See* www.fda.gov/tobacco-products/ctp-newsroom/fdas-comprehensive-plan-tobacco-and-nicotine-regulation.

50. The FDA Plan recognized that combustion, not nicotine, is the most significant harm associated with tobacco use and acknowledged the important role for nicotine-containing, non-combustible products. The FDA sought to "strik[e] an appropriate balance between regulation and encouraging development of innovative tobacco products that may be less dangerous than cigarettes." *See* https://wayback.archive-it.org/7993/20190423050614/https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm568923.htm. The FDA Commissioner at the time stated that the goal was to "move addicted smokers down that continuum of risk to these less harmful products." June 28, 2017 Remarks by FDA Commissioner Scott Gottlieb; *see* www.fda.gov/news-events/speeches-fda-officials/protecting-american-families-comprehensive-approach-nicotine-and-tobacco-06282017.

51. In conjunction with the FDA Plan and in response to growing concern over the unregulated marketing and sale of e-vapor products, on June 19, 2019 the FDA issued final guidance for the submission of premarket tobacco product applications ("PMTAs") for "electronic nicotine delivery systems" ("ENDS"), which includes e-cigarettes and vaping devices. The acting FDA Commissioner at the time stated that the FDA's

"ongoing oversight of e-cigarettes and other ENDS products is critical to our public health mission," and that the FDA was "committed to providing a solid, science-based regulatory foundation to ensure that ENDS products authorized for marketing are appropriate for the protection of public health." *See* www.fda.gov/news-events/press-announcements/fda-finalizes-guidance-premarket-tobacco-product-applications-electronic-nicotine-delivery-systems.

52.     At the time the FDA issued its final guidance, the acting FDA Commissioner noted that there were "no authorized e-cigarettes currently on the market and [the FDA] encourage[s] companies to use this valuable document now as a guide to submit applications." *Id*. Thereafter, the United States District Court of the District of Maryland issued an order requiring makers and importers of e-cigarettes and other ENDS to submit PMTAs to the FDA by May 11, 2020. *See American Academy of Pediatrics v. Food and Drug Admin*., Case No. PWG-18-883, Memorandum Op. and Order (July 12, 2019) (D. Md.) ("Order"); *see also* www.fda.gov/news-events/press-announcements/statement-agencys-actions-tackle-epidemic-youth-vaping-and-court-ruling-application-submission. On April 22, 2020, in response to the FDA's request, the Maryland Court extended the deadline to submit PMTAs to September 9, 2020. *See* www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-court-grants-fdas-request-extension-premarket-review-submission-deadline.

53.     The PMTA pathway provides demanding requirements for authorization of a new tobacco product for harm reduction, requiring the submission of extensive data

and information demonstrating that the proposed new product protects the public health. This showing must be made "with respect to the risks and benefits to the population as a whole," taking into account "the increased or decreased likelihood that existing users of tobacco products will stop using such products… [and] that those who do not use tobacco products will start using such products." *See* Federal Food, Drug, and Cosmetic Act § 910(c)(4).

54.     In response to the Order, Reynolds Vapor did not withdraw the Accused VUSE Vapor Products from the U.S. market, but instead submitted PMTAs requesting the ability to continue to sell the products in the United States. During a February 27, 2020 earnings call, BAT's Chief Executive stated that its "first priority" was to submit PMTAs for its e-vapor products, including the Accused VUSE Vapor Products. Upon information and belief, a PMTA has been submitted for at least the VUSE VIBE. The BAT investor report characterized BAT/Reynolds Vapor as being in a "very strong position" as a result of the PMTA submissions. Indeed, during the February 27, 2020 earnings call, BAT's Chief Executive reiterated that Reynolds Vapor was "well-positioned" and "in a very strong position" in the U.S. market by the end of the PMTA submission deadline, estimating potentially £1.5 billion (~$1.85 billion) of revenue to "materialize in 2021." Reynolds Vapor planned to achieve such sales in part through "direct-to-consumer" and "e-commerce" efforts.

55.     Reynolds Vapor's commitment to continue to make, use, sell, offer for sale, and/or import the Accused VUSE Vapor Products in the U.S. demonstrates that Reynolds

Vapor intends to continue to infringe the Asserted Patents, as set forth in the Counts below.

## REYNOLDS VAPOR'S INFRINGING VELO PRODUCTS

56.     Upon information and belief, Reynolds Vapor designs, manufactures and/or has manufactured for it, imports, offers for sale, and sells packaged smokeless nicotine pouches marketed under the name "VELO" (collectively, "the Accused VELO Products") in the U.S.  *See https://www.velo.com*.  The acts of making, using, selling, and offering for sale the Accused VELO Products in the U.S., and the act of importing the same into the U.S., constitute infringement of some of the Asserted Patents as detailed in the Counts below.

57.     There are at least two varieties of Accused VELO Products that infringe one or more of the Asserted Patents, as described in detail in the below Counts: VELO Citrus and VELO Mint.  Each variety is available in either 2 or 4 mg nicotine dosages. Upon information and belief, the Accused VELO Products comprise one or more pouches of nicotine extracted from tobacco plants and mixed with, *inter alia*, artificial flavors. The pouches are held in a container having a non-hermetic seal that keeps the pouches fresh for consumer use.

58.     The Accused VELO Products are depicted below:





*Accused VELO Products in Citrus and Mint Flavors*

59. Upon information and belief, the Accused VELO Products are strategically and economically important to Defendant and its parent companies, RAI and BAT. During its Investor Day on March 14, 2019, BAT noted to investors that the Accused VELO Products offered "new opportunities for growth, expansion, and innovation," and pointed out that such oral tobacco products were a "high margin business" "contributing strong profit." With respect to the Accused VELO Products, BAT was planning a summer 2019 rollout with a "disruptive campaign, digital activation, and ATC engagement platforms to build awareness."

60. At its February 27, 2020 earnings call, BAT's Chief Executive stated that there had been "very good performance with the Velo brand" and he was "very pleased with the results" of the summer 2019 rollout.

61.     During its Capital Markets day on March 18, 2020, a BAT executive stated that oral products such as the Accused VELO Products had a "large global potential," and that the Accused VELO Products were "the fastest growing brand in the United States" since their launch in July 2019.  The BAT executive further states that all of BAT's "modern oral" products would be migrating to a "single global brand in Velo" and BAT was "very confident in the future of Velo."

62.     The success of the Accused VELO Products is attributable to those products embodying the inventions described and claimed in some of the Asserted Patents.

**REYNOLDS VAPOR KNOWS OF THE ASSERTED PATENTS, KNOWS AND SPECIFICALLY INTENDS THAT THE ACCUSED VUSE VAPOR PRODUCTS AND ACCUSED VELO PRODUCTS INFRINGE THE ASSERTED PATENTS, AND KNOWS THAT THOSE PRODUCTS ARE ESPECIALLY MADE OR ESPECIALLY ADAPTED FOR USE IN INFRINGING THE ASSERTED PATENTS**

63.     Upon information and belief, Defendant knows of the Asserted Patents. First, upon information and belief, Defendant regularly surveys the patent literature—and especially that of competitors—for relevant patents and has encountered the Asserted Patents. Second, this complaint informs Defendant about the Asserted Patents. Third, upon information and belief, all of the Asserted Patents and/or their family members have been cited during prosecution of Defendant's own patents.

64.     Upon information and belief, Defendant knows and specifically intends that its actions—including providing instructions with its products—induce actual infringement of the Asserted Patents. First, upon information and belief, Defendant

17

analyzes whether it has freedom to operate and therefore has considered whether its actions induce others to infringe the Asserted Patents. Second, this complaint informs Defendant that its actions induce infringement.

65.     Upon information and belief, Defendant knows that each of the elements in the Accused Products are especially made or especially adapted for use in an infringement of the Asserted Patents and is not a staple article or commodity of commerce suitable for substantial noninfringing use. First, upon information and belief, Defendant analyzes whether it has freedom to operate and therefore has considered whether its actions contribute to others infringing the Asserted Patents. Second, this complaint informs Defendant of its infringement.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 10,143,242

66.     Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

67.     The Accused VUSE VIBE Products directly infringe under 35 U.S.C. § 271, literally or under the doctrine of equivalents, one or more claims of the 242 Patent (including at least claims 1-6 and 8-9). Reynolds Vapor makes, uses, sells, offers to sell, and/or imports the Accused VUSE VIBE Products in the United States, including in this Judicial District and elsewhere. *See, e.g.*, https://vusevapor.com/vibe-complete-kit (Vibe Complete Kit (Power Unit + Flavor Pack), https://vusevapor.com/devices/vibe/flavors (Vibe Flavor Pack Tanks), https://vusevapor.com/vibe-power-unit (Vibe Power Unit).

18

68.     Set forth below is a non-limiting description of the direct infringement of claim 1 of the 242 Patent by Defendant in connection with the Accused VUSE VIBE Products. The description is based on publicly available information. Plaintiffs reserve the right to modify the description, including, for example, on the basis of information about the Accused VUSE VIBE Products that it obtains during discovery.

## *Claim 1*

## *An electronic vaping device comprising:*

69.     The Accused VUSE VIBE Products comprise an electronic vaping device.



# Vibe Complete Kit

Power Unit + Flavor Pack (2 Tanks per Pack)

$24.98

★ ★ ★ ★ ★ | 749 Reviews

**Nicotine Level:**

`3.0%`

**Flavor:**

| 🔴 Original            ⌄ |

Choose a selection...

🔴 Original

🟢 Menthol

**ADD TO CART**

If you crave power and performance, the Vibe is the vape for you. And with a sleek, compact body, you'll enjoy both performance and aesthetics. Get the Vibe power unit and one flavor pack of your choice (two tanks included) in this ready-to-go kit.

The most powerful e-cig in the Vuse line, the Vibe boasts an ultra-long-lasting 600mAh battery. This powerhouse of a device also offers Vuse's largest e-liquid cartridges. Each pod holds 1.9mls of 3.0% nicotine, so you can be sure the Vibe will always be ready to help you charge beyond expectations. Cartridges are also easy to swap, so mix them up to suit your mood.

- All-in-One Device
- Ultra-Powerful 600mAh Battery
- 3.0% Nicotine
- 1.9mls of e-Liquid
- Easy USB Charger

https://vusevapor.com/vibe-complete-kit (annotated in yellow).



**What is Vuse?**                                                            —

Vuse is an E-cigarette brand with several innovative vapor products on the market, including our flagship brands, Vuse Solo, Vuse Ciro, and Vuse Vibe.

**How do Vuse products work?**                                              —

Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist.

Please review the product-specific FAQs and the User Guide applicable to your Vuse power unit for information on proper handling, storage, and charging of your Vuse power unit.

https://vusevapor.com/faqs (annotated in yellow).

***a battery portion, the battery portion including a battery configured to provide power to the electronic vaping device,***

70.     The Accused VUSE VIBE Products include a "Power Unit," which

comprises a battery portion having a battery configured to provide power to the electronic

vaping device.

If you crave power and performance, the Vibe is the vape for you. And with a sleek, compact body, you'll enjoy both performance and aesthetics. Get the ==Vibe power unit== and one flavor pack of your choice (two tanks included) in this ready-to-go kit.

