**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ALTRIA CLIENT SERVICES LLC and | ) | |
| U.S. SMOKELESS TOBACCO | ) | |
| COMPANY LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | 1:20CV472 |
| | ) | |
| R.J. REYNOLDS VAPOR COMPANY | ) | |
| and MODORAL BRANDS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Among the pending motions in this matter are Plaintiffs' Motion to Strike

Defendants' Final Invalidity Contentions, Supplemental Final Invalidity Contentions,

and Supplemental Response to Interrogatory No. 16 [Doc. #100] and an associated

Amended Motion to Seal [Doc. #134]. Plaintiffs have moved to strike "as untimely

and improper" portions of Defendants' Final Invalidity Contentions and

Supplemental Final Invalidity Contentions and their Second Supplemental Response

to Interrogatory No. 16. The parties submitted a Joint Status Report on May 23,

2022, in which Plaintiffs maintain that the progress of this case since the filing of

the motion has had no effect while Defendants contend that their "invalidity

contentions and theories have been narrowed and fully aired in the parties'

respective competing expert reports". (Joint Status Report [Doc. #271].) For the

reasons explained below, each motion is granted in part and denied in part.

I.

After the parties exchanged their respective preliminary infringement and invalidity contentions, the Court issued its Claim Construction ruling on May 12, 2021. Pursuant to Local Patent Rule 103.6(a), Plaintiffs provided Final Infringement Contentions on June 11 [Doc. #120-1]. Defendants then served their Final Invalidity Contentions and Supplemental Final Invalidity Contentions on July 1 and July 12, respectively [Doc. #120-3], referred to collectively by Plaintiffs as "Final Contentions" (Pls.' Br. in Supp. at 1 [Doc. #101]). Plaintiffs challenge the timing, content, and general propriety of these Final Contentions.

### A.

Subject to several exceptions, Local Patent Rule 103.6 provides that the parties' preliminary contentions are deemed to be their final contentions. One such exception permits <u>a party claiming infringement</u> to serve, no later than thirty days after the claim construction ruling, "Final Infringement Contentions" without leave of the court if the party believes in good faith that the ruling requires amendment of the preliminary contentions. L. Patent R. 103.6(a). In addition, <u>either party</u> may amend its preliminary contentions within thirty days of receiving discovery that reveals information the party believes in good faith requires modifying the contentions. L. Patent R. 103.6(b) (also defining "discovery"). And <u>a party opposing a claim of infringement</u> may serve, no later than fifty days after the claim construction ruling, "Final Invalidity Contentions" without leave of the court if "(1) a party claiming patent infringement has served 'Final Infringement Contentions' pursuant to LR 103.6(a), or (2) the party opposing a claim of patent infringement

2

believes in good faith that the Court's Claim Construction Ruling so requires the amendment." L. Patent R. 103.6(c).

Amendments to preliminary or final contentions may be made as Rule 103.6 permits or within thirty days "of the discovery of new information relevant to the issues of infringement, noninfringement, or invalidity." L. Patent R. 103.7. "Otherwise, amendment or modification shall be made only by order of the Court, which shall be entered only upon a showing of good cause." L. Patent R. 103.7.

B.

First, Defendants argue that their Final Invalidity Contentions are proper under Local Patent Rule 103.6(c)(1) because Plaintiffs served Final Infringement Contentions pursuant to Rule 103.6(a). (Defs.' Opp'n at 9-12 [Doc. #122].) But Plaintiffs maintain that the rule requires Final Invalidity Contentions to be responsive to the Final Infringement Contentions.[1] (Pls.' Br. in Supp. at 13-15.)

Rule 103.6 is "unique to patent cases [and is] likely to directly affect the substantive patent law theories that may be presented at trial". O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1364 (Fed. Cir. 2006) (determining the validity of local patent rules).[2] Thus, its interpretation is governed by Federal Circuit law which requires that local rules be consistent with the Federal Rules of Civil Procedure. Id. at 1364-65 (internal quotation marks and citation

---

[1] Plaintiffs do not challenge the timeliness of the Final Invalidity Contentions, nor could they do so successfully as they were served not later than fifty days after the claim construction ruling.

[2] The same is true for Local Patent Rules 103.7 and 103.3.

3

omitted).  Local Patent Rules like the ones at issue here "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." Id. at 1366; see also L. Patent R. 101.2(a) ("These Local Patent Rules are intended to facilitate the speedy, fair and efficient resolution of patent disputes.").

