IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ALTRIA CLIENT SERVICES LLC and U.S. SMOKELESS TOBACCO COMPANY LLC, ) ) ) ) Plaintiffs, ) v. ) ) R.J. REYNOLDS VAPOR COMPANY ) and MODORAL BRANDS, INC., ) ) Defendants. ) | 1:20CV472 |

**MEMORANDUM OPINION AND ORDER**

Among the motions pending before the Court in this matter is Defendants' Motion to Enforce Partial Settlement Agreement [Doc. #179]. Defendants believe the parties entered into a partial settlement agreement dismissing all claims, counterclaims, and defenses relating to the Weigensberg patents. A hearing was held on the motion on June 28, 2022. For the reasons explained below, the motion is granted.

I.

Plaintiffs allege that Defendants have infringed on nine of their patents, two of which, the '242 Patent and the '824 Patent, are the Weigensberg patents at the heart of this motion. (See generally Am. Compl. [Doc. #46].) In their Answer, Defendants contend they have not infringed on the Weigensberg patents which they allege are invalid. Defendants also assert counterclaims for declaratory

judgments of non-infringement and invalidity of those patents. (See generally Answer & Countercls. to First Am. Compl. [Doc. #50].)

Three months after they answered the Amended Complaint, Defendants moved to stay this action on April 26, 2021, pending resolution of nine petitions for Inter Partes Review ("IPR") by the Patent Trial and Appeal Board ("PTAB") of the patents at issue, including the Weigensberg patents. (Mot. to Stay [Doc. #69].) Over the following months, before the Court ruled on the motion to stay, the PTAB addressed the petitions as they were submitted. First, on August 6, the PTAB denied institution of the petitions on the '319 and '996 Patents. (Notice [Doc. #105].) Then, on September 21, it granted institution of the petitions on the Weigensberg patents. (Notice [Doc. #149]; Notice [Doc. #150].) Two days later, the Court entered a Text Order deferring ruling on the motion to stay until the PTAB issued its institution decisions on the remaining patents. (Text Order (Sept. 23, 2021).) On October 8, the PTAB denied institution on those patents. (Notice [Doc. #162].)

Afterward, on Monday, October 11, Plaintiffs' counsel emailed Defendants' counsel as follows:

> Counsel,
>
> We intend to dismiss our claims on the Weigensberg patents ['242 and '824] and pursue only our claims on the pod and container patents. This will moot Reynolds' motion to stay the district court case given that the PTAB has denied institution on all patents that will remain in the case. Please confirm that Reynolds will withdraw its motion to stay.

2

Case 1:20-cv-00472-NCT-JLW   Document 294   Filed 07/06/22   Page 2 of 11

> We will provide you with a draft stipulation on dismissal of the claims. Given that Reynolds has IPR proceedings pending on the Weigensberg patents we will dismiss without prejudice. However we are willing to dismiss with prejudice if Reynolds will agree to jointly request termination of the IPR proceedings.
>
> Given the pending motion to stay that will be mooted by Altria's withdrawal of the Weigensberg patents, please let us know no later than close of business on Wednesday whether Reynolds will withdraw its stay motion. Absent withdrawal of the stay motion, Altria intends to advise the court and request denial of the motion as moot.
>
> Best regards,
> Sutton

[Doc. #180-1 at 7[1].] Defendants' counsel responded at 10:45 a.m. on Wednesday,

October 13.

> Dear Sutton:
>
> We are pleased that Altria will be dismissing its infringement counts against the VIBE product based on the Weigensberg patents ['242 and '824]. In view of the amount of fact and expert discovery already conducted to date, Reynolds fully expects Altria to dismiss such counts with prejudice. If so, Reynolds will also agree to dismiss its non-infringement counterclaims against the Weigensberg patents with prejudice, and its invalidity counterclaims against the Weigensberg patents in the MDNC action without prejudice. Assuming agreement on the foregoing, Reynolds and Modoral also will withdraw the Motion to Stay.
>
> With respect to the IPR petitions that were recently instituted by the PTAB on the Weigensberg patents, Reynolds does not intend to withdraw such IPR petitions without Altria also agreeing to grant Reynolds and its Affiliates a covenant not to sue on the Weigensberg patent family on any current or future products.
>
> Let us know if Altria agrees.

---

[1] Page numbers correspond to those assigned by CM/ECF.

3

Case 1:20-cv-00472-NCT-JLW   Document 294   Filed 07/06/22   Page 3 of 11

Regards,
Lexi

[Doc. #180-1 at 6-7.] Soon afterwards, at 2:02 p.m., Altria's counsel responded as follows:

Lexi,

Altria agrees with the proposal in your first paragraph and will provide a draft stipulation to that effect. With this agreement we understand that you will promptly advise the court that Reynolds and Modoral are withdrawing the motion to stay.

On your second paragraph, we are not amenable to the requested CNS so we will move forward on the instituted IPRs.

Best regards,
Sutton

[Doc. #180-1 at 6.]

