# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALTRIA CLIENT SERVICES LLC and  )
U.S. SMOKELESS TOBACCO  )
COMPANY LLC,  )
    )
    Plaintiffs,  )
    v.  )       1:20CV472
    )
R.J. REYNOLDS VAPOR COMPANY  )
and MODORAL BRANDS, INC.,  )
    )
    Defendants.  )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on numerous pending motions –

Defendants' Motion to Strike Plaintiffs' Expert Opinions Concerning Secondary

Considerations Not Disclosed During Fact Discovery [Doc. #128], Defendants'

Motion to Strike Plaintiffs' Reply Expert Opinions Concerning Marking [Doc. #143],

Plaintiffs' Motion to Strike Defendants' Rebuttal Expert Report Concerning

Marking [Doc. #173], Plaintiffs' Motion for Partial Summary Judgment [Doc. #193],

Defendants' Motion for Partial Summary Judgment of No Pre-Suit Damages for

Alleged Infringement of the Hawes and Weigensberg Patents [Doc. #216], and

Plaintiffs' Motion to Strike Mr. Leinsing's Testimony and Preclude Reynolds from

Arguing Invalidity of the Hawes Patents Based on Alleged Prior Use of a JUUL

Product [Doc. #242].[1]  For the reasons that follow, each motion is denied.[2]

---

[1] Accompanying motions to seal will be addressed in a separate opinion.
[2] The parties submitted a Joint Status Report stating that the motions remain ripe despite the progress of the case since the motions were filed. [Doc. #271.]

I.

Defendants have moved to strike as untimely and improper paragraphs 424 to 440 of Plaintiffs' August 4, 2021 expert report by Joseph McAlexander, III on infringement of the Hawes Patents (also referred to as the "Pod Patents"), [Doc. #128]. In those paragraphs, McAlexander opines about secondary considerations of non-obviousness. (Defs.' Mem. in Supp. at 4-5 [Doc. #133] (citing Ex. E, Excerpts from McAlexander's Expert Report (Aug. 4, 2021) [Doc. #133-5]).) According to Defendants, they had repeatedly sought Plaintiffs' position on secondary considerations and objective evidence of non-obviousness throughout fact discovery to no avail and only learned of it in McAlexander's expert report. (Id. at 2-5.)

A.

As early as July 22, 2020, Defendants have asserted that the Hawes Patents are invalid as obvious and served invalidity contentions setting forth their bases for obviousness. (Id. at 2 (citing Answer to Compl. [Doc. #21]), 2 n.2.) Defendants served discovery on October 19, 2020 and requested in Interrogatory No. 7 that Plaintiffs provide their "contentions relating the purported validity" of the Hawes Patents "including" their "contentions relating to all secondary considerations and objective evidence of non-obviousness." (Id. at 2-3 (citing Ex. A at 6, Excerpts

Case 1:20-cv-00472-NCT-JLW   Document 296   Filed 07/14/22   Page 2 of 33

from Pls.' Second Suppl. Objs. & Resps.[3] [Doc. #129-1]); Ex. B at 1, Letter from Defs.' Counsel to Pls.' Counsel (May 14, 2021) [Doc. #129-2].) Plaintiffs objected to the interrogatory on the ground that, among other reasons, "it calls for expert testimony or essentially an expert report in advance of the dates provided in the Court's Scheduling Order." As such, they did "not intend to respond by identifying and describing any expert's validity opinions and all evidence used to support the expert's opinions until the deadline for the expert to serve his report thereon." (Ex. A at 7.) Nevertheless, Plaintiffs stated that their "investigation into the information [was] ongoing and [they] [would] update, modify, and/or supplement this response as discovery progresse[d]." (Id. at 8.)

Six months later, having received no substantive response to Interrogatory No. 7, Defendants wrote Plaintiffs on May 14, 2021 and requested that they supplement their response by May 21. (Ex. B at 1, 3.) On June 1, Plaintiffs did so and, for the Bried Patents (also referred to as the "Packaging Patents") provided contentions, but for the Hawes Patents only stated that they "further incorporate[] by reference the forthcoming Patent Owner Preliminary Responses ("POPR")[4] to be filed in IPR2021-00744, IPR2021-00745, IPR2021-00746, IPR2021-00747." (Ex. A at 8-9.) However, none of those POPRs ultimately identified any secondary

---

[3] Defendants describe Exhibit A as containing both Plaintiffs' original response on pages 6-8 and their first supplemental response on pages 8-9. (Defs.' Mem. in Supp. at 3 n.3.)

[4] Defendants had petitioned for Inter Partes Review of all nine asserted patents, including the Hawes Patents. (See Mot. to Stay [Doc. #69].)

considerations or objective indicia of non-obviousness. (Defs.' Mem. in Supp. at 4.) It was not until after the July 28 close of fact discovery, in McAlexander's August 4 expert report, that Plaintiffs provided their secondary considerations contentions for the Hawes Patents. (Id.; Am. Scheduling Order [Doc. #92].)

After Defendants objected to this late disclosure, Plaintiffs directed Defendants to their response to Interrogatory No. 11 which required Plaintiffs to identify "all alleged features or benefits of the Accused Products that [Plaintiffs] contend are attributable to each Asserted Claim." (Defs.' Mem. in Supp. at 5 (citing Ex. F, Emails between Defs.' and Pls.' counsel [Doc. #129-6]); Ex. G, Excerpt Pls.' Suppl. Objs. & Resps. at 9 [Doc. #133-7].) Plaintiffs contended that, considering their response to Interrogatory No. 11, "any further response to Interrogatory No. 7 would have been cumulative of Interrogatory No. 11." (Ex. F at 2-3.) According to Defendants, though, "McAlexander's discussion of secondary considerations extends beyond even the documents and testimony cited in Plaintiffs' Interrogatory No. 11 response[5]" and any "[p]rior disclosure of documents and testimony . . . does not [alone] excuse a party's failure to disclose their use for secondary considerations." (Defs.' Mem. in Supp. at 5, 7, 12.) And, Defendants argue, "[i]f Plaintiffs planned to assert secondary considerations, the

---

[5] Defendants identify portions of McAlexander's opinion where he relies on testimony and other evidence not cited in Plaintiffs' response to Interrogatory No. 11 and contends that, "[a]t a minimum, those portions of the McAlexander Report should be stricken." (Defs.' Mem. in Supp. at 12 (citing Ex. E ¶¶ 426 n.156-57, 436, 436 n.172-75 & Ex. G).)