The most powerful e-cig in the Vuse line, ==the Vibe boasts an ultra-long-lasting 600mAh battery.== This powerhouse of a device also offers Vuse's largest e-liquid cartridges. Each pod holds 1.9mls of 3.0% nicotine, so you can be sure the Vibe will always be ready to help you charge beyond expectations. Cartridges are also easy to swap, so mix them up to suit your mood.

- All-in-One Device
- ==Ultra-Powerful 600mAh Battery==
- 3.0% Nicotine
- 1.9mls of e-Liquid
- Easy USB Charger

https://vusevapor.com/vibe-complete-kit (annotated in yellow).

**Is there a way to remove the battery from the Vuse Vibe power unit?**

No. The ==Lithium Polymer battery housed inside the Vuse Vibe power unit== is not accessible. Do not attempt to open, service, or repair the power unit—doing so may result in injury (e.g., electric shock) or fire.

https://vusevapor.com/faqs (annotated in yellow).



*The Accused VUSE VIBE Products (Battery Shown)*

***the battery portion including an air-flow sensor,***

71.     The Accused VUSE VIBE Products comprise a battery portion including an

air-flow sensor.

21



*The Accused VUSE VIBE Products (Airflow Sensor Shown)*

**the battery portion including circuitry linked to the air-flow sensor,**

72.    The Accused VUSE VIBE Products comprise a battery portion including circuitry linked to an air-flow sensor.



*The Accused VUSE VIBE Products (Airflow Sensor Linked to Circuitry)*

**the battery portion including one or more electronic chips;**

73.    The Accused VUSE VIBE Products comprise a battery portion including one or more electronic chips.

22

Electronic chips



*The Accused VUSE VIBE Products (Electronic Chips Shown)*

**<u>a cartridge configured to be coupled with the battery portion,</u>**

74.     The Accused VUSE VIBE Products comprise a cartridge configured to be coupled with the battery portion.



*The Accused VUSE VIBE Products (Original Cartridge (Mouthpiece Removed))*



*The Accused VUSE VIBE Products (Cartridge End (Left) and Battery Portion End (Right))*



*The Accused VUSE VIBE Products (Cartridge Coupled to Battery Portion)*

***the cartridge configured to generate a dispersion that is added to air flow through the cartridge,***

75.    The Accused VUSE VIBE Products comprise a cartridge configured to generate a dispersion that is added to air flow through the cartridge.



Air flow

*The Accused VUSE VIBE Products (Air Flow Through Cartridge)*

**How do Vuse products work?**                                              −

Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist.

Please review the product-specific FAQs and the User Guide applicable to your Vuse power unit for information on proper handling, storage, and charging of your Vuse power unit.

https://vusevapor.com/faqs (annotated in yellow).

***the cartridge including a heating coil wrapped around a wick,***

76.    The Accused VUSE VIBE Products comprise a cartridge including a heating coil wrapped around a wick.



Wick   Heating Coil

*The Accused VUSE VIBE Products (Wick and Heating Coil Shown)*

**<u>the cartridge including an airflow tube and an outer housing,</u>**

77.     The Accused VUSE VIBE Products comprise a cartridge with an airflow tube.



airflow tube

*The Accused VUSE VIBE Products (Cartridge Airflow Tube Shown)*

25

78.     The Accused VUSE VIBE Products include a cartridge with an outer housing.



*The Accused VUSE VIBE Products (Cartridge with Outer Housing)*



*The Accused VUSE VIBE Products (Cartridge– Exploded View) (Liquid Removed)*

**_the cartridge being filled with liquid; and_**

79.     The Accused VUSE VIBE Products comprise a cartridge filled with liquid.



*The Accused VUSE VIBE Products (Cartridge Containing Liquid)*

If you crave power and performance, the Vibe is the vape for you. And with a sleek, compact body, you'll enjoy both performance and aesthetics. Get the Vibe power unit and one flavor pack of your choice (two tanks included) in this ready-to-go kit.

The most powerful e-cig in the Vuse line, the Vibe boasts an ultra-long-lasting 600mAh battery. This powerhouse of a device also offers Vuse's largest e-liquid cartridges. Each pod holds 1.9mls of 3.0% nicotine, so you can be sure the Vibe will always be ready to help you charge beyond expectations. Cartridges are also easy to swap, so mix them up to suit your mood.

- All-in-One Device
- Ultra-Powerful 600mAh Battery
- 3.0% Nicotine
- 1.9mls of e-Liquid
- Easy USB Charger

https://vusevapor.com/vibe-complete-kit (annotated in yellow).

***a mouthpiece connected to the cartridge,***

80.     The Accused VUSE VIBE Products comprise a mouthpiece connected to a cartridge.



*The Accused VUSE VIBE Products (Mouthpiece)*



*The Accused VUSE VIBE Products (Mouthpiece Connected to Cartridge)*

***the mouthpiece being attached to an outer surface of the cartridge, and***

81.     The Accused VUSE VIBE Products comprise a mouthpiece attached to the outer surface of a cartridge.

27



*The Accused Vibe Device (Mouthpiece Attached to Cartridge Exterior)*

**<u>an end region of the cartridge extending into the mouthpiece such that the mouthpiece surrounds at least a portion of the end region of the cartridge.</u>**

82.    The Accused VUSE VIBE Products comprise a mouthpiece surrounding at least a portion of the end region of a cartridge.



*The Accused Vibe Device (Mouthpiece Surrounding Cartridge)*

83.    Reynolds Vapor has also indirectly and is indirectly infringing at least claims 1-6, 8, and 9 of the 242 Patent.

84. Reynolds Vapor induces infringement of the 242 Patent by its customers under 35 U.S.C. § 271(b) by encouraging those customers to use the Accused VUSE VIBE Products, which Reynolds Vapor knows infringes the 242 Patent. Reynolds Vapor has had knowledge of the 242 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE VIBE Products by its customers directly infringes. The Accused VUSE VIBE Products infringe as shown above. Reynolds Vapor on its website and in the Accused VUSE VIBE Products' packaging, direct, instruct, and encourage customers of the Accused VUSE VIBE Products to use the Accused VUSE VIBE Products.



*The Accused VUSE VIBE Products (Instructions for Use)*

*See also https://vusevapor.com/faqs* ("Vuse Vibe pre-filled tanks are translucent, so you can see when the liquid is nearing the bottom of the tank, indicating it is time for a replacement.").

85.     Reynolds Vapor also contributes to infringement of the 242 Patent under 35 U.S.C. § 271(c). Reynolds Vapor has had knowledge of the 242 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE VIBE Products by its customers directly infringes. The Accused VUSE VIBE Products, including but not limited to the VUSE VIBE Flavor Pack tanks, have no substantial non-infringing uses, are not a staple article of commerce, and are specially made and adapted for use in an infringing manner. For example, the Accused VUSE VIBE Products infringe as shown above. *See Instructions Included with Packaging for Vibe Kit* (pictured above)*. See also https://vusevapor.com/faqs* ("Vuse Vibe pre-filled tanks are translucent, so you can see when the liquid is nearing the bottom of the tank, indicating it is time for a replacement.").

86.     Reynolds Vapor's infringement of the 242 Patent has been and continues to be deliberate, willful, and unlicensed, permitting Plaintiffs to seek enhanced damages under 35 U.S.C. § 284.

87.     Reynolds Vapor's infringement of the 242 Patent has been and continues to be deliberate, willful, and unlicensed, rendering this an exceptional case and permitting Plaintiffs to seek attorney fees and costs under 35 U.S.C. § 285.

88.     As a direct and proximate result of Reynolds Vapor's infringement of the

242 Patent, Plaintiffs have suffered monetary damages in an amount yet to be

determined.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 10,264,824

89.     Plaintiffs re-allege and incorporate by reference the allegations of the

preceding paragraphs of this Complaint as if fully set forth herein.

90.     The Accused VUSE VIBE Products directly infringe under 35 U.S.C. §

271, literally or under the doctrine of equivalents, one or more claims of the 824 Patent

(including at least claims 1, 3-7, 9-10, 12-16, 18). By way of example, Reynolds Vapor

makes, uses, sells, offers to sell, and/or imports the Accused VUSE VIBE Products in the

United States, including in this Judicial District and elsewhere. *See, e.g.*,

https://vusevapor.com/vibe-complete-kit (Vibe Complete Kit (Power Unit + Flavor

Pack), https://vusevapor.com/devices/vibe/flavors (Vibe Flavor Pack Tanks),

https://vusevapor.com/vibe-power-unit (Vibe Power Unit).

91.     Set forth below is a non-limiting description of the direct infringement of

claim 1 by Reynolds Vapor in connection with the Accused VUSE VIBE Products. The

description is based on publicly available information. Altria reserves the right to modify

the description, including, for example, on the basis of information about the Accused

VUSE VIBE Products that it obtains during discovery.

31

## Claim 1

### *A cartridge assembly for coupling to a battery portion of an electronic vaping device, the cartridge assembly comprising:*

92.     The Accused VUSE VIBE Products comprise a cartridge assembly for coupling to a battery portion of an electronic vaping device.

93.     The Accused VUSE VIBE Products are an electronic vaping device.





# Vibe Complete Kit

Power Unit + Flavor Pack (2 Tanks per Pack)

$24.98

★ ★ ★ ★ ★   | 749 Reviews

**Nicotine Level:**

3.0%

**Flavor:**

Original ▼

Choose a selection...

Original

Menthol

ADD TO CART

If you crave power and performance, the Vibe is the vape for you. And with a sleek, compact body, you'll enjoy both performance and aesthetics. Get the Vibe power unit and one flavor pack of your choice (two tanks included) in this ready-to-go kit.

The most powerful e-cig in the Vuse line, the Vibe boasts an ultra-long-lasting 600mAh battery. This powerhouse of a device also offers Vuse's largest e-liquid cartridges. Each pod holds 1.9mls of 3.0% nicotine, so you can be sure the Vibe will always be ready to help you charge beyond expectations. Cartridges are also easy to swap, so mix them up to suit your mood.

- All-in-One Device
- Ultra-Powerful 600mAh Battery
- 3.0% Nicotine
- 1.9mls of e-Liquid
- Easy USB Charger

https://vusevapor.com/vibe-complete-kit (annotated in yellow).

32



[https://vusevapor.com/faqs](https://vusevapor.com/faqs) (annotated in yellow).

94. The Accused VUSE VIBE Products' vaping device includes a battery portion (referred to as a "Power Unit") and an e-liquid cartridge assembly, which attach together. The battery portion and the cartridge assemblies may be purchased separately or together (as part of the Vibe Kit). *See, e.g.*, [https://vusevapor.com/vibe-complete-kit](https://vusevapor.com/vibe-complete-kit) (Vibe Complete Kit (Power Unit + Flavor Pack) available for purchase), [https://vusevapor.com/devices/vibe/flavors](https://vusevapor.com/devices/vibe/flavors) (Vibe Flavor Pack Tanks).