The Federal Circuit views Local Patent Rules as "essentially a series of case management orders." O2 Micro Int'l, Ltd., 467 F.3d at 1366.  Accordingly, "[t]he Court may accelerate, extend, eliminate, or modify the obligations or deadlines set forth in [this district's] Local Patent Rules based on the circumstances of any particular case, including, without limitation, the complexity of the case or the number of patents, claims, products, or parties involved." L. Patent R. 101.2(b). Furthermore, "[t]he court may impose any 'just' sanction for the failure to obey a scheduling order, including 'refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.'" O2 Micro Int'l Ltd., 467 F.3d at 1366 (quoting Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2)(B)[3]).

Not only is there "little caselaw interpreting this district's Patent Rules", but "the Federal Circuit has not addressed the Patent Rules relevant here[,] [and] [m]uch of the caselaw interpreting local patent rules involves the Northern District of California's Patent Local Rules." OptoLum, Inc. v. Cree, Inc., No. 1:17CV687,

---

[3] These prohibitions are currently found in Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure.

2019 WL 3037495, at *2 (M.D.N.C. July 11, 2019) (interpreting Local Patent

Rules 103.6 and 103.7). Furthermore, that district's rules differ from this district's

rules in such a way that the caselaw is merely "instructive but not particularly

persuasive". Id. However, the Local Patent Rules of the Eastern District of North

Carolina "are substantively similar" to this district's rules, id., and the judges in

that district have had occasion to address arguments similar to those presented

here.

"When interpreting a Patent Rule, the court begins with the plain language

of the rule's text." Id. (citing Veolia Water Sols. & Techs. Support v. Siemens

Indus., Inc., 63 F. Supp. 3d 558, 563 (E.D.N.C. 2014) (citing Dodd v. United

States, 545 U.S. 353, 359 (2005))). Rule 103.6(c) states,

> Not later than fifty (50) days after service by the Court of its
> Claim Construction Ruling, each party opposing a claim of patent
> infringement may serve "Final Invalidity Contentions" without leave of
> court that amend its "Preliminary Invalidity Contentions" with respect
> to the information required by LR 103.3 if:
>> (1) a party claiming patent infringement has served "Final
>> Infringement Contentions" pursuant to LR 103.6(a), or
>> (2) the party opposing a claim of patent infringement
>> believes in good faith that the Court's Claim Constructing
>> Ruling so requires the amendment.

Nothing in this rule requires that Defendants' Final Invalidity Contentions

respond to Plaintiffs' Final Infringement Contentions. Instead, it simply permits

Defendants to serve Final Invalidity Contentions that amend their Preliminary

Invalidity Contentions so long as Plaintiffs serve Final Infringement Contentions

pursuant to Rule 103.6(a) which Plaintiffs did. As explained by the court in the

Eastern District of North Carolina interpreting a nearly identical rule, "the court's role is not in this instance to improve upon the language of the rule but rather to apply it as written." Krausz Indus. Ltd. v. Smith-Blair, Inc., No. 5:12-CV-570-FL, 2016 WL 1574042, at *2 (Apr. 19, 2016) (finding that the defendants' final non-infringement and invalidity contentions were properly served pursuant to then-Local Patent Rule 303.6 because the plaintiff had served Final Infringement Contentions and that nothing more was required[4]). Because Defendants' Final Invalidity Contentions are proper under Rule 103.6(c)(1), it is unnecessary to assess whether they would be proper under any other rule.[5]

C.

While Local Patent Rule 103.6 governs final contentions, Rule 103.7 addresses amendments to preliminary or final contentions. It reads:

---

[4] At the time of the opinion, the Eastern District of North Carolina's Local Patent Rule 303.6 mirrored this district's Rule 103.6. The Eastern District's rules have since been amended. See E.D.N.C. Local Patent Rules of Practice and Procedure January 2019, available at http://www.nced.uscourts.gov/pdfs/Local%20Patent%20Rules%20January%202019.pdf.