Twenty-four minutes later, Plaintiffs' local counsel emailed Defendants' local counsel, "All good?" to which Defendants' local counsel responded, "Rob – I'm informed we need until tomorrow morning before notifying the court. Waiting on client review." [Doc. #180-3 at 2-5.] Plaintiffs' local counsel replied, "Not sure I follow – Reynolds [sic] offer (presumably blessed by the client) was accepted by Altria. In any event, we owe the Court a courtesy so let's expedite this by tomorrow am." [Doc. #180-3 at 2.]

That same afternoon less than twenty minutes later, at 4:09 p.m., the Court entered an order denying Defendants' motion to stay. (Order [Doc. #171].) Within the hour, Plaintiffs' counsel emailed Defendants' counsel:

Lexi,

4

> In view of the Court's order (D.I. 171) denying Reynolds' motion to stay, and the refusal of Reynolds to terminate the IPRs on the Weigensberg patents, it no longer makes sense for Altria to dismiss the Weigensberg patents from the case.
>
> . . .
>
> Best regards,
> Sutton

[Doc. #180-1 at 5.] That evening, Defendants' counsel responded as follows:

> Sutton,
>
> To say we are surprised by your email is an understatement. As you know well, we had an agreement, as you specifically noted in your email of earlier today. Prior to notifying the court that the stay motion was going to be withdrawn, we were waiting to review the draft Stipulation that you said you were preparing.
>
> Moreover, your suggestion that your attempt to renege on the agreement is based on the fact that Reynolds will not be withdrawing the IPRs is completely disingenuous. As the email exchange makes clear, we had an agreement on the dismissal separate and apart from the IPR issue.
>
> To the extent that Altria refuses to enter the stipulation of dismissal to which we both agreed, Altria would be in breach of the parties' agreement.
>
> Regards,
> Lexi

[Doc. #180-1 at 5.] Plaintiffs' counsel replied:

> Lexi,
>
> We respectfully disagree. The only reason for Altria to dismiss the Weigensberg patents from the case was to have Reynolds withdraw its motion to stay and ensure that the case would move forward. Now that the court has denied the stay in full and allowed us to proceed with our claims there is nothing Reynolds is offering in exchange. We would be unnecessarily compromising our rights.

> We are open to dismissal if Reynolds will terminate its IPR proceedings. At this point it makes no sense for us to give up our claims if Reynolds will persist in seeking to invalidate our patents.
>
> Best regards,
> Sutton

[Doc. #180-1 at 4.] In response, Defendants' counsel emailed:

> Sutton:
>
> We disagree with your version of the facts.
>
> With respect to the Weigensberg patents, the parties unequivocally agreed to: (1) a dismissal of the infringement claims with prejudice; (2) a dismissal of the non-infringement counterclaims with prejudice; and (3) a dismissal of the invalidity counterclaim without prejudice. The withdrawal of the Motion of the Stay, which was mooted by the Court's Order denying the Motion, and the Stipulation of Dismissal, were simply the steps the parties needed to take in order to alert the Court to the Agreement on the dismissal of the Weigensberg patents from the litigation. Indeed, you stated that if Reynolds did not withdraw its motion to stay, Altria would advise the Court that the motion was moot in view of Altria's dismissal of the claims relating to the Weigensberg patents.
>
> The IPR issue, as the emails make clear, was separate and apart from the agreement on the dismissal of the claims and counterclaims.
>
> . . .
>
> Regards,
>
> Lexi

[Doc. #180-1 at 3-4.] The dispute continued when Plaintiffs' counsel took the position that Defendants' local counsel had "advised that Reynolds had not approved any proposed agreement between the parties regarding the Weigensberg patents and would not be able to until the morning of October 14th. By that time, we had informed you that Altria would no longer be willing to withdraw the

6

Weigensberg patents from the case." [Doc. #180-1 at 3 (internal citation omitted).] Defendants' counsel responded, "we wanted to send the Stipulation of Dismissal to our client for review, after which time we could withdraw the Motion for Stay. There is no doubt we had an agreement on the terms . . . and were only waiting on the draft Stipulation that you said you were sending before withdrawing the motion to stay." [Doc. #180-1 at 1.]  This motion followed.

II.

Defendants contend that the email exchanges between the parties establish an offer, acceptance, and consideration and, therefore, a complete agreement on all material terms. (Defs.' Mem. in Supp. at 8-9 [Doc. #180].)  Plaintiffs disagree and point to Defendants' withdrawal of the motion to stay as a term of the agreement or condition precent that Defendants could not carry out once the Court denied the motion. (See generally Pls.' Mem. in Opp'n [Doc. #215].)  In the alternative, if the Court were to find the emails constitute an agreement, Plaintiffs assert that they have no obligation to dismiss the Weigensberg patents because withdrawal of the motion to stay was a condition precedent to Plaintiffs' performance, Defendants breached the agreement by not withdrawing the motion, and there was a failure of consideration. (Id. at 20-26.)