4

place to identify those contentions and the facts supporting them was in their response to [Defendants'] Interrogatory No. 7, not in a later supplemental response to . . . another, unrelated interrogatory." (Id. at 11.)

Defendants argue that they have "been significantly harmed by Plaintiffs' nondisclosure" because they were "deprived of any opportunity to conduct discovery of Plaintiffs' factual contentions" and "forc[ed] . . . to expend additional time and money addressing Plaintiffs' unexpected (and untimely) contentions." (Id. at 12.) Defendants elected not to pursue 30(b)(6) depositions "concerning the benefits of Pod Patents" apparently based on "Plaintiffs' representation that they [would] not provide a witness on those topics at trial." (Id. at 13 (citing Ex. F at 3; Ex. H, Emails between Pls.' and Defs.' counsel (July 8, 9, 13, 15, 2021) [Doc. #129-8]).)

Plaintiffs respond that they "timely disclosed all of the evidence pertinent to objective indicia of non-obviousness during fact discovery" – "in response to Interrogatory No. 11"— and that "Defendants should have been aware that the evidence cited in Interrogatory No. 11 would be relied upon by Plaintiffs' expert for objective indicia." (Pls.' Opp'n at 1, 15 [Doc. #155].) According to Plaintiffs, they are not required to duplicate their response to Interrogatory No. 11 in response to Interrogatory No. 7. (Id. at 11.) They also argue that their objection to Interrogatory No. 7 (that it was premature and requested expert evidence) placed Defendants on notice that Plaintiffs would not be responding until their expert report. (Id. at 3, 5-6, 7-8.)

5

Plaintiffs also contend that "Defendants were neither surprised nor prejudiced" because McAlexander's opinions "described the same evidence disclosed in response to Interrogatory No. 11 during the discovery period". (Id. at 2; see also id. at 3-4 (quoting from Plaintiffs' responses to Interrogatory No. 11 (citing Ex. 3, Pls.' Suppl. Objs. & Resps. [Doc. #152-4] and Ex G)), 11-15 (providing a chart comparing McAlexander's Report with response to Interrogatory No. 11).) In addition, according to Plaintiffs, "Defendants' expert responded to those objective indicia [in McAlexander's opening report] in full, and Defendants will have the opportunity to depose Plaintiffs' expert on those contentions." (Id. at 9, 16.) Plaintiffs note that "Defendants do not identify what, if any, additional discovery [they] would have sought had Plaintiffs answered the interrogatories any differently." (Id. at 16.)

B.

Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure requires a party to supplement its response to an interrogatory "in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing". Here, Plaintiffs violated Rule 26(e)(1)(A) by failing to supplement their response to Interrogatory No. 7. That interrogatory explicitly sought Plaintiffs'

> contentions relating to the purported validity of [each Asserted Claim] including . . . contentions relating to all secondary considerations and objective evidence of nonobviousness of the

6

purported inventions . . . including, but not limited to, the presence or absence of any commercial success, long-felt need, commercial acquiescence, expressions of skepticism, copying, teaching away, successful or failed attempts by others, or simultaneous development . . . .

In comparison, Interrogatory No. 11 sought "all alleged features or benefits of the Accused Products that You contend are attributable [to] each Asserted Claim . . . ."

Indeed, Plaintiffs did object to Interrogatory No. 7 as a premature request for expert discovery, and they did eventually supplement their response regarding the Hawes Patents by identifying their forthcoming POPRs. But they do not dispute that they did not otherwise supplement the response to Interrogatory No. 7 with any of the requested contentions. Nothing in Plaintiffs' responses to Interrogatory No. 7 or No. 11 informs Defendants that Plaintiffs were relying on their response to Interrogatory No. 11 to answer Interrogatory No. 7 (to the extent it even would) or that Plaintiffs considered the two interrogatories to be cumulative. This is made even more apparent by reviewing Plaintiffs' supplemental response to Interrogatory No. 7 where they actually provided contentions for the Packaging Patents.

In addition, Plaintiffs are not the first parties to argue that an interrogatory seeking secondary considerations of nonobviousness is premature because it purportedly asks for expert opinion. In Semcon IP Inc. v. Media Tek Inc., No. 2:16-cv-00437-JRG-RSP, 2018 WL 4501871, at *4 (E.D. Tex. Feb. 28, 2018), the plaintiff responded similarly to just such an interrogatory by asserting that the interrogatory improperly sought early disclosure of expert opinion, discovery was

7

ongoing, and the patents were generally valid. As here, the defendant unsuccessfully sought supplementation over the following months. Id. It was not until the plaintiff's expert report that the plaintiff revealed its secondary considerations opinions. Id. The defendant moved to strike the opinions for failure to respond to the interrogatory. Id. The plaintiff argued that the "interrogatory was premature because it asked for expert opinion" and it had produced documents that supported the expert's opinion. Id.

The court explained, "There is no meaningful dispute that Semcon had an obligation to disclose the factual basis of any secondary considerations that would be relied on trial." Id. The plaintiff "was at least obligated to provide the factual basis for any secondary considerations, and include this factual basis in the interrogatory response itself." Id. Having produced documents supporting the expert's opinions is not the same as informing the defendant "that these documents would be relied on to show secondary considerations" because "[t]he purpose of interrogatories is not only to ascertain facts but also to 'determine what the adverse party contends they are, and what purpose they will serve, so that the issues may be narrowed, the trial simplified, and time and expense conserved.'" Id. (quoting Baim & Blank, Inc. v. Philco Distribs., Inc., 25 F.R.D. 86, 87 (E.D.N.Y. 1957)). The court concluded that the plaintiff had committed a discovery violation. Id. at *5. See also Pavo Sols. LLC v. Kingston Tech. Co., Inc., No. 8:14-cv-01352-JLS-KES, 2019 WL 8138163, at *22 (C.D. Cal. Nov. 20, 2019) (". . . Pavo does not explain why the prior disclosure of the documents themselves

8

would excuse a failure to supplement [the interrogatory] as to their <u>use</u> as a secondary consideration of non-obviousness.")