*The Accused VUSE VIBE Products (Cartridge Assembly Coupled to Battery Portion)*

33



*The Accused VUSE VIBE Products (Cartridge End (Left) and Battery Portion End (Right))*



*The Accused VUSE VIBE Products (Cartridge Assembly – Exploded View) (Liquid Removed)*

### **_a cartridge portion,_**

95.　The Accused VUSE VIBE Products comprise a cartridge portion.



*The Accused VUSE VIBE Products (Original Cartridge Portion)*



*The Accused VUSE VIBE Products (Cartridge Assembly – Exploded View) (Liquid Removed)*

***the cartridge portion being configured to generate a dispersion that is added to air flow through the cartridge,***

96.    The Accused VUSE VIBE Products comprise a cartridge portion

configured to generate a dispersion that is added to air flow through the cartridge.



Air flow

*The Accused VUSE VIBE Products (Air Flow Through Cartridge)*

**How do Vuse products work?**                                                     —

Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist.

Please review the product-specific FAQs and the User Guide applicable to your Vuse power unit for information on proper handling, storage, and charging of your Vuse power unit.

https://vusevapor.com/faqs (annotated in yellow).

***the cartridge portion including a heating coil wrapped around a wick,***

97.    The Accused VUSE VIBE Products comprise a cartridge portion including

a heating coil wrapped around a wick.



Wick    Heating Coil

*The Accused VUSE VIBE Product (Wick and Heating Coil Shown)*

**_the cartridge portion including an airflow tube and an outer housing_**

98.    The Accused VUSE VIBE Products comprise a cartridge portion including an airflow tube and an outer housing.

99.    The Accused VUSE VIBE Products include a cartridge portion with an airflow tube.

36



airflow
tube

*The Accused VUSE VIBE Products (Cartridge Portion Airflow Tube Shown)*

    100. The Accused VUSE VIBE Products include a cartridge portion with an outer housing.



*The Accused VUSE VIBE Products (Cartridge Portion with Outer Housing)*



*The Accused VUSE VIBE Products (Cartridge Portion – Exploded View) (Liquid Removed)*

37

***the cartridge portion being filled with a liquid; and***

101.   The Accused VUSE VIBE Products comprise a cartridge portion filled with liquid.



*The Accused VUSE VIBE Products (Original Cartridge Portion Containing Liquid)*

If you crave power and performance, the Vibe is the vape for you. And with a sleek, compact body, you'll enjoy both performance and aesthetics. Get the Vibe power unit and one flavor pack of your choice <mark>(two tanks included) i</mark>n this ready-to-go kit.

The most powerful e-cig in the Vuse line, the Vibe boasts an ultra-long-lasting 600mAh battery. This powerhouse of a device also offers Vuse's largest <mark>e-liquid cartridges.</mark> Each pod holds 1.9mls of 3.0% nicotine, so you can be sure the Vibe will always be ready to help you charge beyond expectations. Cartridges are also easy to swap, so mix them up to suit your mood.

- All-in-One Device
- Ultra-Powerful 600mAh Battery
- 3.0% Nicotine
- <mark>1.9mls of e-Liquid</mark>
- Easy USB Charger

https://vusevapor.com/vibe-complete-kit (annotated in yellow).

***a mouthpiece connected to the cartridge portion,***

102.   The Accused VUSE VIBE Products comprise a mouthpiece connected to a cartridge portion.



*The Accused VUSE VIBE Products (Mouthpiece)*

38



*The Accused VUSE VIBE Products (Mouthpiece Connected to Cartridge Portion)*



*The Accused VUSE VIBE Products (Mouthpiece (Cross-Section) Connected to Cartridge Portion)*

***the mouthpiece being attached to an outer surface of the cartridge portion, and***

103.    The Accused VUSE VIBE Products comprise a mouthpiece attached to an outer surface of the cartridge portion.



*The Accused VUSE VIBE Products (Mouthpiece Attached to Cartridge Portion Exterior)*

***an end region of the cartridge portion extending into the mouthpiece such that the mouthpiece surrounds at least a portion of the end region of the cartridge portion.***

104.    The Accused VUSE VIBE Products comprise a mouthpiece surrounding at least a portion of the end region of a cartridge portion.



*The Accused VUSE VIBE Products (Mouthpiece Surrounding Cartridge Portion)*

105.    Reynolds Vapor has also indirectly and is indirectly infringing at least claims 1, 3-7, 9-10, 12-16, and 18 of the 824 Patent.

106.    Reynolds Vapor induces infringement of the 824 Patent by its customers under 35 U.S.C. § 271(b) by encouraging those customers to use the Accused VUSE VIBE Products, which Reynolds Vapor knows infringes the 824 Patent. Reynolds Vapor has had knowledge of the 824 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE VIBE Products by its customers directly infringes. The Accused VUSE VIBE Products infringe as shown above. Reynolds Vapor on its website and in the Accused VUSE VIBE Products' packaging, direct, instruct, and encourage customers of the Accused VUSE VIBE Products to use the Accused VUSE VIBE Products.



*The Accused VUSE VIBE Products (Instructions for Use)*

See also https://vusevapor.com/faqs ("Vuse Vibe pre-filled tanks are translucent, so you can see when the liquid is nearing the bottom of the tank, indicating it is time for a replacement.").

107. Reynolds Vapor also contributes to infringement of the 824 Patent under 35 U.S.C. § 271(c). Reynolds Vapor has had knowledge of the 824 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE VIBE Products by its customers directly infringes. The Accused VUSE VIBE Products,

41

including but not limited to the VUSE VIBE Flavor Pack tanks, have no substantial non-infringing uses, are not a staple article of commerce, and are specially made and adapted for use in an infringing manner. For example, the Accused VUSE VIBE Products infringe as shown above. *See Instructions Included with Packaging for Vibe Kit* (pictured above). *See also https://vusevapor.com/faqs* ("Vuse Vibe pre-filled tanks are translucent, so you can see when the liquid is nearing the bottom of the tank, indicating it is time for a replacement.").

108. Reynolds Vapor's infringement of the 824 Patent has been and continues to be deliberate, willful, and unlicensed, permitting Plaintiffs to seek enhanced damages under 35 U.S.C. § 284.

109. Reynolds Vapor's infringement of the 824 Patent has been and continues to be deliberate, willful, and unlicensed, rendering this an exceptional case and permitting Plaintiffs to seek attorney fees and costs under 35 U.S.C. § 285.

110. As a direct and proximate result of Reynolds Vapor's infringement of the 824 Patent, Plaintiffs have suffered monetary damages in an amount yet to be determined.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 10,299,517

111. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

112.    The Accused VUSE ALTO Products directly infringe under 35 U.S.C. § 271, literally or under the doctrine of equivalents, one or more claims of the 517 Patent (including at least claims 1-3, 5, 7-8, and 10). Reynolds Vapor makes, uses, sells, offers to sell, and/or imports the Accused VUSE ALTO Products in the United States, including in this Judicial District and elsewhere. *See, e.g.*, https://vusevapor.com/alto-complete-kit (Alto Complete Kit (Power Unit + Flavor Pack), https://vusevapor.com/devices/alto/flavors (Alto Flavor Pack Pods), https://vusevapor.com/alto-power-unit-blue (Alto Power Unit - Blue) (representative only).

113.    Set forth below is a non-limiting description of the direct infringement of claim 10 of the 517 Patent by Reynolds Vapor in connection with the Accused VUSE ALTO Products. The description is based on publicly available information. Plaintiffs reserve the right to modify the description, including, for example, on the basis of information about the Accused VUSE ALTO Products that it obtains during discovery.

## *Claim 10*

## *An e-vapor apparatus, comprising:*

114.    In the period since the 517 Patent issued on May 28, 2019, the Accused VUSE ALTO Products comprise and have comprised an e-vapor apparatus.

43



# Alto Complete Kit

Power Unit + 2 Flavor Pods

$19.98

★★★★★ | 87 Reviews
**Device Color:** Silver

**Nicotine Level:**

| 1.8% | 2.4% | **5.0%** |

**Flavor:**

Golden Tobacco ⌄

**Qty**

1 ⌄

**ADD TO CART**

Big performance. Small package. Inspired design. Get it all with this complete kit that includes one Alto power unit, one Alto magnetic charger, and one flavor pack of your choice (two flavor pods included).

The Alto all-in-one pod mod is a hassle-free e-cig with smooth delivery. Pocket-sized and lightweight, this sleek little device is the perfect option to sync to your ever-moving lifestyle.

The Alto offers a tight draw and no visible airflow slots—just like puffing on a cigarette. And it offers rounded edges and a rounded mouthpiece too.

The Alto squeezes a 350mAh battery inside its smooth metal casing (available in slate or red) to power your inspiration all day long.

Customize your vaping experience with one of three flavors: golden tobacco, rich tobacco, and menthol. The Alto also lets you customize your nicotine level. All flavors now offer 1.8%, 2.4% and 5.0% nicotine options.

- All-in-One Device
- Powerful 350mAh Battery
- 1.8%, 2.4%, and 5.0% Nicotine Options
- 1.8 mls of e-Liquid
- Quick Connect USB Charging System

https://vusevapor.com/alto-complete-kit (annotated in yellow).

**What is Vuse?** —

Vuse is an E-cigarette brand with several innovative vapor products on the market, including our flagship brands, Vuse Solo, Vuse Ciro, and Vuse Vibe.

**How do Vuse products work?** —

Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist.

Please review the product-specific FAQs and the User Guide applicable to your Vuse power unit for information on proper handling, storage, and charging of your Vuse power unit.

https://vusevapor.com/faqs (annotated in yellow).

***a pod assembly including a plurality of external surfaces,***

115.    The Accused VUSE ALTO Products include a Flavor Pack pod, which is a

pod assembly that includes a plurality of external surfaces.

   

 

*The Accused VUSE ALTO Products (Pod Shown for a Plurality of External Surfaces)*

***a liquid compartment,***

116.   The Accused VUSE ALTO Products comprise a liquid compartment as part of the pod assembly.



*The Accused VUSE ALTO Products (Liquid Compartment Shown)*

**_a vaporizer compartment,_**

117.   The Accused VUSE ALTO Products comprise a vaporizer compartment as part of the pod assembly.



*The Accused VUSE ALTO Products (Vaporizer Compartment Shown)*

### <u>*a vapor channel,*</u>

118.    The Accused VUSE ALTO Products comprise a vapor channel as part of the pod assembly.



*The Accused VUSE ALTO Products (Vapor Channel Shown)*

**_and a plurality of electrical contacts,_**

119. The Accused VUSE ALTO Products comprise a plurality of electrical

contacts as part of the pod assembly.



*The Accused VUSE ALTO Products (Electrical Contacts Shown)*

**_the plurality of external surfaces including a front face, a rear face opposite the front face, a first side face between the front face and the rear face, a second side face opposite the first side face, a downstream end face, and an upstream end face opposite the downstream end face,_**

120.    The Accused VUSE ALTO Products include a front face, a rear face opposite the front face, a first side face between the front face and the rear face, a second side face opposite the first side face, a downstream end face, and an upstream end face opposite the downstream end face as part of the pod assembly.

49

   

 

*The Accused VUSE ALTO Products (Front, Rear, First Side, Second Side, Downstream End, and Upstream End Faces Shown)*

**<u>*a portion of at least the front face or the rear face being transparent,*</u>**

121.    The Accused VUSE ALTO Products comprise front and rear faces that

include at least a portion that is transparent as part of the pod assembly.