[5] Whether Plaintiffs are prejudiced is part of the analysis for good cause in Rule 103.7. See O2Micro Int'l Ltd., 467 F.3d at 1366, 1368 (assessing good cause and concluding that the plaintiff did not act diligently in moving to amend and, thus, there was no need to consider the question of prejudice to the defendant); Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc., No. 5:11-CV-00296-FL, 2013 WL 2149209, at *3 (E.D.N.C. May 16, 2013) (citing O2Micro Int'l Ltd. for the requirement that a party show diligence and lack of prejudice to demonstrate good cause). But see OptoLum, Inc., 2019 WL 3037495, at *4 (assessing prejudice even though the court relied on Rule 103.6(b) to permit amendment). Good cause need not be addressed here because Defendants' Final Invalidity Contentions are permitted by Rule 103.6(c)(1). See Krausz Indus. Ltd., 2016 WL 1574042, at *3 n.3 (stating the same).

6

Amendment or modification of the Preliminary or Final Infringement Contentions or the Preliminary or Final Invalidity Contentions may be made only as expressly permitted by Local Civil [sic] Rule 103.6, or within thirty (30) days of the discovery of new information relevant to the issues of infringement, noninfringement, or invalidity. Otherwise, amendment or modification shall be made only by order of the Court, which shall be entered only upon a showing of good cause.

D.

Defendants argue that Rule 103.7 permits their Supplemental Final Invalidity Contentions because the contentions "responded to [Plaintiffs'] belated production of the Green Smoke teardown document" – "new information" "relevant to the issue of invalidity". (Defs.' Opp'n at 12-13.) According to Defendants, five days after they served their Final Invalidity Contentions, Plaintiffs "produced a detailed teardown of the Green Smoke product" hours before Defendants were scheduled to depose Plaintiffs' inventor Eyal Peleg. (Id. at 4-5.) During his deposition, Peleg testified that in May 2021 he "found pictures [in his files] of the electronic cigarette parts" "taken apart"[6] and provided those to Plaintiffs' counsel "in the beginning of June" 2021. (Id. at 5 (citing Ex. 2, Peleg Dep. 20:21-21:15, July 7, 2021 [Doc. #120-2]).) They were produced to Defendants the following month. (Id.) Within six days of production, Defendants served their Supplemental Final Invalidity Contentions "adding the Green Smoke product as prior art to the Weigensberg patents." (Id. (citing Ex. 3, Defendants' Supplemental Final Invalidity

_____

[6] This teardown was apparently performed in August 2012. (See Defs.' Notice of Resp. at 1 [Doc. #288].)

7

Contentions (redlined excerpts)).)  According to Plaintiffs, though, "Defendants have been aware of the Green Smoke device since 2011 and even tested the device in 2014[7]" and "similar teardown images have been available online since at least June 2016." (Pls.' Reply at 1 [Doc. #148].)

After the Court reviewed these arguments, the parties were requested to provide more information. (Text Order (June 17, 2022).)  Plaintiffs were to explain why Defendants should have been aware that the Green Smoke device about which Defendants knew since 2011 and tested in 2014 related to the issues in this case. (Id.)  Defendants were to explain how the teardown of the Green Smoke device they received in July 2021 is different than the Green Smoke device about which they have known since 2011, that they tested in 2014, and for which teardowns have been available online since 2016 such that the July 2021 teardown is "new information". (Id.)

Plaintiffs contend that a "November 2011 presentation commissioned by Reynolds notes that the Green Smoke device included 'FlavorMax cartridges' and 'batteries,' . . . two key components to the patents-in-issue[]." (Pls.' Resp. to June 17, 2022 Order at 1 (citing a sealed document that has since been withdrawn from the electronic docket and Ex. 1 to the Resp. which is a December 2014 document) [Doc. #289].)  Defendants respond that the 2011 presentation was "a high-level marketing overview of the e-cigarette market".  (Defs.' Notice of Resp.

---

[7] Defendants indicated to Plaintiffs that "they do not contest the accuracy of this" sentence. (Pls.' Reply at 1 n.2 [Doc. #148].)

Case 1:20-cv-00472-NCT-JLW   Document 293   Filed 07/06/22   Page 8 of 23

at 1 [Doc. #288].) The Court agrees with Defendants that the November 2011 presentation is not the same as the detailed teardown Peleg made in August 2012 and was produced to Defendants in July 2021 and would not have "provided the kind of technical detail that would have supported an assertion that the Green Smoke product rendered the Weigensberg Patents invalid", (id.). Next, the test Defendants performed in 2014 was "of total particulate matter per puff of various e-cigarettes" that similarly falls short of providing technical detail of the Green Smoke device, (id.), even assuming that the test was performed on e-cigarettes that pre-dated the patents. Finally, the 2016 Green Smoke teardown was among allegations in the complaint in Fontem Ventures B.V. v. Nu Mark LLC filed in the Central District of California. Perhaps Reynolds reviewed the teardown in that complaint as part of its defense to an action by Fontem Ventures B.V. against Reynolds instituted after the Nu Mark suit. But more important, it is unclear how a teardown in a 2016 court document would "have established the product as prior art to the Weigensberg Patents", (id. at 2).