"Although resolution of a motion to enforce a settlement agreement draws on standard contract principles, it may be accomplished within the context of the underlying litigation without the need for a new complaint." Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002).  A court has "inherent

7

authority . . . to enforce settlement agreements", but "the court cannot enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." Id.[2]

The parties agree that it makes no difference whether federal common law, North Carolina law, or Virginia law applies to the questions of contract formation and interpretation. In their briefs, they both rely on North Carolina law. The Court will do the same. "The well-settled elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." S.E. Caissons, LLC v. Choate Constr. Co., 784 S.E.2d 650, 655 (N.C. Ct. App. 2016) (citing Snyder v. Freeman, 266 S.E.2d 593, 602 (1980)).

> This assent, or meeting of the minds, requires an offer and acceptance in the exact terms and that the acceptance must be communicated to the offeror. If the terms of the offer are changed or any new ones added by the acceptance, there is no meeting of the minds and, consequently, no contract. This counteroffer amounts to a rejection of the original offer.

Normile v. Miller, 326 S.E.2d 11, 15 (N.C. 1985) (internal citations omitted). Consideration has long been understood as "some right, interest, or benefit accruing to the other party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." ACME Mfg. Co. v. McCormick, 95

---

[2] A court must conduct a plenary evidentiary hearing if there is a factual dispute over the agreement's existence, the attorney's authority, or the agreement's terms. Hensley, 277 F.3d at 541. Although the parties were afforded a hearing on this motion (during which the only evidence presented was an additional email exchange among counsel), there is no genuine factual dispute as to the existence and terms of the agreement as explained in this opinion.

8

S.E. 555, 556 (N.C. 1918) (citation omitted).) For example, waiver of a legal right "is a sufficient consideration for a promise." Id. (citation omitted).) "A condition precedent is an event which must occur before a contractual right arises". Powell v. City of Newton, 703 S.E.2d 723, 727 (N.C. 2010) (citation omitted).

Plaintiffs' arguments to the contrary aside, the email exchanges on October 13 clearly establish a complete agreement between the parties. The language used by both parties also shows that the withdrawal of the motion to stay was neither a term of the agreement nor a condition precedent. And there remained valuable consideration for Plaintiffs even after the Court entered an order on the motion to stay before Defendants could move to withdraw it.

Plaintiffs' counsel made the offer "to dismiss our claims on the Weigensberg patents", noted that "[t]his will moot Reynolds' motion to stay", and asked that Defendants confirm they would withdraw the motion. Defendants counteroffered by adding that they "fully expect[] Altria to dismiss such counts with prejudice." If Plaintiffs so agree, "Reynolds will also agree to dismiss" the Weigensberg non-infringement counterclaims with prejudice and invalidity counterclaims without prejudice. Defendants concluded, "Assuming agreement on the foregoing, Reynolds and Modoral also will withdraw the Motion to Stay." In other words, once there is an agreement as to dismissal of claims and counterclaims, then Defendants would withdraw the motion to stay.

Plaintiffs unconditionally accepted that offer and promised to provide a draft stipulation to that effect. They concluded by saying, "With this agreement we

9

understand that you will promptly advise the court that [you] are withdrawing the motion to stay." At this point, at 2:02 p.m. on October 13, 2021, the parties have a complete agreement to the following: Plaintiffs agree to dismiss their claims on the Weigensberg patents with prejudice, and Defendants agree to dismiss their non-infringement counterclaims with prejudice and invalidity counterclaims without prejudice. Their email communications undoubtedly evidence offer, acceptance, consideration, and mutuality of assent.

The apparent confusion that local counsel's subsequent emails caused does not alter this conclusion. Plaintiffs' counsel was supposed to provide Defendants' counsel with a draft stipulation which understandably Defendants (the clients) would need to review to ensure it accurately represented the parties' agreement. Review of that document was not a condition precedent to the parties' obligations to which they had already agreed.

Even if Plaintiffs correctly contend that withdrawal of the motion to stay was a term of the agreement, it is not a material term. As Plaintiffs recognized all along, their dismissal of the Weigensberg patents would moot the motion. And no party could argue that the Court would not have recognized the mootness of the motion once the stipulation of dismissal were entered.

Withdrawal of the motion to stay was not a condition precedent to the parties' obligations. The parties' communications simply do not support a finding that Defendants had to withdraw the motion to stay before Plaintiffs would be obligated to dismiss the Weigensberg patents. No language elevates the

10

withdrawal of the motion to stay as anything other than something that would happen after agreement was reached.

To the extent that withdrawal of the motion to stay would have been part of the consideration for Plaintiffs' dismissal of the Weigensberg patents, there still remains valuable consideration for that promise – Defendants' agreement to dismiss their non-infringement counterclaims with prejudice and their invalidity counterclaims without prejudice. It is uncertain if the Court would allow those counterclaims to proceed independently or not. The Green Smoke device and other asserted prior art could invalidate the Weigensberg patents. In sum, Defendants' waiver of their legal rights – the agreement to dismiss their counterclaims – is valuable consideration.

For the reasons explained in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendants' Motion to Enforce Partial Settlement Agreement [Doc. #179] IS GRANTED.

This the 6th day of July, 2022.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge

11