Plaintiffs cite various cases in support of their position that "contention interrogatories need not necessarily be answered early in a case." (Pls.' Opp'n at 5.) Nevertheless, Plaintiffs <u>never</u> responded to Interrogatory No. 7 with their contentions, despite their statement that they would do so as discovery progressed.[6] And although they argue that they were not obligated to respond to the contention interrogatories during fact discovery, Plaintiffs direct Defendants and the Court to their response to Interrogatory No. 11 as a surrogate, relying on that response for their position that they "timely disclosed all of the evidence pertinent to objective indicia of non-obviousness during fact discovery."

## C.

When a party fails to comply with Rule 26(e)(1)(A), as is the case here, the party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Although this is a patent case, Fourth Circuit law governs whether and how to sanction a party under Rule 37. <u>See</u> <u>Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.</u>, 30 F.4th 1339, 1353 (Fed. Cir. 2022). In the Fourth Circuit, a district court has "broad discretion to determine whether a

---

[6] In a footnote, Plaintiffs state generally that since McAlexander's opening report, they have "supplemented their response to Interrogatory No. 7 with the exact same contentions and served them to Defendants." (Pls.' Opp'n at 8 n.3.)

nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis." S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). Factors that guide the court's analysis include:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Id.

The facts of Southern States are distinguishable from those here, but the analysis is informative. The surprise there arose when the plaintiffs' expert testified at trial to a new opinion. Id. at 598. The district court determined that the defendant's '"ability to simply cross-examine an expert concerning a new opinion at trial is not the ability to cure'". Id. (quoting the district court). The "'rules of expert disclosure are designed to allow an opponent to examine an expert opinion for flaws and to develop counter-testimony through that party's own experts'", and that "'was not possible'" under the circumstances. Id. (quoting the district court). After weighing all of the factors, the district court found that the expert's new opinion should be excluded, and the Fourth Circuit affirmed. Id. at 599.

Defendants cite Pavo and Semcon in support of exclusion. While those cases illustrate discovery violations as described above, the resulting prejudice is

not similarly found here.[7]  In <u>Semcon</u>, the court found the discovery violation "neither justified nor harmless" and granted the motion to strike. 2018 WL 4501871, at *5.  Although "secondary considerations may be important", the plaintiff's explanation was inadequate and the defendant was significantly prejudiced "particularly because [the plaintiff] did not disclose the facts it already had knowledge of upon which it would rely." <u>Id.</u>  The plaintiff's rebuttal expert opinion on secondary considerations "left [the defendant] without an adequate means to develop a response", and the case had proceeded toward trial such that a continuance would disrupt the pretrial work. <u>Id.</u> <u>See also</u> <u>Pavo Sols. LLC</u>, 2019 WL 8138163, at *22 ("[T]he prejudice in this instance is clear, as [the defendant] was unable to have its own expert . . . address licensing as a secondary consideration of non-obviousness in his invalidity report.").

On the other hand, here, McAlexander disclosed his opinions on secondary considerations in his <u>opening</u> report; much of those opinions appears to be based on publicly available information and depositions of the Pod Patents' inventors and Defendants' corporate representative, among others.  Defendants' expert was able to – and apparently did – respond to McAlexander's report in a reply report. (<u>See</u> Ex. 2, Excerpt of Karl R. Leinsing's Reply Report (Sept. 8, 2021) (noting

---

[7] These out-of-circuit cases rely on factors that are similar to those in <u>Southern States</u>. <u>See</u> <u>Semcon IP Inc.</u>, 2018 WL 4501871, at *5 (listing the party's explanation, the importance of the evidence, the potential prejudice if the evidence is allowed, and the availability of a continuance).

Case 1:20-cv-00472-NCT-JLW   Document 296   Filed 07/14/22   Page 11 of 33

"Secondary Considerations" in Table of Contents[8]) [Doc. #195-2].)  In addition, Defendants deposed McAlexander. (<u>See, e.g.</u>, Excerpt of McAlexander Dep. (Oct. 22, 2021) [Doc. #236][9].)

Nevertheless, Defendants argue that the ability of Leinsing to respond and their opportunity to depose McAlexander do not cure the harm from the late disclosures. (Defs.' Reply at 11 [Doc. #164].)  But they do not explain why. Defendants claim that they are prejudiced because they "agreed to forego deposing [Plaintiffs'] corporate designees on Rule 30(b)(6) deposition topics corresponding to [Defendants'] interrogatories – both the Interrogatory No. 7 [Plaintiffs] should have answered <u>and</u> the Interrogatory No. 11 [Plaintiffs] now advance[] to avoid exclusion." (<u>Id.</u> at 9-10.)  But Defendants have not identified what information they believe they could have gained during fact discovery from a 30(b)(6) deposition on those topics, how that missing information hindered Leinsing's ability to reply to McAlexander's report, or what they would have done differently when deposing McAlexander if they had that information.

Thus, applying the <u>Southern State</u> factors, despite the surprise of Plaintiffs' disclosures and the unconvincing explanations for failing to provide those

---

[8] The excerpts of Leinsing's Reply Report do not provide the substance of his opinions on secondary considerations but do at least indicate that he opined on the topic in the report.

[9] The excerpts of McAlexander's deposition transcript focus on a different topic than secondary considerations, but the deposition took place after McAlexander's opening report and Leinsing's Reply Report affording Defendants the opportunity to inquire about secondary considerations.

contentions earlier, Defendants have been able to cure that failure during expert discovery. Thus, although a trial date has now been set, allowing this evidence to stand at this stage will not disrupt the proceedings. There is also no dispute that objective indicia and secondary considerations of non-obviousness are important evidence in support of patent validity. In sum, although Plaintiffs violated the discovery rules, Rule 37 sanctions are not appropriate. Defendants' motion to strike is denied.

## II.

Next, the parties have moved to strike the other's expert opinions on marking. Defendants moved first to strike opinions concerning marking in McAlexander's September 8, 2021 reply report, specifically paragraphs 147 to 184. (Defs.' Mot. to Strike [Doc. #143].) According to Defendants, not only did Plaintiffs fail to disclose their marking contentions during fact discovery, but their expert opined on marking in his reply report rather than his opening report as was required. (Defs.' Mem. in Supp. at 1 [Doc. #146].) Plaintiffs then moved to strike the marking opinions in Kelly Kodama's rebuttal report because, as Plaintiffs argue, Kodama opines about a product not previously identified. (Pls.' Mot. to Strike [Doc. #173]; Pls.' Mem. in Supp. at 3 [Doc. #177].) However, Plaintiffs admit they mitigated any harm by submitting McAlexander's report in response. (Pls.' Mem. in Supp. at 3.) But because Defendants moved to strike McAlexander's marking opinions, Plaintiffs have moved to strike Kodama's. (Id. at 3-4.) The

13

parties' arguments in support of and in opposition to the motions overlap; thus, it makes sense to address the two motions at once.