*The Accused VUSE ALTO Products (Transparent Portions Shown)*

***the downstream end face defining an outlet,***

122.    The Accused VUSE ALTO Products comprise a downstream end face

defining an outlet as part of the pod assembly.



*The Accused VUSE ALTO Products (Downstream End and Outlet Shown)*

***the liquid compartment configured to hold a liquid formulation such that the liquid formulation is visible through at least the font face or the rear face,***

123.    The Accused VUSE ALTO Products comprise a liquid compartment that is configure to hold 1.8 mL of "e-Liquid"—a liquid formulation—that is visible through the front, rear, and side faces of the pod assembly.



*The Accused VUSE ALTO Products (Visible Liquid Formulation in the Liquid Compartment Shown)*

Customize your vaping experience with one of three flavors: golden tobacco, rich tobacco, and menthol. The Alto also lets you customize your nicotine level. All flavors now offer 1.8%, 2.4% and 5.0% nicotine options.

- All-in-One Device
- Powerful 350mAh Battery
- 1.8%, 2.4%, and 5.0% Nicotine Options
- 1.8 mls of e-Liquid
- Quick Connect USB Charging System

https://vusevapor.com/alto-complete-kit (annotated in yellow).

***the vaporizer compartment in fluidic communication with the liquid compartment,***

124. The Accused VUSE ALTO Products comprise a vaporizer compartment in fluidic communication with the liquid compartment of the pod assembly.





*The Accused VUSE ALTO Products (Vaporizer and Liquid Compartments Shown)*

125.    The barrier dividing the vaporizer and liquid compartment includes passages to allow fluidic communication between the two compartments.



*The Accused VUSE ALTO Products (Fluidic Communication Passages Shown)*

**_the vaporizer compartment being adjacent to the upstream end face,_**

126.    The Accused VUSE ALTO Products comprise a vaporizer compartment adjacent to the upstream end face of the pod assembly.



*The Accused VUSE ALTO Products (Vaporizer Compartment and Upstream End Face Shown)*

**_the vaporizer compartment configured to heat the liquid formulation, the vaporizer compartment including a heater and a wick,_**

127.　The Accused VUSE ALTO Products comprise a vaporizer compartment that includes a heater and a wick that are configured heat the liquid formulation in the pod assembly.



*The Accused VUSE ALTO Products (Vaporizer Compartment Shown)*



*The Accused VUSE ALTO Products (Wick and Heater Shown)*



https://vusevapor.com/faqs (annotated in yellow).

***the vapor channel extending from the vaporizer compartment, through a center of the
liquid compartment, and to the outlet,***

128. The Accused VUSE ALTO Products comprise a vapor channel that extends

from the vaporizer compartment to the outlet at the downstream end face through a center

of the liquid compartment.



*The Accused VUSE ALTO Products (Vapor Channel Endpoints Shown)*



*The Accused VUSE ALTO Products (Vapor Channel Shown)*

57

***the vapor channel being visible through at least the front face or the rear face,***

129.    The Accused VUSE ALTO Products comprise a vapor channel that is visible through at least the front or the rear faces of the pod assembly.



*The Accused VUSE ALTO Products (Vapor Channel Shown)*

***the plurality of electrical contacts having respective planar surface at the upstream end face and electrically connected to the heater in the vaporizer compartment,***

130.    The Accused VUSE ALTO Products comprise planar electrical contacts at the upstream end face of the pod assembly that are electrically connected to the heater in the vaporizer compartment.

58



*The Accused VUSE ALTO Products (Planar Electrical Contacts Shown)*

131.    The electrical contacts are electrically connected to the heater in the vaporizer compartment.



*The Accused VUSE ALTO Products (Planar Electrical Contacts Shown)*

**_the vapor channel being between the outlet and the plurality of electrical contacts; and,_**

132. The Accused VUSE ALTO Products comprise a vapor channel that is located between the outlet at the downstream end face and the electrical contacts at the upstream end face.



*The Accused VUSE ALTO Products (Vapor Channel Shown)*

### *a device body defining a pod compartment having*

133.    The Accused VUSE ALTO Products comprise a power unit, which is a device body defining a pod compartment.



*The Accused VUSE ALTO Products (Device Body and Pod Compartment Shown)*

*a first compartment side wall, a second compartment side wall opposite the first compartment side wall, a third compartment side wall between the first compartment side wall and the second compartment side wall, and a fourth compartment side wall opposite the third compartment side wall,*

134.    The Accused VUSE ALTO Products comprise a power unit, which comprises a first, second, third, and fourth side wall arranged as recited in this claim limitation.



*The Accused VUSE ALTO Products (Device Body Compartment Side Walls Shown)*

*the pod assembly configured to engage with the first compartment side wall and the second compartment side wall when received by the device body,*

62

135.    The Accused VUSE ALTO Products comprise a flavor pack pod—a pod assembly—that is configured to engage with the first and second compartment side walls of the power unit—the device body.



*The Accused VUSE ALTO Products (Cartridge Engaged with the Power Unit Shown)*

**_the vapor channel of the pod assembly coinciding with a central longitudinal axis of the device body,_**

136.    The Accused VUSE ALTO Products comprise a vapor channel within the pod assembly that coincides with a central longitudinal axis of the device body when the pod assembly is inserted into the device body.



*The Accused VUSE ALTO Products (Cartridge Engaged with the Power Unit Shown)*

**_the device body including a magnet,_**

137.   The accused VUSE ALTO Products comprise a power unit—device body—that includes at least one magnet.



*The Accused VUSE ALTO Products (Magnetic Connection Shown)*

***the device body including a battery configured to supply power to the heater.***

138.    The accused VUSE ALTO Products comprise a power unit—device body—that includes a battery configured to supply power to the heater.



*The Accused VUSE ALTO Products (Battery in the Power Unit Shown)*



# Alto Complete Kit

Power Unit + 2 Flavor Pods

$19.98

★ ★ ★ ★ ★ | 87 Reviews

**Device Color:** Silver

**Nicotine Level:**

| 1.8% | 2.4% | **5.0%** |

**Flavor:**

Golden Tobacco ∨

**Qty**

1 ∨

**ADD TO CART**

Big performance. Small package. Inspired design. Get it all with this complete kit that includes one Alto power unit, one Alto magnetic charger, and one flavor pack of your choice (two flavor pods included).

The Alto all-in-one pod mod is a hassle-free e-cig with smooth delivery. Pocket-sized and lightweight, this sleek little device is the perfect option to sync with your ever-moving lifestyle.

The Alto offers a tight draw and no visible airflow slots—just like puffing on a cigarette. And it offers rounded edges and a rounded mouthpiece too.

The Alto squeezes a 350mAh battery inside its smooth metal casing (available in slate or red) to power your inspiration all day long.

Customize your vaping experience with one of three flavors: golden tobacco, rich tobacco, and menthol. The Alto also lets you customize your nicotine level. All flavors now offer 1.8%, 2.4% and 5.0% nicotine options.

- All-in-One Device
- Powerful 350mAh Battery
- 1.8%, 2.4%, and 5.0% Nicotine Options
- 1.8 mls of e-Liquid
- Quick Connect USB Charging System

https://vusevapor.com/alto-complete-kit (annotated in yellow).

**What is Vuse?** ─

Vuse is an E-cigarette brand with several innovative vapor products on the market, including our flagship brands, Vuse Solo, Vuse Ciro, and Vuse Vibe.

**How do Vuse products work?** ─

Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist.

Please review the product-specific FAQs and the User Guide applicable to your Vuse power unit for information on proper handling, storage, and charging of your Vuse power unit.

https://vusevapor.com/faqs (annotated in yellow).

139.    Reynolds Vapor has also indirectly infringed and is indirectly infringing at least claims 1-3, 5, 7-8, and 10 of the 517 Patent.

140.    Reynolds Vapor induces infringement of the 517 Patent by its customers under 35 U.S.C. § 271(b) by encouraging those customers to use the Accused VUSE ALTO Products, which Reynolds Vapor knows infringes the 517 Patent. Reynolds Vapor has had knowledge of the 517 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE ALTO Products by its customers directly infringes. The Accused VUSE ALTO Products infringe as shown above. Reynolds Vapor on its website and in the Accused VUSE ALTO Products' packaging, direct, instruct, and encourage customers of the Accused VUSE ALTO Products to use the Accused VUSE ALTO Products in an infringing manner.



*The Accused VUSE ALTO Products (Instructions for Use)*

*See also* *https://vusevapor.com/faqs* ("Vuse Alto pre-filled pods feature a clear reservoir, so you can see when the liquid is nearing the bottom of the pod, indicating it is time for a replacement.").

141. Reynolds Vapor also contributes to infringement of the 517 Patent under 35 U.S.C. § 271(c). Reynolds Vapor has had knowledge of the 517 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE ALTO Products by its customers directly infringes. The Accused VUSE ALTO Products, including but not limited to the VUSE ALTO power units and flavor packs, have no substantial non-infringing uses, are not a staple article of commerce, and are specially

68

made and adapted for use in an infringing manner. For example, the Accused VUSE ALTO Products infringe as shown above. *See Instructions Included with Packaging for Alto Kit* (pictured above). *See also* https://vusevapor.com/faqs ("Vuse Alto pre-filled pods feature a clear reservoir, so you can see when the liquid is nearing the bottom of the pod, indicating it is time for a replacement.").

142. Reynolds Vapor's infringement of the 517 Patent has been and continues to be deliberate, willful, and unlicensed, permitting Plaintiffs to seek enhanced damages under 35 U.S.C. § 284.

143. Reynolds Vapor's infringement of the 517 Patent has been and continues to be deliberate, willful, and unlicensed, rendering this an exceptional case and permitting Plaintiffs to seek attorney fees and costs under 35 U.S.C. § 285.

144. As a direct and proximate result of Reynolds Vapor's infringement of the 517 Patent, Plaintiffs have suffered monetary damages in an amount yet to be determined.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 10,485,269

145. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

146. The Accused VUSE ALTO Products directly infringe under 35 U.S.C. § 271, literally or under the doctrine of equivalents, one or more claims of the 269 Patent (including at least claim 19). Reynolds Vapor makes, uses, sells, offers to sell, and/or

69

imports the Accused VUSE ALTO Products in the United States, including in this Judicial District and elsewhere. *See, e.g.*, https://vusevapor.com/alto-complete-kit (Alto Complete Kit (Power Unit + Flavor Pack)), https://vusevapor.com/devices/alto/flavors (Alto Flavor Pack Pods), https://vusevapor.com/alto-power-unit-blue (Alto Power Unit - Blue) (representative only).

147. Set forth below is a non-limiting description of the direct infringement of claim 19 of the 269 Patent by Reynolds Vapor in connection with the Accused VUSE ALTO Products. The description is based on publicly available information. Plaintiffs reserve the right to modify the description, including, for example, on the basis of information about the Accused VUSE ALTO Products that it obtains during discovery.