It is determined that the Green Smoke teardown from August 2012 that was produced to Defendants on July 6, 2021 and included six days later in Defendants' Supplemental Final Invalidity Contentions was new information relevant to the issue of invalidity, see L. Patent R. 103.7.

Defendants "also amended [their] Final Invalidity Contentions for the Bried patent family to address newly discovered tins" that they purchased on pipestud.com "(a website whose inventory is constantly changing)" "shortly before

9

[they] deposed a third party, Steven Fallon of pipestud.com." (Defs.' Opp'n at 13.) But Plaintiffs argue that Defendants could have purchased the tins earlier as they had done in the past. (Pls.' Reply at 7.)

After reviewing these arguments and understanding from the briefing that Defendants had amended their Final Invalidity Contentions to add these tins in their Supplemental Final Invalidity Contentions, the Court requested that Defendants explain how these newly purchased tins are different than those identified in their November 2020 preliminary invalidity contentions. (Text Order (June 17, 2022).) In their response, Defendants state that their "July 1, 2021 Final Invalidity Contentions identified these three tins purchased from Pipestud," along with those in their Preliminary Contentions, (Defs.' Notice of Resp. at 4), which strongly suggests that Rule 103.6(c) applies. Yet, they also claim that their Final Invalidity Contentions identified "those tins in under 30 days", (id.), presumably referring to the thirty-day requirement in Rule 103.7.

Under either rule, the identification of the three new tins is proper. If Rule 103.6(c) applies because the tins were in Defendants' Final Invalidity Contentions, those contentions are permissible for the reasons stated above. If Defendants did not include the three new tins until their Supplemental Final Invalidity Contentions, Rule 103.7 would permit them because they would be new information apparently provided within thirty days of discovery. According to Defendants' expert, these tins "come from different companies/sellers, have different sizes, markings/labeling, structures, materials, and contain different product." (Defs.'

10

Opp'n at 3 (citing Ex. 2 to Notice).)  In sum, the rules permit addition of Green Smoke and the tins to Defendants' invalidity contentions.

### E.

Not only have Plaintiffs challenged the timing of Defendants' contentions, but Plaintiffs claim their content is insufficient under Local Patent Rule 103.3(b). When identifying prior art in preliminary invalidity contentions, Local Patent Rule 103.3(b) requires that the contentions state "[w]hether each item of prior art anticipates each asserted claim or renders it obvious" and "[i]f a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified".  Preliminary invalidity contentions must also include a "chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found". L. Patent R. 103.3(c).

### F.

Plaintiffs argue that Defendants' Final Contentions do not comply with Local Patent Rule 103.3(b) and (c) because Defendants did not "identify the specific prior art combinations they intend to rely on . . . or what the motivation would be for a POSA to combine each of the references they identify." (Pls.' Br. in Supp. at 16.)  According to Plaintiffs, Defendants' contentions "allege that each asserted patent is invalid based on 'at least the patents, printed publications or other references listed above in the Identification Of Prior Art [which includes over 1000 pieces of prior art], either alone or in combination with one another." (Id. at 16

11

(citing Ex. 2, Defs.' Final Invalidity Contentions at 47, 65-66, 84, 114, 128-29, 144, 158, 171, 184 [Doc. #112]).)  And "the purported motivations to combine . . . are generalized to each patent, rather than for each combination" resulting in "a near-infinite number of possible alleged prior art combinations . . . to consider and rebut with no real indication of what the purported motivation to combine would be." (Id. (providing as an example a paragraph from Ex. 2 at 186).)