## A.

For a patentee to recover pre-suit damages in the event of infringement, the patentee and its licensees, as is relevant here, have to have marked the patented products. See 35 U.S.C. § 287(a); Arctic Cat Inc. v. Bombardier Recreational Prods. Inc., 876 F.3d 1350, 1365-66 (Fed. Cir. 2017). It is the patentee's burden to prove it complied with § 287(a). Arctic Cat Inc., 876 F.3d at 1366, 1367. But an alleged infringer who challenges the patentee's compliance with § 287 must first identify what it believes are unmarked patented products. Id. at 1368. "Permitting infringers to allege failure to mark without identifying any products could lead to a large scale fishing expedition and gamesmanship." Id.; see also id. ("Without some notice of what market products BRP believes required marking, Arctic Cat's universe of products for which it would have to establish compliance would be unbounded."). The alleged infringer's burden of production "is a low bar." Id. The patentee only needs to be put "on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." Id. Once the alleged infringer meets this low burden of production, the patentee must prove the identified products "do not practice the patented invention." Id.

14

Both parties take rather unforgiving positions on these issues, and they each accuse the other of gamesmanship[10]. (See Defs.' Mem. in Supp. at 1, 3-4, 10-15; Ex. A, Excerpt of Pls.' Resp. to 1st Set of Interrogs. at 17-18 [Doc. #144-1]; Ex. B, Excerpt of Defs.' Resp. to Pls.' 3rd Set of Interrogs. at 18-19 [Doc. #144-2]; Ex. D, Excerpt of Pls.' Suppl. Resp. to Interrogs. at 4, 6-7 [Doc. #146-4]; Pls.' Opp'n at 9-14, 15-16 [Doc. #170]; Ex. 4-7, POPRs [Docs. #167-4, -5, -6, -7]; Ex. 9, Product Summary [Doc. #170-1].) Defendants refuse to accept Plaintiffs' supplemental response to Defendants' damages interrogatory as Plaintiffs' contention (during fact discovery) that neither it nor its licensees as far as it was aware made or sold embodying products and, thus, there were no products to mark with the Asserted Patents. Instead, Defendants focus on Plaintiffs' initial response to an interrogatory about § 287 compliance in which Plaintiffs stated that, at that time, they did not contend that they had complied with § 287. Defendants also cite a later statement by Plaintiffs, made in response to a motion to compel, that they had not taken a position (as of August 11, 2021) on whether JUUL practiced any patents. Meanwhile, Plaintiffs insist that Defendants only identified the 2015 JUUL Articles as embodying the Asserted Claims. As for responsive contentions

---

[10] As for the parties' accusations of gamesmanship, their counsel are directed to Rules of Professional Conduct of the North Carolina State Bar. Specifically, Rule 3.4(d) which prohibits lawyers from "fail[ing] to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party, or [] fail[ing] to disclose evidence or information that the lawyer knew, or reasonably should have known, was subject to disclosure under applicable law, rules of civil procedure or evidence, or court opinions". 27 N.C.A.C. 02. This Court has adopted North Carolina's code of conduct as its own. L. Civ. R. 83.10e(b).

Case 1:20-cv-00472-NCT-JLW   Document 296   Filed 07/14/22   Page 15 of 33

made during fact discovery, Plaintiffs direct Defendants and the Court to their PTAB filings. And, according to Plaintiffs, to the extent that Defendants now contend the "licensed JUUL Device" is the embodying product, this is wholly insufficient because there have been changes to the device and Plaintiffs should not have to show how each version did or did not practice the Asserted Claims.

First, it is determined that Defendants were sufficiently specific to meet their initial burden when they responded to Plaintiffs' damages interrogatory by identifying "Plaintiffs' licensee JUUL" as practicing Asserted Claims of the Hawes Patents "in the JUUL Device and accompanying Pods", (Defs.' Objs. & Resps. at 18 [Doc. #144-2]).[11] Altria and JUUL entered into their license agreement in December 2018, the earliest Hawes Patent was issued in May 2019[12], [Doc. #46-6], and this suit was filed on May 28, 2020. It is unbelievable that Plaintiffs would believe that Defendants identified the 2015 JUUL Articles for purposes of § 287. And despite Plaintiffs' argument that there have been "numerous versions" of the JUUL Device "over the years", (Pls.' Opp'n at 5 (citing Ex. 9), neither the evidence they cite nor that argument leads to the conclusion that Defendants were participating in gamesmanship or a fishing expedition when they identified the

---

[11] Defendants did the same for the Weigensberg Patents, but pursuant to the parties' agreement, claims and counterclaims related to those patents are being dismissed. (See, e.g., Mem. Op. & Order [Doc. #294].)

[12] Defendants refer to the earliest patent issue date as December 2018, but that was for the '242 Weigensberg Patent. Because those patents are being dismissed from this action, (see supra n.11), the earliest issue date for the Hawes Patents becomes relevant.

licensed JUUL Device and accompanying pods as practicing the Asserted Claims of the Hawes Patents.

It is also determined that Plaintiffs met their burden, at least for purposes of this motion, of providing Defendants with a relevant response about § 287 compliance during fact discovery. Prior to Defendants' identification of the "licensed JUUL Device and accompanying Pods", Plaintiffs responded to Defendants' damages interrogatory that they "do not make or sell embodying products for any of the Asserted patents, and therefore, [they] do not have any products to mark with the Asserted Patent numbers. Likewise, Plaintiffs are unaware of any embodying products by their licensees." (Pls.' Suppl. Objs. & Resps. at 4 [Doc. #146-4].) Although Plaintiffs did not supplement their § 287 interrogatory response as to the Hawes Patents or even after Defendants identified the "licensed JUUL Device and accompanying pods" as practicing the Asserted Claims, Plaintiffs did previously affirmatively state that neither they nor their licensees made or sold embodying products, which would necessarily include the "licensed JUUL Device and accompany Pods" identified later by Defendants.