***Claim 19***

***A pod assembly for an e-vapor apparatus, comprising:***

148. In the period since the 269 Patent issued on November 26, 2019, the Accused VUSE ALTO Products comprise and have comprised a pod assembly for an e-vapor apparatus.



# Alto Complete Kit

Power Unit + 2 Flavor Pods

$19.98

★★★★★ | 87 Reviews

**Device Color:** Silver

**Nicotine Level:**

| 1.8% | 2.4% | **5.0%** |

**Flavor:**

Golden Tobacco ⌄

**Qty**

1 ⌄

**ADD TO CART**

Big performance. Small package. Inspired design. Get it all with this complete kit that includes one Alto power unit, one Alto magnetic charger, and one flavor pack of your choice (two flavor pods included).

The Alto all-in-one pod mod is a hassle-free e-cig with smooth delivery. Pocket-sized and lightweight, this sleek little device is the perfect option to sync with your ever-moving lifestyle.

The Alto offers a tight draw and no visible airflow slots—just like puffing on a cigarette. And it offers rounded edges and a rounded mouthpiece too.

The Alto squeezes a 350mAh battery inside its smooth metal casing (available in slate or red) to power your inspiration all day long.

Customize your vaping experience with one of three flavors: golden tobacco, rich tobacco, and menthol. The Alto also lets you customize your nicotine level. All flavors now offer 1.8%, 2.4% and 5.0% nicotine options.

- All-in-One Device
- Powerful 350mAh Battery
- 1.8%, 2.4%, and 5.0% Nicotine Options
- 1.8 mls of e-Liquid
- Quick Connect USB Charging System

https://vusevapor.com/alto-complete-kit (annotated in yellow).

**What is Vuse?** —

Vuse is an ==E-cigarette brand== with several innovative ==vapor products== on the market, including our flagship brands, Vuse Solo, Vuse Ciro, and ==Vuse Vibe.==

**How do Vuse products work?** —

==Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist.==

Please review the product-specific FAQs and the User Guide applicable to your Vuse power unit for information on proper handling, storage, and charging of your Vuse power unit.

https://vusevapor.com/faqs (annotated in yellow).

    149.    The Accused VUSE ALTO Products include a Flavor Pack pod, which is a pod assembly.

   

 

*The Accused VUSE ALTO Products (Pod Shown)*

**<u>a vapor precursor compartment configured to hold a vapor precursor,</u>**

150.    The Accused VUSE ALTO Products comprise a vapor-precursor

compartment configured to hold a vapor precursor as part of the pod assembly.



*The Accused VUSE ALTO Products (Vapor Precursor and Vapor Precursor*
*Compartment Shown)*

***the vapor precursor compartment including a front face and a rear face opposite the front face, the front face and the rear face including transparent portions;***

151. The Accused VUSE ALTO Products comprise a vapor precursor compartment that includes a front face and a rear face opposite that front face, where both the front and the rear faces are transparent.

 

*The Accused VUSE ALTO Products (Front and Rear Faces Shown)*

***a device compartment upstream from the vapor precursor compartment,***

152. The Accused VUSE ALTO Products comprise a device compartment upstream from the vapor precursor compartment as part of the pod assembly.



*The Accused VUSE ALTO Products (Vapor Precursor and Device Compartments Shown)*

**the device compartment configured to heat the vapor precursor to produce a vapor; and**

153.    The Accused VUSE ALTO Products comprise a device compartment configured to heat the vapor precursor to produce a vapor as part of the pod assembly.

154.    The Accused VUSE ALTO Products comprise a device compartment that includes a heater and a wick that are configured heat the liquid formulation in the pod assembly.



*The Accused VUSE ALTO Products (Device Compartment Shown)*



[https://vusevapor.com/faqs](https://vusevapor.com/faqs) (annotated in yellow).

***a vapor channel extending through the vapor precursor compartment, the vapor channel being visible through the transparent portions of the vapor precursor compartment.***

155.    The Accused VUSE ALTO Products comprise a vapor channel extending through the vapor precursor compartment that is visible through the front and the rear faces of the pod assembly.

76



*The Accused VUSE ALTO Products (Vapor Channel Shown)*

156.    Reynolds Vapor has also indirectly infringed and is indirectly infringing at least claim 19 of the 269 Patent.

157.    Reynolds Vapor induces infringement of the 269 Patent by its customers under 35 U.S.C. § 271(b) by encouraging those customers to use the Accused VUSE ALTO Products, which Reynolds Vapor knows infringes the 269 Patent. Reynolds Vapor has had knowledge of the 269 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE ALTO Products by its customers directly infringes. The Accused VUSE ALTO Products infringe as shown above. Reynolds Vapor on its website and in the Accused VUSE ALTO Products' packaging, direct, instruct, and encourage customers of the Accused VUSE ALTO Products to use the Accused VUSE ALTO Products in an infringing manner.



*The Accused VUSE ALTO Products (Instructions for Use)*

*See also* *https://vusevapor.com/faqs* ("Vuse Alto pre-filled pods feature a clear reservoir, so you can see when the liquid is nearing the bottom of the pod, indicating it is time for a replacement.").

158.    Reynolds Vapor also contributes to infringement of the 269 Patent under 35 U.S.C. § 271(c). Reynolds Vapor has had knowledge of the 269 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE ALTO Products by its customers directly infringes. The Accused VUSE ALTO Products, including but not limited to the VUSE ALTO power units and flavor packs, have no substantial non-infringing uses, are not a staple article of commerce, and are specially

made and adapted for use in an infringing manner. For example, the Accused VUSE ALTO Products infringe as shown above. *See Instructions Included with Packaging for Alto Kit* (pictured above)*. See also* *https://vusevapor.com/faqs* ("Vuse Alto pre-filled pods feature a clear reservoir, so you can see when the liquid is nearing the bottom of the pod, indicating it is time for a replacement.").

159. Reynolds Vapor's infringement of the 269 Patent has been and continues to be deliberate, willful, and unlicensed, permitting Plaintiffs to seek enhanced damages under 35 U.S.C. § 284.

160. Reynolds Vapor's infringement of the 269 Patent has been and continues to be deliberate, willful, and unlicensed, rendering this an exceptional case and permitting Plaintiffs to seek attorney fees and costs under 35 U.S.C. § 285.

161. As a direct and proximate result of Reynolds Vapor's infringement of the 269 Patent, Plaintiffs have suffered monetary damages in an amount yet to be determined.

## COUNT V
## INFRINGEMENT OF U.S. PATENT NO. 10,492,541

162. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

163. The Accused VUSE ALTO Products directly infringe under 35 U.S.C. § 271, literally or under the doctrine of equivalents, one or more claims of the 541 Patent (including at least claim 24). Reynolds Vapor makes, uses, sells, offers to sell, and/or imports the Accused VUSE ALTO Products in the United States, including in this

Judicial District and elsewhere. *See, e.g.*, https://vusevapor.com/alto-complete-kit (Alto Complete Kit (Power Unit + Flavor Pack), https://vusevapor.com/devices/alto/flavors (Alto Flavor Pack Pods), https://vusevapor.com/alto-power-unit-blue (Alto Power Unit - Blue) (representative only).

164. Set forth below is a non-limiting description of the direct infringement of claim 24 of the 541 Patent by Defendant in connection with the Accused VUSE ALTO Products. The description is based on publicly available information. Plaintiffs reserve the right to modify the description, including, for example, on the basis of information about the Accused VUSE ALTO Products that it obtains during discovery.

## *Claim 24*

### *A pod assembly for an e-vapor apparatus, comprising:*

165. In the period since the 541 Patent issued on December 3, 2019, the Accused VUSE ALTO Products comprise and have comprised a pod assembly for an e-vapor apparatus.



# Alto Complete Kit

Power Unit + 2 Flavor Pods

$19.98

★★★★★ | 87 Reviews

**Device Color:** Silver

**Nicotine Level:**

| 1.8% | 2.4% | **5.0%** |

**Flavor:**

Golden Tobacco ∨

**Qty**

1 ∨

**ADD TO CART**

Big performance. Small package. Inspired design. Get it all with this complete kit that includes one Alto power unit, one Alto magnetic charger, and one flavor pack of your choice (two flavor pods included).

The Alto all-in-one pod mod is a hassle-free e-cig with smooth delivery. Pocket-sized and lightweight, this sleek little device is the perfect option to sync with your ever-moving lifestyle.

The Alto offers a tight draw and no visible airflow slots—just like puffing on a cigarette. And it offers rounded edges and a rounded mouthpiece too.

The Alto squeezes a 350mAh battery inside its smooth metal casing (available in slate or red) to power your inspiration all day long.

Customize your vaping experience with one of three flavors: golden tobacco, rich tobacco, and menthol. The Alto also lets you customize your nicotine level. All flavors now offer 1.8%, 2.4% and 5.0% nicotine options.

- All-in-One Device
- Powerful 350mAh Battery
- 1.8%, 2.4%, and 5.0% Nicotine Options
- 1.8 mls of e-Liquid
- Quick Connect USB Charging System

https://vusevapor.com/alto-complete-kit (annotated in yellow).

**What is Vuse?**  −

Vuse is an <mark>E-cigarette brand</mark> with several innovative <mark>vapor products</mark> on the market, including our flagship brands, Vuse Solo, Vuse Ciro, and <mark>Vuse Vibe.</mark>

**How do Vuse products work?**  −

<mark>Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist.</mark>

Please review the product-specific FAQs and the User Guide applicable to your Vuse power unit for information on proper handling, storage, and charging of your Vuse power unit.

[https://vusevapor.com/faqs](https://vusevapor.com/faqs) (annotated in yellow).

166. The Accused VUSE ALTO Products include a Flavor Pack pod, which is a pod assembly.

   



*The Accused VUSE ALTO Products (Pod Shown)*

**_a plurality of external surfaces including a front face, a rear face opposite the front face, a first side face between the front face and the rear face, a second side face opposite the first side face, a downstream end face, and an upstream end face opposite the downstream end face;_**

167.    The Accused VUSE ALTO Products include pod assembly with a front face, a rear face opposite the front face, a first side face between the front face and the rear face, a second side face opposite the first side face, a downstream end face, and an upstream end face opposite the downstream end face.

83

   

 

*The Accused VUSE ALTO Products (Front, Rear, First Side, Second Side, Downstream End, and Upstream End Faces Shown)*

***a pre-vapor formulation compartment configured to hold a pre-vapor formulation such that the pre-vapor formulation is visible through at least the front face;***

168.    The Accused VUSE ALTO Products comprise a pre-vapor formulation compartment configured to hold a pre-vapor formulation such that the pre-vapor formulation is visible through the faces of the pod assembly.



*The Accused VUSE ALTO Products (Pre-vapor Formulation Compartment)*

**<u>a device compartment upstream from the pre-vapor formulation compartment,</u>**

169.   The Accused VUSE ALTO Products comprise a device compartment

upstream from the pre-vapor formulation compartment as part of the pod assembly.



*The Accused VUSE ALTO Products (Pre-vapor Formulation and Device Compartments Shown)*

**<u>the device compartment configured to heat the pre-vapor formulation to produce a vapor; and</u>**

170.    The Accused VUSE ALTO Products comprise a device compartment configured to heat the pre-vapor formulation to produce a vapor as part of the pod assembly.