Presumably because Rule 103.3 is entitled "Preliminary Patent Invalidity Contentions", Defendants take issue with the timing of this motion because Plaintiffs did not raise a Rule 103.3 challenge to Defendants' Preliminary Invalidity Contentions. (Defs.' Opp'n at 3, 15.)  Nevertheless, as for the alleged lack of specificity of their obviousness combinations, Defendants respond that "[f]or each patent family, and on a patent-by-patent basis for each of the 9 asserted patents, [they] provided that very information". (Id. at 15 (citing Doc. [#112], Ex. 2 at 48-56, 67-75, 85-94 (Bried patents); 114-18, 129-33 (Weigensberg patents); 145-49, 159-63, 171-75, 184-88 (Hawes patents)).)  They also argue that they have "now narrowed [their] prior art references and combinations in [their] August 4 opening expert reports on invalidity. (Id. at 16 (citing Ex. 9 (summary) [Doc. #120-9], Ex. 10 (Hawes patents) [Doc. #120-10], Ex. 11 (Weigensberg patents) [Doc. #120-11], Ex. 12 (Weigensberg patents) [Doc. #120-12], Ex. 13[8] (Bried patents) [Doc.

_____

[8] Although Exhibit 13 is an excerpt from Dr. Floros' expert report, the portion submitted does not appear to include his invalidity opinions. (Compare, e.g., Ex. 12 with Ex. 13.)

#120-13]).)  Plaintiffs are unpersuaded that this has cured Defendants' rule violations. (Pls.' Reply at 9-10.)

The pages of Defendants' Final Invalidity Contentions that they claim comply with the rule do not adequately do so.  For example, when identifying the combinations that make the Asserted Claims of the '319 Patent obvious, Defendants state that those claims are obvious "over Barlow alone, or in view of the knowledge of a POSA, and/or one or more references identified by Reynolds, for example, Brucker and/or Patton and/or Budd and/or Giessler and/or Wheeler and/or Pellett and/or Boyd." (Pls.' Br. in Supp. Ex. 2 at 49.)  Defendants use this pattern of response throughout their Final Invalidity Contentions for each patent. (See generally id.)  Rule 103.3(b) requires that Defendants identify each combination of prior art that makes a claim obvious, but Defendants have given Plaintiffs a litany of choices that may possibly combine to make a claim obvious. How could this type of disclosure put Plaintiffs on notice of Defendants' invalidity contentions based on obviousness?  Furthermore, Defendants' purported identification of the motivation to make each combination is wholly insufficient considering the breadth of the possible combinations. (See, e.g., id. at 58-60.)

Despite Plaintiffs' claim that Defendants' contentions also violate Rule 103.3(c), Plaintiffs did not provide to the Court the charts that are exhibits to Defendants' Final Invalidity Contentions which the contentions describe as "charts identifying exemplary citations to where each limitation of" the Asserted Claims is found in the prior art, (e.g., id. at 61 (citing Exs. A-1 to A-41 for claims 1-3, 5,

13

and 7-10 of the '517 Patent)). (See generally id.)  It is impossible for a

determination to be made on the sufficiency of these charts when they are not

presented for review.  Upon a thorough search of this case's lengthy docket, it

was discovered that several of these charts were submitted by Plaintiffs in a later

motion seeking to strike expert opinions, (see Pls.' Reply Exs. 1-5 (Chart F-14,

Chart G-14, Chart H-14, Chart I-14 for the Hawes Patents) [Docs. #225-1 to 225-

5]).  However, not only are those charts associated only with the Hawes Patents,

but they were part of Defendants' Second Amended Invalidity Contentions which

Plaintiffs are not challenging.  Therefore, although Defendants' Final Contentions

do not comply with Rule 103.3(b), it cannot be determined that they also violate

Rule 103.3(c).

 As explained above, a violation of a local rule is akin to a violation of a

scheduling order for which "the court may impose any 'just' sanction . . . including

'refusing to allow the disobedient party to support or oppose designated claims or

defenses, or prohibiting that party from introducing designated matters in

evidence.'" O2 Micro Int'l Ltd., 467 F.3d at 1366.  Complicating matters is the

progress of the case since Plaintiffs' motion was filed.  Defendants claim to have

"narrowed [their] prior art references and combinations in the August 4 opening

expert reports on invalidity." (Defs.' Opp'n at 16 (citing Ex. 9-13).)[9]  Indeed, the