B.

Next is the issue of the timeliness of the experts' reports on the issue of marking. The Court's Scheduling Order set August 4, 2021 as the deadline for serving expert reports on issues on which each party bears the burden of proof. Reports on issues on which the opposing party bears the burden of proof were

due by August 25, 2021. And rebuttal reports were due by September 8, 2021. (Am. Scheduling Order [Doc. #85].)

Defendants argue that because Plaintiffs have the burden at trial of showing compliance with § 287, their expert report on marking was due August 4. But McAlexander did not opine on the subject until his September 8 report, "depriv[ing] [Defendants] . . . of the ability to provide any expert opinion in response to Plaintiffs' expert opinion." (Defs.' Mem. in Supp. at 16.) Plaintiffs contend that Defendants' August 25 report by Kodama includes opinions about a "newer JUUL version" about which Plaintiffs had no prior notice, "depriv[ing] [them] of the opportunity to timely address the newer JUUL version". (Pls.' Mem. in Supp. at 3.) But they acknowledge that they mitigated any harm by submitting McAlexander's September 8 report which responded to Kodama's August 25 opinions. (Id.) But for Defendants' motion to strike McAlexander's opinions on marking in his September 8 report, it does not appear that Plaintiffs would have moved to strike Kodama's opinions. (Id. at 4-5.)

Admittedly, fitting the burdens under § 287 and Arctic Cat into the Scheduling Order is not easy. But see Semcon IP Inc., 2018 WL 4501871, at *1 (explaining that because the patentee bears the burden of proof on § 287 compliance, the defendants' expert report on marking was a rebuttal, not an opening, report and, thus, was timely served pursuant to the scheduling order). Plaintiffs clearly have the burden of proof to show compliance with § 287; thus, they had an obligation to serve an expert report on that issue by August 4.

18

However, their burden does not arise until Defendants first meet their low burden of identifying unmarked products. Perhaps it can be argued that because Defendants identified during fact discovery the licensed JUUL device and accompanying pods as practicing the Asserted Claims that Plaintiffs' expert should have known to opine on marking in his opening report. It can also be argued that Plaintiffs' expert need not opine on the issue until Defendants' expert identified the unmarked products that Defendants believed practiced the patents. Because the application of the Scheduling Order to the Arctic Cat burdens is sufficiently convoluted here, the normal prejudice that may arise from failing to include opinions in certain reports does not exist. Both parties were able to air their experts' opinions on marking in their respective reports.[13] Each party's motion to strike is denied.[14]

III.

Plaintiffs have moved for partial summary judgment of no invalidity of the Hawes Patents ('517, '269, '541, and '357 patents) [Doc. #193]. After the parties had fully briefed the motion, the Scheduling Order was amended for Defendants to produce certain discovery recently obtained from a third-party and an accompanying short supplemental expert report. (Order [Doc. #258].) Plaintiffs

---

[13] The Court is not making any finding at this time as to the propriety of admitting these opinions into evidence at trial.

[14] Application of Southern States here is unnecessary because, as explained, under these circumstances the parties are found to have complied with the Rules and Scheduling Order.

19

were permitted to serve a similarly short responsive expert report. (Id.)  Both parties were then granted the opportunity to – and did – supplement their briefing on Plaintiffs' motion for partial summary judgment. (Order [Doc. #268].)

## A.

Plaintiffs argue that "no reasonable juror could find by clear and convincing evidence that the Asserted Claims are invalid" as obvious over the 2015 JUUL Articles, obvious over Verleur, anticipated and/or obvious over Inova 2.0, or obvious over V2 Pro Series. (Pls.' Mem. in Supp. at e.g., 1 [Doc. #195].)  In response, Defendants challenge the premises on which Plaintiffs base their arguments and contend, at best for Plaintiffs, there are genuine disputes of material facts. (Defs.' Opp'n at e.g., 1-3 [Doc. #234].)  Defendants also note that Plaintiffs failed to move for summary judgment on the JUUL product itself. (Id. at 11-12.)  In their supplemental briefing, the parties focused on the prior use of the JUUL product.  Plaintiffs challenge Defendants' ability to show prior public use of the JUUL device, while Defendants disagree and maintain there are genuine disputes of material fact. (See generally Pls.' Supplemental Briefing [Doc. #265]; Defs.' Opp'n to Pls.' Supplemental Briefing [Doc. #275].)

## B.

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,' Fed. R. Civ. P. 56(a)." Groves v. Commc'n Workers of Am., 815 F.3d 177, 181 (4th Cir.

2016).[15]  The moving party bears the initial burden of establishing "the basis for its

motion[] and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which

it believes demonstrate the absence of a genuine issue of material fact." Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)[16]).  The "mere

existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247-48 (1986).  A dispute is genuine if a reasonable jury, based on

the evidence, could find in favor of the non-moving party. Id. at 248.  The

materiality of a fact depends on whether the existence of the fact could cause a

jury to reach different outcomes. Id.  The court cannot weigh the evidence, by

failing to credit contradictory evidence, or make credibility determinations. Variety

Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651 (4th Cir. 2018).

"A patent shall be presumed valid." 35 U.S.C. § 282(a).  "The burden of

establishing invalidity of a patent or any claim thereof shall rest on the party

asserting such invalidity", id., and it must do so by clear and convincing evidence,

---

[15] The Federal Circuit Court of Appeals applies the law of the regional circuit when
reviewing summary judgment. BASF Corp. v. SNF Holding Co., 955 F.3d 958, 963
(Fed. Cir. 2020). See also Kaneka Corp. v. Xiamen Kingdomway Group Co., 790
F.3d 1298, 1303 (Fed. Cir. 2015) (reviewing summary judgment "according to the
law of the regional circuit," "reapply[ing] the standard applied by the district
court", and citing Ninth Circuit law for the summary judgment standard).
[16] Rule 56(c) was amended effective December 1, 2010, but the substance of the
rule did not change.

Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011). "Clear and convincing evidence should place[] in the fact finder an abiding conviction that the truth of [the] factual contentions are highly probable." Impax Labs., Inc. v. Lannett Holdings Inc., 893 F.3d 1372, 1378 (Fed. Cir. 2018) (citations omitted and alterations in original).

A claimed invention is obvious when "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.

> "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 407 (quoting Graham v. John Deer Co. of Kansas City, 383 U.S. 1, 17-18 (1966)).