171.    The Accused VUSE ALTO Products comprise a device compartment that includes a heater and a wick that are configured heat the liquid formulation in the pod assembly.



*The Accused VUSE ALTO Products (Device Compartment Shown)*



https://vusevapor.com/faqs (annotated in yellow).

***<u>a vapor channel extending through the pre-vapor formulation compartment, the vapor channel being visible through at least the front face.</u>***

172. The Accused VUSE ALTO Products comprise a vapor channel extending through the pre-vapor formulation compartment that is visible through the front face of the pod assembly.



*The Accused VUSE ALTO Products (Vapor Channel Shown)*

173.     Reynolds Vapor has also indirectly infringed and is indirectly infringing at least claim 24 of the 541 Patent.

174.     Reynolds Vapor induces infringement of the 541 Patent by its customers under 35 U.S.C. § 271(b) by encouraging those customers to use the Accused VUSE ALTO Products, which Reynolds Vapor knows infringes the 541 Patent. Reynolds Vapor has had knowledge of the 541 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE ALTO Products by its customers directly infringes. The Accused VUSE ALTO Products infringe as shown above. Reynolds Vapor on its website and in the Accused VUSE ALTO Products' packaging, direct, instruct, and encourage customers of the Accused VUSE ALTO Products to use the Accused VUSE ALTO Products in an infringing manner.

88



*The Accused VUSE ALTO Products (Instructions for Use)*

*See also https://vusevapor.com/faqs* ("Vuse Alto pre-filled pods feature a clear reservoir, so you can see when the liquid is nearing the bottom of the pod, indicating it is time for a replacement.").

175.    Reynolds Vapor also contributes to infringement of the 541 Patent under 35 U.S.C. § 271(c). Reynolds Vapor has had knowledge of the 541 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE ALTO Products by its customers directly infringes. The Accused VUSE ALTO Products, including but not limited to the VUSE ALTO power units and flavor packs, have no substantial non-infringing uses, are not a staple article of commerce, and are specially

made and adapted for use in an infringing manner. For example, the Accused VUSE ALTO Products infringe as shown above. *See Instructions Included with Packaging for Alto Kit* (pictured above). *See also* [https://vusevapor.com/faqs](https://vusevapor.com/faqs) ("Vuse Alto pre-filled pods feature a clear reservoir, so you can see when the liquid is nearing the bottom of the pod, indicating it is time for a replacement.").

176.    Reynolds Vapor's infringement of the 541 Patent has been and continues to be deliberate, willful, and unlicensed, permitting Plaintiffs to seek enhanced damages under 35 U.S.C. § 284.

177.    Reynolds Vapor's infringement of the 541 Patent has been and continues to be deliberate, willful, and unlicensed, rendering this an exceptional case and permitting Plaintiffs to seek attorney fees and costs under 35 U.S.C. § 285.

178.    As a direct and proximate result of Reynolds Vapor's infringement of the 541 Patent, Plaintiffs have suffered monetary damages in an amount yet to be determined.

## COUNT VI
## INFRINGEMENT OF U.S. PATENT NO. 10,588,357

179.    Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

180.    The Accused VUSE ALTO Products directly infringe under 35 U.S.C. § 271, literally or under the doctrine of equivalents, one or more claims of the 357 Patent (including at least claims 1-3, 5, 7-8, and 10-15). Reynolds Vapor makes, uses, sells,

offers to sell, and/or imports the Accused VUSE ALTO Products in the United States, including in this Judicial District and elsewhere. *See, e.g.*, https://vusevapor.com/alto-complete-kit (Alto Complete Kit (Power Unit + Flavor Pack), https://vusevapor.com/devices/alto/flavors (Alto Flavor Pack Pods), https://vusevapor.com/alto-power-unit-blue (Alto Power Unit - Blue) (representative only).

181.    Set forth below is a non-limiting description of the direct infringement of claim 10 of the 357 Patent by Reynolds Vapor in connection with the Accused VUSE ALTO Products. The description is based on publicly available information. Plaintiffs reserve the right to modify the description, including, for example, on the basis of information about the Accused VUSE ALTO Products that it obtains during discovery.

## *Claim 10*

## *An e-vapor apparatus comprising:*

182.    In the period since the 357 Patent issued on March 17, 2020, the Accused VUSE ALTO Products comprise and have comprised an e-vapor apparatus.



# Alto Complete Kit

Power Unit + 2 Flavor Pods

$19.98

★★★★★ | 87 Reviews

**Device Color:** Silver

**Nicotine Level:**

| 1.8% | 2.4% | **5.0%** |

**Flavor:**

Golden Tobacco ⌄

**Qty**

1 ⌄

**ADD TO CART**

Big performance. Small package. Inspired design. Get it all with this complete kit that includes one Alto power unit, one Alto magnetic charger, and one flavor pack of your choice (two flavor pods included).

The Alto all-in-one pod mod is a hassle-free e-cig with smooth delivery. Pocket-sized and lightweight, this sleek little device is the perfect option to sync with your ever-moving lifestyle.

The Alto offers a tight draw and no visible airflow slots—just like puffing on a cigarette. And it offers rounded edges and a rounded mouthpiece too.

The Alto squeezes a 350mAh battery inside its smooth metal casing (available in slate or red) to power your inspiration all day long.

Customize your vaping experience with one of three flavors: golden tobacco, rich tobacco, and menthol. The Alto also lets you customize your nicotine level. All flavors now offer 1.8%, 2.4% and 5.0% nicotine options.

- All-in-One Device
- Powerful 350mAh Battery
- 1.8%, 2.4%, and 5.0% Nicotine Options
- 1.8 mls of e-Liquid
- Quick Connect USB Charging System

https://vusevapor.com/alto-complete-kit (annotated in yellow).

92



**What is Vuse?**

Vuse is an <mark>E-cigarette brand</mark> with several innovative <mark>vapor products</mark> on the market, including our flagship brands, Vuse Solo, Vuse Ciro, and <mark>Vuse Vibe.</mark>

**How do Vuse products work?**

<mark>Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist.</mark>

Please review the product-specific FAQs and the User Guide applicable to your Vuse power unit for information on proper handling, storage, and charging of your Vuse power unit.

https://vusevapor.com/faqs (annotated in yellow).

### *a pod assembly including a plurality of external surfaces,*

183.    The Accused VUSE ALTO Products include a Flavor Pack pod, which is a pod assembly that includes a plurality of external surfaces.

   

 

*The Accused VUSE ALTO Products (Pod Shown for a Plurality of External Surfaces)*

**_a liquid compartment;_**

184.    The Accused VUSE ALTO Products comprise a liquid compartment as part of the pod assembly.



Liquid Compartment

*The Accused VUSE ALTO Products (Liquid Compartment Shown)*

**_a vaporizer compartment;_**

185.    The Accused VUSE ALTO Products comprise a vaporizer compartment as part of the pod assembly.



*The Accused VUSE ALTO Products (Vaporizer Compartment Shown)*

**_and a vapor channel,_**

186.    The Accused VUSE ALTO Products comprise a vapor channel as part of the pod assembly.



*The Accused VUSE ALTO Products (Vapor Channel Shown)*

**<u>the plurality of external surfaces including a front face, a rear face, a first side face, a second side face, a downstream end face, and an upstream end face,</u>**

187.    The Accused VUSE ALTO Products include a front face, a rear face, a first side face, a second side face, a downstream end face, and an upstream end face as part of the pod assembly.





*The Accused VUSE ALTO Products (Front, Rear, First Side, Second Side, Downstream End, and Upstream End Faces Shown)*

**<u>a portion of at least the front face or the rear face being transparent,</u>**

188.　The Accused VUSE ALTO Products comprise front and rear faces that include at least a portion that is transparent as part of the pod assembly.



*The Accused VUSE ALTO Products (Transparent Portions Shown)*

**the liquid compartment configured to hold a liquid formulation such that the liquid formulation is visible through at least the front face or the rear face,**

189.    The Accused VUSE ALTO Products comprise a liquid compartment that is configured to hold 1.8 mL of "e-Liquid"—a liquid formulation—that is visible through the front, rear, and side faces of the pod assembly.



*The Accused VUSE ALTO Products (Visible Liquid Formulation in the Liquid Compartment Shown)*

Customize your vaping experience with one of three flavors: golden tobacco, rich tobacco, and menthol. The Alto also lets you customize your nicotine level. All flavors now offer 1.8%, 2.4% and 5.0% nicotine options.

- All-in-One Device
- Powerful 350mAh Battery
- 1.8%, 2.4%, and 5.0% Nicotine Options
- 1.8 mls of e-Liquid
- Quick Connect USB Charging System

https://vusevapor.com/alto-complete-kit (annotated in yellow).

***the vapor channel surrounded by the liquid compartment, the vapor channel being visible through at least the front face or the rear face; and***

190.    The Accused VUSE ALTO Products comprise a vapor channel that is surrounded by the liquid compartment and is visible through the front and rear faces as part of the pod assembly.



*The Accused VUSE ALTO Products (Vapor Channel Shown)*

**<u>a device body including a magnet and defining a pod compartment</u>**

191.    The Accused VUSE ALTO Products comprise a power unit, which is a device body defining a pod compartment and includes multiple magnets.



*The Accused VUSE ALTO Products (Device Body)*



*The Accused VUSE ALTO Products (Device Body and Pod Compartment Shown)*



*The Accused VUSE ALTO Products (Magnetic Connection Shown)*

**_configured to receive the pod assembly so as to produce an audible click._**

192.    The Accused VUSE ALTO Products comprise a power unit that is

configured to receive the pod assembly so as to produce an audible click.  When the

upstream end of the pod assembly meets the magnetic connection of the power unit, an audible click is produced.

 

*The Accused VUSE ALTO Products (The Power Unit Receiving the Pod Assembly Shown)*

193.    Reynolds Vapor has also indirectly infringed and is indirectly infringing at least claims 1-3, 5, 7-8, and 10-15 of the 357 Patent.

194.    Reynolds Vapor induces infringement of the 357 Patent by its customers under 35 U.S.C. § 271(b) by encouraging those customers to use the Accused VUSE ALTO Products, which Reynolds Vapor knows infringes the 357 Patent. Reynolds Vapor has had knowledge of the 357 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VUSE ALTO Products by its customers directly infringes. The Accused VUSE ALTO Products infringe as shown above.

Reynolds Vapor on its website and in the Accused VUSE ALTO Products' packaging,

direct, instruct, and encourage customers of the Accused VUSE ALTO Products to use

the Accused VUSE ALTO Products in an infringing manner.



*The Accused VUSE ALTO Products (Instructions for Use)*

*See also https://vusevapor.com/faqs* ("Vuse Alto pre-filled pods feature a clear reservoir,

so you can see when the liquid is nearing the bottom of the pod, indicating it is time for a

replacement.").