---

[9] After Plaintiffs filed this motion, Defendants "offered to jointly request an
extension of the expert-discovery deadlines in order to permit [Plaintiffs'] experts
additional time to consider the prior art and arguments set forth in [Defendants']
invalidity expert reports." (Defs.' Opp'n at 5-6.)  Plaintiffs describe this "offer to

obviousness opinions in the Hawes and Weigensberg opening expert reports are narrower than those in Defendants' contentions, (<u>compare</u> Pls.' Br. in Supp. Ex. 2 <u>with</u> Defs.' Opp'n Exs. 10-12), but the report excerpts make no mention of the motivation to combine the prior art, (<u>see generally</u> Defs.' Opp'n Exs. 10-12).  And the excerpted report for the Bried patents does not include the expert's obviousness opinions at all. (Defs.' Opp'n Ex. 13.)  Plaintiffs maintain that "the ability to address these issues in expert discovery or at summary judgment" has not cured the prejudice they allegedly suffered because they "were prohibited from completing fulsome <u>fact</u> discovery on these theories given how belatedly they were disclosed." (Joint Status Report at 10.)

In lieu of striking Defendants' Final Contentions, Defendants are ordered to comply immediately with Local Patent Rule 103.3(b).  Using the narrowed prior art in their expert reports, Defendants must identify for Plaintiffs each combination of prior art that makes a claim obvious and the motivation to combine such items. Anything less than specific information is unacceptable.  Defendants have five days from the date of this order to comply.

Next, Plaintiffs are afforded the opportunity to conduct accelerated discovery of their choosing (interrogatories, requests for production of documents, depositions) related to Defendants' combination and motivation disclosures.  This discovery will not delay trial.

---

delay the proceedings" as one that "only serves to benefit Defendants." (Pls.' Reply at 9.)

Finally, Defendants are ordered to pay Plaintiffs' attorney's fees and costs associated with (a) Plaintiffs' counsel's work on the portion of this motion that pertains to violation of Rule 103.3(b) and (b) Plaintiff's accelerated discovery, if any, related to Defendants' combination and motivation disclosures.  The parties are expected to come to an agreement on attorney's fees and costs without court involvement.  Provided that Plaintiffs supply Defendants with sufficient information to do so, Defendants must pay these fees and costs prior to the start of trial or risk the striking of their invalidity contentions.

II.

In addition to moving to strike Defendants' Final Contentions, Plaintiffs move to strike Defendants' Second Supplemental Response to Plaintiffs' Interrogatory No. 16[10], served two days prior to the close of fact discovery, in which, according to Plaintiffs, Defendants "espouse a brand-new equitable estoppel defense" that prejudices Plaintiffs because they did not have the opportunity to explore the bases for this defense during discovery. (Pls.' Br. in Supp. at 3, 19.)  Plaintiffs argue that

---

[10] In Plaintiffs' motion and most of their brief, they do not identify any specific part of the response that should be stricken, suggesting an objection to the entire response.  However, in the last sentence of their argument, they state, "this defense should be stricken from Defendants' Second Supplemental Response to Interrogatory No. 16", indicating that only a portion of the response is subject to objection. (Pls.' Br. in Supp. at 20 (emphasis added); see also id. ("Plaintiffs respectfully request that the Court grant their motion to strike . . . the equitable estoppel defense raised in Defendants' Second Supplemental Response to Interrogatory No. 16.") (emphasis added).)  Notably, it does not appear that the allegedly objectionable response is a part of the record.  Its absence is of no moment, though, because the dispute centers on events taking place prior to the response.

16

Defendants never indicated during discovery that they intended to pursue an equitable estoppel defense. (Id. at 20.)

Furthermore, although Defendants referred to equitable defenses in their Answer, Plaintiffs argue that the "boilerplate" language was insufficient even under Rule 8's notice pleading because it failed to give Plaintiffs notice "of the nature of the defense."[11] (Id. at 3-4, 19; Pls.' Reply at 12 (citing cases discussing motions to strike pleadings under Rule 12(f)).) Specifically, Defendants alleged under the heading "Equitable Defenses" in their Answer that "Plaintiffs' attempted enforcement of the Asserted Patents against [Defendants] is barred by one or more of the equitable doctrines, such as estoppel, acquiescence, waiver, and unclean hands." (Pls.' Reply at 10 (quoting Answer [Doc. #21]).)