### C.

Because the 2015 JUUL Articles are dispositive for this motion, the following analysis focuses solely on them. Plaintiffs rely largely on the decision of the Patent Trial and Appeal Board ("PTAB") not to institute Inter Partes Review of the Hawes Patents when they argue that no reasonable juror could find the Asserted Claims obvious over the 2015 JUUL Articles. (See Pls.' Mem. in Supp. at 6, 8 (citing PTAB Orders [Docs. #162-1 to 162-4].) Defendants petitioned the PTAB

22

for Inter Partes Review of all patents at issue in this matter, (see Mot. to Stay [Doc. #69]), but the PTAB declined to institute proceedings on the Hawes Patents[17], (see Notice [Doc. #162]). The PTAB institutes review when "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). Because the PTAB declined to do so with the Hawes Patents, Plaintiffs argue that Defendants necessarily lack clear and convincing evidence of invalidity.

The criticisms by the PTAB and Plaintiffs fall on the opinions of Defendants' expert, Karl Leinsing. For example, the PTAB found certain opinions inadequate, explanations lacking particularity, and annotations unsupported by the articles. (See, e.g., Pls.' Mem. in Supp. at 6 (citing Doc. #162-1 at 13-15), 9 (citing Doc. #162-2 at 11).) Plaintiffs describe the 2015 JUUL Articles as providing "only cursory, high-level, and incomplete descriptions of a JUUL device before any JUUL devices were publicly on sale." (Id. at 5.) According to Plaintiffs, the articles "do not provide **any** technical detail; they are marketing puff pieces aimed at promoting a future product launch." (Id. at 7.) Despite this, Plaintiffs argue, Leinsing "relie[d] on the pictures in the Juul[18] Articles, without any reference to or support from the Juul Articles themselves, to baselessly attach claim elements to the pictures in the Juul Articles" "under the guise of 'general state of the art and

---

[17] The PTAB also declined to institute proceedings on the Bried Patents. (Notice [Docs. #105, 119].)

[18] Plaintiffs are not consistent with their use of JUUL versus Juul.

23

knowledge of a POSA'". (Id.) Furthermore, the "Juul Articles were published <u>one</u> <u>day</u> [April 21, 2015[19]] before the critical date of the Hawes Patents [April 22, 2015[20]] and months before a JUUL device was commercially available [June 2015[21]]"; "[t]hus, the technical innards of a JUUL device were not available to a POSA until well after the critical date of the Hawes Patents, and unequivocally were not part of the general state of the art." (Id. at 9.)

Defendants respond that PTAB decisions denying review are not controlling on this Court and the information before the PTAB was different than what is before this Court. (Defs.' Opp'n at 6-10.) For example, Defendants submitted to the PTAB a single expert declaration that was limited in scope, without any live testimony, that was different than the expert reports in this matter. (Id. at 6-8; <u>see</u> Pls.' Mem. in Supp., Ex. 1 at <u>e.g.</u>, 62-70 (Leinsing's Expert Report (Aug. 4, 2021)) [Doc. #195-1].) The PTAB also did not have prior art products before it as this Court does because the PTAB may only base invalidity decisions on prior art patents and printed publications. (Defs.' Opp'n at 6 (citing 35 U.S.C. § 311).)[22]

---

[19] <u>See</u> Pls.' Mem. in Supp., Exs. 9-11, 2015 JUUL Articles [Docs. #195-9 to 195-11].
[20] <u>See</u> Pls.' Mem. in Supp., Ex. 3, Leinsing Dep. at 216:14-16 [Doc. #195-3]; Am. Compl., Ex. G, '269 Patent [Doc. #46-7].
[21] <u>See</u> Pls.' Mem. in Supp., Ex. 11, Business Wire Article [Doc. #195-11].
[22] Defendants also argue that summary judgment is inappropriate on the invalidity theory of JUUL prior art <u>product</u> because Plaintiffs rely only on the JUUL <u>Articles</u> as JUUL prior art. (Defs.' Opp'n at 11-12.) Plaintiffs reply that Defendants do "**not** have an invalidity theory based on a JUUL product." (Pls.' Reply at 2.) Whether Defendants have asserted invalidity based on a JUUL product is the subject of another pending motion, (Pls.' Mot. to Strike [Doc. #242]), and need not be decided for purposes of this motion.

Defendants contend that the PTAB also did not "consider a POSA's common knowledge of those and other prior-art products when it evaluated Reynolds's theories based on the printed-publication JUUL Articles". (Id. at 7.)

Plaintiffs agree that PTAB decisions are not binding but argue that they are "probative of the weakness of the JUUL Articles . . . ." (Pls.' Reply at 3 (citing Precision Fabrics Group, Inc. v. TieTex Int'l, Ltd., No. 1:13-CV-645, 2016 WL 6839394, at *9 (M.D.N.C. Nov. 21, 2016) [Doc. #241].) Plaintiffs claim that Defendants "attempt to create differences [between what was presented to the PTAB and here] where there are none." (Id. at 5.) They argue that not only did the "PTAB ha[ve] the benefit of declarations from both Mr. Leinsing and Mr. McAlexander", but Leinsing's PTAB declaration and expert report in this matter "are the same in all material respects." (Id. at 4, 6 (citing App. A, Redline of Opinions on JUUL [Docs. #241-1]).) Plaintiffs also take issue with Defendants' description of the role prior art products play before the PTAB, explaining that, while prior art products cannot be the basis for invalidity, "the PTAB nonetheless considers a POSA's common knowledge, including knowledge of prior art products, when evaluating those [invalidating] grounds." (Id. at 5 (citing Yeda Research v. Mylan Pharm. Inc., 906 F.3d 1031, 1041 (Fed. Cir. 2018)).) According to Plaintiffs, Defendants "present[] the same prior art and make[] the same arguments [they] made to the PTAB." (Id. at 6.)

Case 1:20-cv-00472-NCT-JLW   Document 296   Filed 07/14/22   Page 25 of 33

D.

It is determined that a reasonable jury could find by clear and convincing evidence that the Hawes Patents are obvious over the 2015 JUUL Articles. The Business Wire article describes the "JUUL features" as:

> Uses liquid-to-wick cartridge system[;] Small battery with a high discharge rate – 200 puffs per day[;] Internal temperature regulation[;] Ease of use: simply insert JUULpod into JUUL and draw[;] Battery charges two times faster than the average e-cigarette[;] Indicator light communicates battery life and pull strength[;] Unrivaled patented technology USB charger with magnetic contact[;] . . . .