195. Reynolds Vapor also contributes to infringement of the 357 Patent under 35

U.S.C. § 271(c). Reynolds Vapor has had knowledge of the 357 Patent since at least the

filing of this lawsuit and knew or should have known that the use of the Accused VUSE

ALTO Products by its customers directly infringes. The Accused VUSE ALTO Products, including but not limited to the VUSE ALTO power units and flavor packs, have no substantial non-infringing uses, are not a staple article of commerce, and are specially made and adapted for use in an infringing manner. For example, the Accused VUSE ALTO Products infringe as shown above. *See Instructions Included with Packaging for Alto Kit* (pictured above)*. See also* *https://vusevapor.com/faqs* ("Vuse Alto pre-filled pods feature a clear reservoir, so you can see when the liquid is nearing the bottom of the pod, indicating it is time for a replacement.").

196.    Reynolds Vapor's infringement of the 357 Patent has been and continues to be deliberate, willful, and unlicensed, permitting Plaintiffs to seek enhanced damages under 35 U.S.C. § 284.

197.    Reynolds Vapor's infringement of the 357 Patent has been and continues to be deliberate, willful, and unlicensed, rendering this an exceptional case and permitting Plaintiffs to seek attorney fees and costs under 35 U.S.C. § 285.

198.    As a direct and proximate result of Reynolds Vapor's infringement of the 357 Patent, Plaintiffs have suffered monetary damages in an amount yet to be determined.

## COUNT VII
## INFRINGEMENT OF U.S. PATENT NO. 7,798,319

199.    Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

200.    The Accused VELO Products directly infringe under 35 U.S.C. § 271, literally or under the doctrine of equivalents, one or more claims of the 319 Patent (including at least claims 17-20, 22-23, and 25-26). Reynolds Vapor makes, uses, sells, offers to sell, and/or imports the Accused VELO Products in the United States, including in this Judicial District and elsewhere. *See, e.g.*, https://vusevapor.com/velo?intcmp=velo.

201.    Set forth below is a non-limiting description of the direct infringement of claim 17 of the 319 Patent by Reynolds Vapor in connection with the Accused VELO Products. The description is based on publicly available information. Plaintiffs reserve the right to modify the description, including, for example, on the basis of information about the Accused VELO Products that it obtains during discovery.

## *Claim 17*

### *A tobacco product package device, comprising:*

202.    In the period since the 319 Patent issued on September 21, 2010, the Accused VELO Products comprise a tobacco product package device.



*The Accused VELO Products (Mint Flavor Variety)*

### *a container defining an interior space and having a bottom wall,*

203. The Accused VELO Products comprise a container defining an interior space and having a bottom wall.



*The Accused VELO Products (Container with Interior Space and Bottom Wall)*

***a generally cylindrical side wall that extends from the bottom wall toward a connection rim;***

204. The Accused VELO Products comprise a container with a generally cylindrical side wall that extends from the bottom of wall toward a connection rim.



*The Accused VELO Products (Container with a Generally Cylindrical Side Wall Extending from the Bottom Wall Toward a Connection Rim)*

***a tobacco product for oral consumption arranged in the interior space of the container;***

205.    The Accused VELO Products comprise a tobacco product for oral consumption arranged in the interior space of the container. Reynolds Vapor tells consumers that the pouches of the Accused VELO Products are tobacco products because they contain nicotine extracted from the tobacco plant, under FDA regulations.  *See* https://www.velo.com/footer-links/faq.html.



*The Accused VELO Products (Oral Tobacco Product Arranged in the Interior Space)*

***a lid that encloses the tobacco product in the interior space of the container,***

206.    The Accused VELO Products comprise a lid that encloses the tobacco product in the interior space of the container.





*The Accused VELO Products (Lid that Encloses Tobacco Product in Container)*

***the lid including a lid wall that is integral with a skirt, wherein the skirt is releasably engaged with the connection rim; and***

207. The Accused VELO Products comprise a lid that includes a lid wall that is integral with a skirt, wherein the skirt is releasably engaged with the connection rim.





*The Accused VELO Products (Lid Having a Lid Wall and Integral Skirt that is Releasably Engaged with the Connection Rim)*

**_a resilient gasket in engagement with an interior surface of the lid wall to provide a moisture barrier and a non-hermetic seal between the lid and the container when the lid is secured to the container, the resilient gasket abutting with the connection rim of the container when the lid is secured to the container, wherein the moisture barrier inhibits the migration of moisture to and from the container when the lid is secured to the container, and wherein the non-hermetic seal permits gas exchange between ambient air and the interior space when the lid is secured to the container._**

208.    The Accused VELO Products comprise a resilient gasket that is in engagement with an interior surface of the lid wall and that abuts the connection rim of the container when the lid is secured to the container.



*The Accused VELO Products (Resilient Gasket Engaged to Lid Wall and that Abuts the Connection Rim when the Lid is Secured to the Container)*

209.   The resilient gasket of the Accused VELO Products provides a moisture barrier and a non-hermetic seal between the lid and the container, wherein the moisture barrier inhibits the migration of moisture to and from the container when the lid is secured to the container, and wherein the non-hermetic seal permits gas exchange between ambient air and the interior space when the lid is secured to the container.

110



*The Accused VELO Products (Resilient Gasket Provides a Moisture Barrier and a Non-Hermetic Seal Between the Lid and the Container to Inhibit Moisture Migration and to Permit Gas Exchange)*

210. Reynolds Vapor has also indirectly infringed and is indirectly infringing at least claims 17-20, 22-23, and 25-26 of the 319 Patent.

211. Reynolds Vapor induces infringement of the 319 Patent by its customers under 35 U.S.C. § 271(b) by encouraging those customers to use the Accused VELO Products, which Reynolds Vapor knows infringes the 319 Patent. Reynolds Vapor has had knowledge of the 319 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VELO Products by its customers directly infringes. The Accused VELO Products infringe as shown above. Reynolds Vapor on its website and in the Accused VELO Products' packaging, direct, instruct, and encourage customers of the Accused VELO Products to use the Accused VELO Products in an infringing manner. *See https://www.velo.com/footer-links/faq.html* ("How Do I Use VELO Nicotine Pouches?").



*The Accused VELO Products (Instructions For Use Printed on Lid Wall)*

212.   Reynolds Vapor also contributes to infringement of the 319 Patent under 35 U.S.C. § 271(c). Reynolds Vapor has had knowledge of the 319 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VELO Products by its customers directly infringes. The Accused VELO Products, including but not limited to the VELO container and lid, has no substantial non-infringing uses, is not a staple article of commerce, and is specially made and adapted for use in an infringing manner. For example, the Accused VELO Products infringe as shown above. *See* container labeling ("Sealed For Freshness").

112

213.    Reynolds Vapor's infringement of the 319 Patent has been and continues to be deliberate, willful, and unlicensed, permitting Plaintiffs to seek enhanced damages under 35 U.S.C. § 284.

214.    Reynolds Vapor's infringement of the 319 Patent has been and continues to be deliberate, willful, and unlicensed, rendering this an exceptional case and permitting Plaintiffs to seek attorney fees and costs under 35 U.S.C. § 285.

215.    As a direct and proximate result of Reynolds Vapor's infringement of the 319 Patent, Plaintiffs have suffered monetary damages in an amount yet to be determined.

<u>**COUNT VIII**</u>
<u>**INFRINGEMENT OF U.S. PATENT NO. 8,458,996**</u>

216.    Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

217.    Reynolds Vapor performs a method of making the Accused VELO Products that directly infringes under 35 U.S.C. § 271, literally or under the doctrine of equivalents, one or more claims of the 996 Patent (including at least claims 1, 4, and 5). Reynolds Vapor makes the Accused VELO Products in the United States, including in this Judicial District and elsewhere. *See, e.g.*, https://www.velo.com/footer-links/faq.html ("Velo Nicotine Pouches are manufactured in Winston-Salem, N.C.").

218.    Set forth below is a non-limiting description of the direct infringement of claim 1 of the 996 Patent by Reynolds Vapor in connection with the Accused VELO

Products. The description is based on publicly available information. Plaintiffs reserve the right to modify the description, including, for example, on the basis of information about the Accused VELO Products that it obtains during discovery.

## *Claim 1*

### *A method of packaging a tobacco product, comprising forming a tobacco product container*

219.    In the period since the 996 Patent issued on June 11, 2013, the Accused VELO Products are made by a method of packaging a tobacco product, comprising forming a tobacco product container.  The Accused VELO Products comprise a tobacco product for oral consumption arranged in the interior space of the container. Reynolds Vapor tells consumers that the pouches of the Accused VELO Products are tobacco products because they contain nicotine extracted from the tobacco plant, under FDA regulations.  *See* https://www.velo.com/footer-links/faq.html.



*The Accused VELO Products (Mint Flavor Variety)*



*The Accused VELO Products (Tobacco Product)*

**_having an interior space that is at least partially defined by a bottom wall, a side wall including an outwardly curved exterior surface portion, and a top opening;_**

220.    The Accused VELO Products are made by a method comprising forming a tobacco product container having an interior space at least partially defined by a bottom wall, a side wall including an outwardly curved exterior surface portion, and a top opening.



*The Accused VELO Products (Container Having an Interior Space at Least Partially Defined by a Bottom Wall, a Side Wall Including an Outwardly Curved Exterior Surface Portion, and a Top Opening)*

***forming a lid that includes lid wall integral with a skirt, the skirt providing a releasable engagement with a connection rim of the tobacco product container when the lid is releasably engaged with the tobacco product container;***

221.    The Accused VELO Products are made by a method comprising forming a lid wall integral with a skirt, the skirt providing a releasable engagement with a connection rim of the tobacco product container when the lid is releasably engaged with the tobacco product container.







*The Accused VELO Products (Lid Having a Lid Wall and Integral Skirt that is Releasably Engaged with the Connection Rim of the Container)*

**_affixing a resilient gasket to an interior surface of the lid wall proximate to the skirt;_**

117

222.    The Accused VELO Products are made by a method comprising affixing a

resilient gasket to an interior surface of the lid wall proximate to the skirt.



*The Accused VELO Products (Resilient Gasket Affixed to Interior Surface of Lid Wall*
*Proximate to the Skirt)*

***depositing a predetermined amount of an orally consumable tobacco product in the***
***interior space of the tobacco product container; and***

223.    The Accused VELO Products are made by a method comprising depositing

a predetermined amount of an orally consumable tobacco product in the interior space of

the tobacco product container.  The Accused VELO Products comprise a tobacco product

for oral consumption arranged in the interior space of the container. Reynolds Vapor tells

consumers that the pouches of the Accused VELO products are tobacco products because

they contain nicotine extracted from the tobacco plant, under FDA regulations.  *See*

https://www.velo.com/footer-links/faq.html.



*The Accused VELO Products (Predetermined Amount of Oral Tobacco Product in Interior Space of Container)*

***securing the lid to the connection rim of the tobacco product container so that the resilient gasket abuts the connection rim between the lid and the container to form a moisture barrier and a non-hermetic seal for the orally consumable tobacco product enclosed in the interior space, wherein the lid releasably engages to the connection rim of the tobacco product container so that the resilient gasket provides the non-hermetic seal between the lid and the container, and wherein the non-hermetic seal permits venting of byproduct gases from the container when the lid is releasably engaged with the container.***

224.    The Accused VELO Products are made by a method comprising securing the lid to the connection rim of the tobacco product container so that the resilient gasket abuts the connection rim between the lid and the container and so that the lid is releasably engaged to the connection rim of the tobacco product container.