Defendants characterize this motion as "in essence an untimely Rule 12(f) motion in disguise, seeking to eliminate [their] equitable estoppel defense without moving for the proper relief." (Defs.' Opp'n at 2; see also id. at 19.) In addition, Defendants contend that Plaintiffs "ha[ve] had express notice of [this] defense from the beginning, as [Defendants] raised it in [their] July 22, 2020 Answer . . . and repeated it again in [their] January 26, 2021 Answer . . . ." (Id. at 19 (citing Answer [Docs. #21, 50]).) And, according to Defendants, Plaintiffs are "well-aware of facts related to" this defense which involve communications between Plaintiffs and Defendants in 2013 and 2014 about the Bried patents. (Defs.'

---

[11] Plaintiffs expressly are not making a Twombly/Iqbal challenge to the sufficiency of the allegations. (Pls.' Reply at 11-12.)

Opp'n at 2-3, 6, 6 n.1, 18.)  Although Plaintiffs did not take discovery on the

issue, which Defendants argue was Plaintiffs' "own doing", "both parties produced

documents relevant to the licensing negotiations underlying the equitable estoppel

defense, and both parties designated corporate representatives who testified about

the negotiations." (Id. at 7 (citing Ex. 7, Pls.' Notice of Dep, Topics 44 & 53 [Doc.

#120-7]; Ex. 8, Email from Emily Tait to Pls.' Counsel (July 13, 2021) [Doc. #120-

8]), 8; see also id. at 21 (citing Ex. 6, Email from Emily Tait to Matthew Sieger

(July 29, 2021) [Doc. #120-6]), 21-22 (citing deposition topics), 22 (citing Ex. 16,

Excerpts of Strickland Dep. [Doc. #122-16]).)[12]  And Plaintiffs relied on the facts

underlying this defense in support of their willfulness claim. (Id. at 21.)

Plaintiffs reply that "even if [they] were aware of the facts that Defendants

allege support equitable estoppel, that does not mean they had the burden to

predict that Defendants would ultimately pursue such a defense" as the documents

and testimony about licensing policies and the Bried patents are relevant to many

issues. (Pls.' Reply at 10, 13.)

The only law Plaintiffs cite in support of this portion of their motion are two

cases applying Rule 12(f) of the Federal Rules of Civil Procedure to a motion to

strike affirmative defenses from a pleading, a case discussing amended

infringement contentions, and Rule 10(b) of the Federal Rules of Civil Procedure.

---

[12] As noted above, Defendants suggested that the parties move to extend
discovery during which time Defendants "would permit Plaintiffs a two-hour
deposition of Dr. Figlar to further investigate factual issues related to [Defendants']
equitable estoppel defense". (Defs.' Opp'n Ex. 5.)  Plaintiffs declined. (Id.)

(Pls.' Br. in Supp. at 19 n.3 (Rule 10(b)) & 20 (infringement contentions); Pls.' Reply at 12 (Rule 12(f)).)

In the Court's view, Defendants' characterization of this motion as an untimely Rule 12(f) is accurate; even Plaintiffs rely on Rule 12(f) caselaw. They challenge Defendants' inclusion of an equitable estoppel defense in the supplemental interrogatory response not because of some failing of the response itself. Instead, they object to it because they claim to have had no notice of the defense because Defendants' allegations in their Answer were insufficient. Indeed, Rule 12(f) "permits a district court, on motion of a party, to 'order stricken from any pleading any insufficient defense.'" Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001). Not only is it uncertain if Defendants' equitable estoppel defense is "insufficient" as that term is used in Rule 12(f), see id., but a party must make a Rule 12(f) motion "either before responding to a pleading or, if a response is not allowed, within 21 days after being served with the pleading", Fed. R. Civ. P. 12(f)(2). It is undisputed Plaintiffs did not comply with the Rule. They cannot now move to strike the equitable estoppel defense from Defendants' supplemental interrogatory response on the premise that Defendants' Answer failed to put Plaintiffs on notice.

III.

Defendants moved to seal portions of their response brief and Exhibits 15, 16, and 18 attached to it, all of which relate solely to Plaintiffs' motion to strike Defendants' supplemental response to Interrogatory No. 16. (Mot. to Seal [Doc.

19

#121].)  After the parties conferred, Defendants amended the motion to seal to request only that portions of their response brief and Exhibit 16 be sealed. (Am. Mot. to Seal [Doc. #134].)  They have moved to withdraw Exhibit 15 from the docket, as it is no longer needed to support their brief.  And, attached to the amended motion to seal, is a publicly available Exhibit 18.  Because Plaintiffs are claiming confidentiality, they filed the requisite brief in support of the amended motion to seal. (Pls.' Br. in Supp. of Am. Mot. to Seal [Doc. #135].)