(Pls.' Mem. in Supp., Ex. 11.) The Verge and Wired articles provide clear images of the JUUL pods. (Pls.' Mem. in Supp., Exs. 9, 10.) Leinsing used the general state of the art and knowledge of a POSA when opining that the articles' descriptions and images disclose each element of the Asserted Claims of the '517 Patent, among others. (Pls.' Mem. in Supp., Ex. 1 at 62-82.) Despite the PTAB's noncontrolling decision to the contrary, Leinsing's opinions for Claim 1 of the '517 Patent, for example, find support in the articles. Plaintiffs argue that "Leinsing relies on the pictures in the Juul Articles, without any reference to or support from the Juul Articles themselves, to baselessly attach claim elements to the pictures in the Juul Articles". (Pls.' Mem. in Supp. at 7.) They contend that "the PTAB correctly determined . . . that nothing in the Juul Articles provides context or support for Mr. Leinsing's labels." But what else could those components of the JUUL pods in the images be in light of the articles' descriptions and the general state of the art and knowledge of a POSA? In sum, Leinsing's opinions are

26

sufficient for a jury to find by clear and convincing evidence that the Hawes Patents were obvious over the 2015 JUUL Articles. Thus, Plaintiffs' motion for partial summary judgment is denied.[23]

IV.

In response to Defendants' opposition to Plaintiffs' motion for partial summary judgment, Plaintiffs moved to strike Leinsing's deposition testimony on the theory of public use of the JUUL product, [Doc. #242]. (Pls.' Br. in Supp. at 16 (identifying the specific portions of testimony to be stricken) [Doc. #243].) Plaintiffs contend that Defendants "affirmatively abandoned a JUUL product as an invalidity defense" when they made certain statements in earlier briefing, provided the summary chart of invalidity opinions, and offered Leinsing's expert report that opined only on the JUUL Articles. (Pls.' Br. in Supp. at 9-12 (all caps and bold print removed); see also id. at 2-4 (noting that Defendants' Preliminary Invalidity Contentions identified the April 21, 2015 JUUL Articles as "Prior Art Publications" and "Juul from Juul Labs (previously PAX Labs, Inc.), April 2015" as "Other Prior Art" but amended invalidity contentions did not include an invalidity chart for "Juul from Juul Labs"; Pls.' Reply at 7 n.1 (describing as "incomprehensible" Defendants' position that their Second Amended Preliminary Invalidity Contentions included a prior use invalidity theory when Defendants previously stated that those contentions conformed to Defendants' position before

---

[23] It is, thus, unnecessary to address the other bases upon which Plaintiffs rely for summary judgment.

27

the PTAB, but the PTAB does not review prior art products) [Doc. #249].)  Plaintiffs also argue that Leinsing's expert report identifies Inova and V2 prior art products, but not a JUUL prior art product and that his opinions in this matter "are <u>identical</u> in all material respects to those made to the PTAB, which can <u>only</u> be based on printed references." (<u>Id.</u> at 8-10.)

According to Plaintiffs, Defendants violated Rule 26 of the Federal Rules of Civil Procedure when Leinsing's report was not "'a complete statement of all [of his] opinions [he] will express and the basis and reasons for them.'" (<u>Id.</u> at 7.) Thus, Plaintiffs argue that Rule 37 counsels that an appropriate sanction is striking Leinsing's testimony about the JUUL product because Defendants' failure to disclose that opinion earlier was neither substantially justified nor harmless. (<u>Id.</u> at 7-8 (quoting <u>Precision Fabrics Group, Inc.,</u> 2016 WL 6839394, at *2-3 (citing <u>S. States Rack & Fixture, Inc.,</u> 318 F.3d at 597)); <u>see also id.</u> at 12-14.)

Plaintiffs describe Defendants' conduct as "clearly put[ting] both Altria and the Court on notice that it was only pursuing the JUUL Articles as prior art publications, not as a product." (<u>Id.</u> at 12-13.)  Because Leinsing only opined on the articles, so, too, did McAlexander in his responsive expert report. (<u>Id.</u> at 13.) Plaintiffs believe curing this surprise would cause "a substantial delay to the case schedule" with new expert reports, new expert depositions, and further briefing. (<u>Id.</u>)

Defendants respond that they have always maintained a prior use invalidity theory based on the JUUL device. (Defs.' Opp'n at 5-11, 15-20 [Doc. #248].)  Each

of the invalidity contentions, including their Final Invalidity Contentions and
Supplemental Final Invalidity Contentions, not only disclosed the 2015 JUUL
Articles as "Prior Art Publications", but also disclosed "Juul" as "Other Prior Art"
that was an "Item offered for sale or publicly used or known" as of "Apr. 2015".
(Id. at 6-7 (citing Ex. 4, Excerpts of Defs.' Prelim. Invalidity Contentions at 24, 43;
Ex. 5, Excerpts of Defs.' Am. Prelim. Invalidity Contentions at 23, 42; Ex. 6,
Excerpts of Defs.' 2nd Am. Invalidity Contentions at 23, 42; Ex. 7, Excerpts of Defs.'
Final Invalidity Contentions at 26, 45; and Ex. 8, Excerpts of Defs.' Suppl. Final
Invalidity Contentions at 26, 45), 15-16; see also id. at 8 (citing Ex. 9 (Charts F-14 to
I-14) for the proposition that their "claim charts included evidence of use of the
product"), 16.)  They cite to portions of Leinsing's opening expert report that
"specifically address the invalidity of the Hawes Patent claims based on the prior
public use of the JUUL device" and that "specifically reference[] and reproduce[]
images of the device that was described and depicted in the Articles,
supplemented with images of a JUUL device he physically inspected." (Id. at 8-10
(citing Leinsing's Expert Report (Aug. 4, 2021) ¶¶ 102-13, 123-62, 281-91, 327-38,
376-426 [Doc. #195-1]), 16.)  In the event that it is determined they abandoned
their prior use invalidity theory, Defendants dispute the propriety of striking those
opinions. (Id. at 20-24.)

It is determined that Leinsing's testimony about a prior art JUUL device was
not a surprise to Plaintiffs.  Defendants have consistently included the JUUL
device as prior art in their invalidity contentions and Leinsing's opening report

references a prior art product, the JUUL device, as evidenced by the 2015 JUUL Articles. There can be no doubt that a JUUL device existed at the time of those articles. It is pictured in two of the articles, its characteristics are detailed in the articles, and individuals are described in the articles as using the JUUL device. Plaintiffs' motion to strike is denied.

V.

Defendants have moved for partial summary judgment on the question of pre-suit damages for infringement of the Hawes Patents[24] [Doc. #216].[25] They argue that there is only one issue to be decided: whether the licensed JUUL product practiced the patents. (Defs.' Mem. in Supp. at 1 [Doc. #221].) Their arguments are similar to those they made in briefing the parties' motions to strike expert opinions on marking. (Compare id. at 17-22 with supra at 13, 15.) In addition, here, they argue that even if McAlexander's opinions are considered, "they are wholly inadequate to meet [Plaintiffs'] burden of establishing that the licensed JUUL product does not practice the" patents. (Defs.' Mem. in Supp. at 22.) They note his admissions that he did not purchase, inspect, or tear down any licensed JUUL product and did not review evidence of any licensed JUUL product sold since December 2018. (Id. at 22-23 (citing Ex. 3, Excerpts of McAlexander Dep. [Doc. #218-3]).) In response, Plaintiffs similarly advance arguments that

---

[24] This motion also included the Weigensberg Patents, but the parties since entered into an agreement to dismiss those patents from this action.
[25] For the law on 35 U.S.C. § 287, see supra at 14.

Case 1:20-cv-00472-NCT-JLW   Document 296   Filed 07/14/22   Page 30 of 33

mirror those they made in briefing on the parties' motions to strike. (Compare Pls.' Opp'n at 1-3, 14-15, 18-19 [Doc. #238] with supra at 13, 15-16.) In addition, they cite to the portions of McAlexander's report and deposition in which he opined that the JUUL product identified by Kodama does not practice the Hawes Patents. (Pls.' Opp'n at 11, 12, 16 (citing McAlexander's Reply Expert Report [Doc. #146-7]; Ex. 1, Excerpts of McAlexander Dep. [Doc. #236-1]).)

It is determined that a reasonable jury could find that Plaintiffs have shown by a preponderance of the evidence that the licensed JUUL product identified by Defendants does not practice the Hawes Patents. In Kodama's August 25, 2021 report, he identifies the JUUL Device and the JUULpods he purchased to inspect. (Kodama's Expert Report (Aug. 25, 2021) ¶ 7 [Doc. #167-12].) McAlexander opines in his reply report that the JUULpods inspected by Kodama do not contain a "vaporizer compartment" as independent claims 1 and 10 of the '517 Patent and independent claim 1 of the '357 Patent require or a "device compartment" as independent claim 19 of the '269 Patent and independent claim 24 of the '541 Patent require (McAlexander's Reply Expert Report ¶¶ 169-77 [Doc. #146-7].) In addition, he opines that even assuming the JUULpods inspected by Kodama contain a "device compartment", that compartment is not "upstream" of the "vapor precursor compartment" or "pre-vapor formulation compartment" as independent claim 19 of the '269 Patent and independent claim 24 of the '541 Patent require. (Id. ¶¶ 178-84.) During his deposition, McAlexander testified

further that the JUUL product examined by Kodama did not practice the Hawes Patent. (Pls.' Opp'n, Ex. 1.)

Defendants make much of the fact that McAlexander merely relied on the images in Kodama's report without purchasing, inspecting, or tearing down a licensed JUUL device himself.[26]  But Defendants have consistently argued throughout this litigation that there is only one licensed JUUL device. (See, e.g., Defs.' Mem. in Supp. of Mot. to Strike Pls.' Reply Expert Ops. at 11 ("**JUUL has only sold one 'JUUL Device' (the name of the product on JUUL's website) since [December 2018].**" (emphasis in original)) [Doc. #146]; Defs.' Reply Mem. in Supp. of Mot. to Strike Pls.' Reply Expert Ops. at 4 ("JUUL has sold only one licensed product since December 2018, and presumably has not made changes to that product since before August 8, 2016.") [Doc. #182]; Defs.' Opp'n to Pls.' Mot. to Strike Defs.' Expert Report at 4 ("[S]ince the earliest of the asserted patents issued (also in December 2018), there has only been **one JUUL product**." (emphasis in original)) [Doc. #187].)

Therefore, McAlexander's reliance on the images of the JUUL product in Kodama's report – representative of the "one JUUL product" according to Defendants – is sufficient for purposes of summary judgment.  In other words, a reasonable juror could find that Plaintiffs met their burden to show that the

---

[26] In turn, Plaintiffs criticized Kodama for his inability to identify the manufacturing date of the JUUL product he inspected. (Pls.' Opp'n at 16 (citing Excerpts Kodama Dep. [Doc. #174-1]).)

Case 1:20-cv-00472-NCT-JLW   Document 296   Filed 07/14/22   Page 32 of 33

licensed JUUL product did not practice the Hawes Patents and, thus, did not need to be marked. Defendants' motion for partial summary judgment is denied.

VI.

For the reasons explained in this Memorandum Opinion, IT IS HEREBY ORDERED that:

(1) Defendants' Motion to Strike Plaintiffs' Expert Opinions Concerning Secondary Considerations Not Disclosed During Fact Discovery [Doc. #128] is DENIED,

(2) Defendants' Motion to Strike Plaintiffs' Reply Expert Opinions Concerning Marking [Doc. #143] is DENIED,

(3) Plaintiffs' Motion to Strike Defendants' Rebuttal Expert Report Concerning Marking [Doc. #173] is DENIED,

(4) Plaintiffs' Motion for Partial Summary Judgment [Doc. #193] is DENIED,

(5) Defendants' Motion for Partial Summary judgment of No Pre-Suit Damages for Alleged Infringement of the Hawes and Weigensberg Patents [Doc. #216] is DENIED, and

(6) Plaintiffs' Motion to Strike Mr. Leinsing's Testimony and Preclude Reynolds from Arguing Invalidity of the Hawes patents Based on Alleged Prior Use of a JUUL Product [Doc. #242] is DENIED.

This the 14th day of July, 2022.

/s/ N. Carlton Tilley, Jr.<br>
Senior United States District Judge

33