*The Accused VELO Products (Resilient Gasket Abuts the Connection Rim Between the Lid and the Container When the Lid is Secured to the Connection Rim)*

225.    When the resilient gasket of the Accused VELO Products abuts the connection rim, the resilient gasket forms a moisture barrier and a non-hermetic seal for the orally consumable tobacco product enclosed in the interior space, provides the non-hermetic seal between the lid and the container, and permits venting of byproduct gases from the container.



*The Accused VELO Products (Resilient Gasket Provides a Moisture Barrier and a Non-Hermetic Seal and Permits Venting of Byproduct Gases)*

226.    Reynolds Vapor has also indirectly infringed and is indirectly infringing at least claims 1, 4, and 5 of the 996 Patent.

227.    Reynolds Vapor also induces infringement of the 996 Patent under 35 U.S.C. § 271(b). Reynolds Vapor has had knowledge of the 996 Patent since at least the filing of this lawsuit and knew or should have known that the method of making the Accused VELO Products by others directly infringes. Reynolds Vapor actively encourages others to perform the steps of making the Accused VELO Products that

infringe the 996 Patent and knows that the performance of these steps infringes the 996 Patent. For example, the Accused VELO Products infringe as shown above.

228.    Reynolds Vapor's infringement of the 996 Patent has been and continues to be deliberate, willful, and unlicensed, permitting Plaintiffs to seek enhanced damages under 35 U.S.C. § 284.

229.    Reynolds Vapor's infringement of the 996 Patent has been and continues to be deliberate, willful, and unlicensed, rendering this an exceptional case and permitting Plaintiffs to seek attorney fees and costs under 35 U.S.C. § 285.

230.    As a direct and proximate result of Reynolds Vapor's infringement of the 996 Patent, Plaintiffs have suffered monetary damages in an amount yet to be determined.

## COUNT IX
## INFRINGEMENT OF U.S. PATENT NO. 8,556,070

231.    Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

232.    The Accused VELO Products directly infringe under 35 U.S.C. § 271, literally or under the doctrine of equivalents, one or more claims of the 070 Patent (including at least claims 1-6, 8, 10-22, and 25-28). Reynolds Vapor makes, uses, sells, offers to sell, and/or imports the Accused VELO Products in the United States, including in this Judicial District and elsewhere. *See, e.g.*,

https://vusevapor.com/velo?intcmp=velo-cite.

233.  Set forth below is a non-limiting description of the direct infringement of claim 1 of the 070 Patent by Reynolds Vapor in connection with the Accused VELO Products. The description is based on publicly available information. Plaintiffs reserve the right to modify the description, including, for example, on the basis of information about the Accused VELO Products that it obtains during discovery.

***Claim 1***

***A tobacco product package device, comprising:***

234.  In the period since the 070 Patent issued on October 15, 2013, the Accused VELO Products comprise a tobacco product package device. The Accused VELO Products comprise a tobacco product for oral consumption arranged in the interior space of the container. Reynolds Vapor tells consumers that the pouches of the Accused VELO Products are tobacco products because they contain nicotine extracted from the tobacco plant, under FDA regulations.  *See* https://www.velo.com/footer-links/faq.html.



*The Accused VELO Products (Mint Flavor Variety)*

***a container having a bottom wall,***

235. The Accused VELO Products comprise a container having a bottom wall.



*The Accused VELO Products (Container with Bottom Wall)*

**_a side wall that extends in an axial direction from the bottom wall toward a connection rim, and_**

236. The Accused VELO Products comprise a container having a side wall that extends in an axial direction form the bottom wall toward a connection rim.



*The Accused VELO Products (Container with a Side Wall Extending Axially from the Bottom Wall Toward a Connection Rim)*

**_a top opening that is at least partially defined by the connection rim,_**

237.    The Accused VELO Products comprise a container having a top opening that is at least partially defined by the connection rim.



*The Accused VELO Products (Container With a Top Opening at Least Partially Defined by the Connection Rim)*

**<u>the container defining an interior space that is in communication with the top opening,</u>**

238.    The Accused VELO Products comprise a container defining an interior space that is in communication with the top opening.



*The Accused VELO Products (Container with Interior Space in Communication with Top Opening)*

**<u>at least a portion of the side wall being outwardly convexly curved away from the interior space;</u>**

239.    The Accused VELO Products comprise a container having a side wall, at least a portion of which is outwardly convexly curved away from the interior space.



*The Accused VELO Products (Container with at Least a Portion of a Side Wall Convexly Curving Away from the Interior Space)*

**a tobacco product arranged in the interior space of the container;**

240.    The Accused VELO Products comprise a tobacco product for oral consumption arranged in the interior space of the container. Reynolds Vapor tells consumers that the pouches of the Accused VELO products are tobacco products because they contain nicotine extracted from the tobacco plant, under FDA regulations.  See https://www.velo.com/footer-links/faq.html.



*The Accused VELO Products (Tobacco Product Arranged in the Interior Space)*

**_a metallic lid that releasably engages the container to enclose the tobacco product in the interior space,_**

241.    The Accused VELO Products comprise a metallic lid that releasably engages the container to enclose the tobacco product in the interior space.





*The Accused VELO Products (Metallic Lid that Releasably Engages the Container to Enclose the Tobacco Product)*

**<u>the metallic lid including a lid wall that is integral with a skirt, wherein the skirt provides a releasable engagement with the connection rim; and</u>**

242.   The Accused VELO Products comprise a metallic lid that includes a lid wall that is integral with a skirt, wherein the skirt provides a releasable engagement with the connection rim.





*The Accused VELO Products (Metallic Lid Having a Lid Wall and Integral Skirt that is Releasably Engaged with the Connection Rim)*

***a resilient gasket affixed to an interior surface of the lid wall proximate to the skirt to provide a moisture barrier and a non-hermetic seal between the metallic lid and the container when the metallic lid is releasably engaged with the container, wherein the resilient gasket comprises a strip of polymer material affixed directly onto a perimeter channel of the lid wall, and wherein the non-hermetic seal permits venting of byproduct gases from the container when the metallic lid is releasably engaged with the container.***

243.    The Accused VELO Products comprise a resilient gasket affixed to an

interior surface of the lid wall proximate to the skirt, wherein the resilient gasket

comprises a strip of polymer material affixed directly onto a perimeter channel of the lid wall.



*The Accused VELO Products (Resilient Gasket Comprised of Polymer Material that is Directly Affixed to a Perimeter Channel of a Lid Wall and that is Proximate to the Skirt)*

244.    The resilient gasket of the Accused VELO Products provides a moisture barrier and a non-hermetic seal between the metallic lid and the container when the metallic lid is releasably engaged with the container, wherein the non-hermetic seal permits venting of byproduct gases from the container when the metallic lid is releasably engaged with the container.



*The Accused VELO Products (Resilient Gasket Provides a Moisture Barrier and a Non-Hermetic Seal Between the Metallic Lid to Permit Venting of Byproduct Gases when the Metallic Lid is Releasably Engaged with the Container)*

245.    Reynolds Vapor has also indirectly infringed and is indirectly infringing at least claims 1-6, 8, 10-22, and 25-28 of the 070 Patent.

246.    Reynolds Vapor induces infringement of the 070 Patent by its customers under 35 U.S.C. § 271(b) by encouraging those customers to use the Accused VELO Products, which Reynolds Vapor knows infringes the 070 Patent. Reynolds Vapor has had knowledge of the 070 Patent since at least the filing of this lawsuit and knew or should have known that the use of the Accused VELO Products by its customers directly infringes. The Accused VELO Products infringe as shown above. Reynolds Vapor on its website and in the Accused VELO Products' packaging, direct, instruct, and encourage customers of the Accused VELO Products to use the Accused VELO Products in an

infringing manner. *See* *https://www.velo.com/footer-links/faq.html* ("How Do I Use

VELO Nicotine Pouches?").



*The Accused VELO Products (Instructions For Use Printed on Lid Wall)*

247.    Reynolds Vapor also contributes to infringement of the 070 Patent under 35

U.S.C. § 271(c). Reynolds Vapor has had knowledge of the 070 Patent since at least the

filing of this lawsuit and knew or should have known that the use of the Accused VELO

Products by its customers directly infringes. The Accused VELO Products, including but

not limited to the VELO container and lid, has no substantial non-infringing uses, is not a

staple article of commerce, and is specially made and adapted for use in an infringing

132

manner. For example, the Accused VELO Products infringe as shown above. *See* container labeling ("Sealed For Freshness").

248. Reynolds Vapor's infringement of the 070 Patent has been and continues to be deliberate, willful, and unlicensed, permitting Plaintiffs to seek enhanced damages under 35 U.S.C. § 284.

249. Reynolds Vapor's infringement of the 070 Patent has been and continues to be deliberate, willful, and unlicensed, rendering this an exceptional case and permitting Plaintiffs to seek attorney fees and costs under 35 U.S.C. § 285.

250. As a direct and proximate result of Reynolds Vapor's infringement of the 070 Patent, Plaintiffs have suffered monetary damages in an amount yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief against Defendant as follows:

(a)    A judgment that Defendant has infringed and is infringing each of the Asserted 242, 824, 517, 269, 541, 357, 319, 996, and 070 Patents;

(b)    A judgment that Defendant has contributed to and induced infringement of each of the Asserted 242, 824, 517, 269, 541, 357, 319, 996, and 070 Patents, and is actively contributing to and inducing infringement of each of the Asserted 242, 824, 517, 269, 541, 357, 319, 996, and 070 Patents;

133

(c)     An award of damages adequate to compensate Plaintiffs for the infringement that has occurred, under 35 U.S.C. § 284, including with pre-judgment and post-judgment interest;

(d)     An award of treble damages for Defendant's willful infringement of the Asserted Patents, pursuant to 35 U.S.C. § 284;

(e)     An accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding imposition of a compulsory ongoing royalty;

(f)     An award of attorneys' fees, expenses and costs based on this being an exceptional case under 35 U.S.C. § 285, including prejudgment interest on such fees, expenses and costs;

(g)     Costs and expenses in this action; and

(h)     Such other and further relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiffs request a trial by jury as to all issues so triable.

Dated:  May 28, 2020                         Respectfully submitted,

_/s/ Robert C. Van Arnam_
Robert C. Van Arnam
N.C. Bar No. 28838
Andrew R. Shores
N.C. Bar No. 46600
WILLIAMS MULLEN
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
Tel:  (919) 981-4000

Elizabeth S. Weiswasser *
Anish R. Desai *
WEIL, GOTSHAL & MANGES LLP
767 5th Avenue
New York, NY 10153
Tel:  (212) 310-8000

Brian E. Ferguson *
Robert T. Vlasis III *
W. Sutton Ansley *
Stephen P. Bosco *
Stephanie Adamakos *
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Tel:  (202) 682-7000

Adrian C. Percer *
Robert S. Magee *
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel:  (650) 802-3000

*Counsel for Plaintiffs Altria Client Services
LLC and U.S. Smokeless Tobacco Company
LLC*

*\* Special Appearance Under Local Rule
83.1(d) in process*

135