Because "'[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern,'" courts "'recognize a general right to inspect and copy . . . judicial records and documents." Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08CV918, 2010 WL 1418312, at *7 (M.D.N.C. Apr. 2, 2010) (quoting Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978) & Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978)).  "[D]ocuments filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 290 (4th Cir. 2013).  "Accordingly, '[b]ecause discovery motions' often 'involve procedural, rather than "substantive" rights of the litigants,' courts have found that no right of public access attaches to materials filed with discovery motions." Garey v. James S. Farrin, P.C., No. 16CV542, 2020 WL 5211851, at *6 (M.D.N.C. Sept. 1, 2020) (quoting Kinetic Concepts, Inc., 2010 WL 1418312, at *9-10 & Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001)).  Nevertheless, the party seeking to

seal the material must show "good cause" for doing so under Rule 26(c) of the

Federal Rules of Civil Procedure, <u>Kinetic Concepts, Inc.</u>, 2010 WL 1418312, at

*10, which affords protection to "a trade secret or other confidential research,

development, or commercial information", Fed. R. Civ. P. 26(c)(1)(G).

      Although Plaintiffs are only asking that portions of two sentences in

Defendants' brief and twelve pages of a deposition be sealed, they have merely

provided conclusory statements as to the confidential, sensitive nature of that

material.  Furthermore, information is already publicly available in Defendants' brief

that directly relates to the two portions of the brief Plaintiffs want sealed.  In their

brief, Defendants argue:

> For whatever strategic reason – perhaps because it was already well
> aware of the 2013-14 history concerning the Bried patents – Altria
> chose to not serve an interrogatory (or other discovery) related to that
> defense. . . .  [B]oth parties produced documents related to the
> licensing negotiations underlying the equitable estoppel defense
> months ago. . . .  Reynolds made Dr. Figlar available for deposition on
> matters related to its equitable estoppel defense – <u>i.e.</u>, Reynolds's
> knowledge of the Bried patents and its licensing policies.  Indeed, the
> parties even discussed Altria's awareness "of the 2013/14 outreach
> and non-privileged communications between Altria's counsel and
> Reynolds's counsel related to the Bried patents" as part of Reynolds's
> designation of Dr. Figlar as a corporate designee.)

(Defs.' Opp'n at 21-22 (internal citations omitted).)  Not only are those statements

publicly available, but so, too, is Exhibit 6 to Defendants' brief which states in

relevant part,

> [B]oth Reynolds and Plaintiffs have produced documents relevant to
> this issue and numerous witnesses (including corporate witnesses)
> have testified on matters related to it as well.  And, perhaps more
> fundamentally, Plaintiffs are well aware of their previous claim of

> infringement of the Bried Patents back in 2013, the parties' course of dealing at that time, and their failure to enforce those patents for years after that (i.e. until the filing of the Complaint in 2020).

Plaintiffs have not shown any material difference in this publicly available information and that in Defendants' brief they wish to seal. Therefore, the motion to seal is denied as to Defendants' brief. However, the content of the substantive portions of the deposition that Plaintiffs want sealed contains more specific, materially different information than what is publicly available in Defendants' brief and is determined to be confidential in nature such that good cause supports maintaining its seal.

IV.

For the reasons explained in this Memorandum Opinion, IT IS HEREBY ORDERED that Plaintiffs' Motion to Strike Defendants' Final Invalidity Contentions, Supplemental Final Invalidity Contentions, and Supplemental Response to Interrogatory No. 16 [Doc. #100] is GRANTED IN PART and DENIED IN PART. It is granted in part as to the failure of Defendants' Final Invalidity Contentions to comply with Local Patent Rule 103.3(b) and denied in part as to the remainder of the motion. In lieu of striking Defendants' Final Invalidity Contentions at this stage of the proceedings, Defendants must abide by the conditions set forth in Section I.F. of this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that Defendants' Motion to Seal [Doc. #121] is DENIED AS MOOT and that Defendants' Amended Motion to Seal [Doc. #134] is GRANTED IN PART as to Exhibit 16 to Defendants' Opposition to Plaintiffs' Motion

22

to Strike and DENIED IN PART as to the portions of Defendants' Opposition to Plaintiffs' Motion to Strike. Defendants must file an unredacted version of their opposition brief within ten days of this order.

       This the 6th day of July, 2022.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge
