# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

ALTRIA CLIENT SERVICES LLC,

      Plaintiff,

v.

R.J. REYNOLDS VAPOR COMPANY,

      Defendant.

Civil Action No: 20-CV-472

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN ONGOING ROYALTY

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................................. 1

II. BACKGROUND ................................................................................. 2

III. LEGAL FRAMEWORK ...................................................................... 3

IV. ARGUMENT ...................................................................................... 5

    A. Altria Is Entitled to a Reasonable Royalty for Reynolds's Ongoing Infringement ................................................................... 5

    B. Changed Circumstances Support a Higher Ongoing Royalty than the Jury-Awarded Royalty Rate ........................................................ 7

        1. GP Factor 5: Changed Circumstances Have Placed Altria in a Better Bargaining Position ................................................. 7

        2. GP Factors 8 and 11: Increased Profitability, Commercial Success, and Usage of VUSE Alto Support a Higher Rate ............ 10

        3. GP Factor 2: Changed Circumstances Relating to the Comparability of the Fontem Agreements Support a Higher Rate ............................................................................. 14

        4. The Remaining GP Factors are Unchanged and Neutral ................. 15

    C. Quantitative Assessment of the Ongoing Royalty Rate .............................. 16

    D. The Court Should Impose Appropriate Procedures for the Ongoing Royalty ......................................................................... 19

V. CONCLUSION ................................................................................. 22

Page(s)

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  827 F. Supp. 2d 641 (E.D. Va. Nov. 2011), *aff'd in relevant part*, 694
  F.3d 1312 (Fed. Cir. 2012) ................................................................................. 9, 12, 18

*Affinity Labs of Texas, LLC v. BMW N. Am., LLC*,
  No. 9:08-cv-00164 (E.D. Tex. Apr. 12, 2011), Doc. #554 ......................................... 20

*Aqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014) ................................................................................. 11

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) .............................................................................. 3, 5

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
  No. 14-cv-62369, 2017 WL 7732873 (S.D. Fla. Jan. 3, 2017), *aff'd*, 876
  F.3d 1350 (Fed. Cir. 2017) ................................................................................... 4, 8, 9

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
  No. 1:15-cv-00152 (D. Del. Aug. 14, 2019) ............................................................. 19

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys. LLC*,
  No. 2:15-cv-00037 (E.D. Tex. Apr. 23, 2018) ........................................................... 16

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
  No. 2:15-cv-1202, 2017 WL 3034655 (E.D. Tex. July 18, 2017) ........................*passim*

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  582 F.3d 1288 (Fed. Cir. 2009) ............................................................................. 3, 5, 6

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ....................................................................... 5, 7, 10, 14

*I/P Engine, Inc. v. AOL Inc.*,
  No. 2:11-cv-00512 (E.D. Va. Aug. 14, 2013), Doc. #963 ....................................... 20, 21

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
  No. 2:17-cv-07639 (C.D. Cal. Apr. 28, 2020), Doc. #738 ..................................... 19, 21

ii

*Mondis Tech. Ltd. v. Chimei InnoLux Corp.*,
    822 F. Supp. 2d 639 (E.D. Tex. 2011), *aff'd sub nom. Mondis Tech. Ltd.*
    *v. Innolux Corp.*, 530 F. App'x 959 (Fed. Cir. 2013) ................................................. 14

*Packet Intelligence LLC v. NetScout Sys., Inc.*,
    No. 2:16-cv-00230 (E.D. Tex. Sept. 7, 2018), Doc. #303 .......................................... 10

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007)................................................................................... 3, 19

*Paice LLC v. Toyota Motor Corp.*,
    609 F. Supp. 2d. 620 (E.D. Tex. 2009).......................................................................... 9

*Presidio Components Inc. v. Am. Tech. Ceramics Corp.*,
    No. 08-cv-00335 (S.D. Cal. Aug. 5, 2010), Doc. #367 ............................................... 20

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
    849 F.3d 1360 (Fed. Cir. 2017)...................................................................................... 3

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995)........................................................................................ 5

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*,
    LLC, 807 F.3d 1311 (Fed. Cir. 2015) (en banc) ............................................................ 5

*Server Tech., Inc. v. Am. Power Conversion Corp.*,
    No. 3:06-cv-00698 (D. Nev. May 12, 2017), Doc. #702................................... 20, 21, 22

*Syntrix Biosystems, Inc. v. Illumina, Inc.*,
    No. 3:10-cv-05870 (W.D. Wash. July 1, 2013), Doc. #359 ............................. 20, 21, 22

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
    612 F.3d 1365 (Fed. Cir. 2010)...................................................................................... 5

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
    No. 04-876-GMS, 2014 WL 1457797 (D. Del. Apr. 14, 2014) ..................................... 9

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012).................................................................................... 5, 6

*XY, LLC v. Trans Ova Genetics, L.C.*,
    890 F.3d 1282 (Fed. Cir. 2018)............................................................................*passim*

*XY LLC v. Trans Ova Genetics*,
No. 1:13-cv-00876 (D. Colo. Mar. 28, 2019), Doc. #646 ............................................. 9

**Statutes**

35 U.S.C. § 283 ....................................................................................................... 3

# I. __INTRODUCTION__

Plaintiff Altria Client Services LLC ("Altria") respectfully requests that the Court order an ongoing royalty for infringing sales of VUSE Alto by R.J. Reynolds Vapor Company ("Reynolds") occurring after the Court's entry of judgment on the jury verdict finding infringement of U.S. Patent No. 10,299,517 ("the '517 patent"), U.S. Patent No. 10,485,269 ("the '269 patent"), and U.S. Patent No. 10,492,541 ("the '541 patent") (collectively, "the Pod Patents"). The jury awarded the full amount of requested damages for "past infringement through June 30, 2022," but the jury award does not include compensation for future infringement. *See* Doc. #458 at 5. Accordingly, it is appropriate for the Court to order ongoing royalties for Reynolds' continued infringing sales of VUSE Alto. Altria respectfully requests that the Court set an ongoing royalty rate at 10.5% of VUSE Alto positive net sales.

The Federal Circuit has recognized that "there is a fundamental difference between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (internal citations omitted). Thus, courts use the jury awarded royalty rate (5.25%) as the starting point of the analysis for a post-judgment ongoing royalty and have routinely increased the rate based on changed circumstances between the date of the original hypothetical negotiation (May 2019) and the date of the post-judgment ongoing royalty hypothetical negotiation. As detailed in this motion, the altered relationship between the parties and their respective bargaining positions as well as ███████████████

████████████████████ of VUSE Alto are changed circumstances that justify an increase to the royalty rate to compensate for post-judgment infringement. Furthermore, the comparable Fontem-Nu Mark and Fontem-Reynolds agreements ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ for negotiation of a post-judgment royalty.

For the reasons set forth in detail below, Altria respectfully requests that the Court grants its motion for an ongoing royalty.

## II. <u>BACKGROUND</u>

On September 7, 2022, following a seven-day trial, the jury returned a verdict finding that VUSE Alto infringes claims 1, 9, and 10 of the '517 patent, claim 19 of the '269 patent, and claim 24 of the '541 patent, and that none of these claims is invalid. Doc. #458. The jury awarded past damages from the earliest patent issuance date through June 30, 2022 in the amount of $95,233,292.00. Doc. #458 at 5. As the jury awarded the full amount requested by Altria, it is implicit that the jury awarded a 5.25% royalty based on positive net sales of VUSE Alto from May 2019 through June 30, 2022. *See, e.g.*, Trial Tr. at 425:9-426:7; 463:4-16 (Malackowski). This Court entered judgment on the verdict on October 5, 2022. Doc. #473.

The parties stipulated to supplemental damages between the July 1, 2022 through the date of judgment in the amount of 5.25% on positive net sales of VUSE Alto pods and power units, and to pre- and post- judgment interest. Doc. #470. The parties also stipulated

2

to a briefing schedule for Altria's motion for ongoing royalties and deadlines for conducting depositions for any expert witnesses that submit declarations on the issue of ongoing royalties. Doc. #464. Altria communicated to Reynolds in writing that the appropriate ongoing royalty rate in this case should be 10.5%, and offered to meet and confer telephonically to come to an agreement. Reynolds rejected Altria's proposal in writing, refused to provide a counterproposal for the appropriate rate at that time (and has not since), and declined to discuss the matter any further, stating that it had satisfied its obligation to meet and confer.

## III.  **LEGAL FRAMEWORK**

The Patent Act grants the Court authority to award an ongoing royalty in lieu of an injunction for continued patent infringement. 35 U.S.C. § 283; *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1377 (Fed. Cir. 2017) ("We have interpreted [Section 283] to permit a court to award 'an ongoing royalty for patent infringement in lieu of an injunction' barring the infringing conduct." (quoting *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007))). "A damages award for pre-verdict sales of the infringing product does not fully compensate the patentee because it fails to account for post-verdict sales." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009).

"[T]here is a fundamental difference between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." *XY*, 890 F.3d at 1297 (internal citations omitted); *see also Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876

3

F.3d 1350, 1370 (Fed. Cir. 2017) ("[W]e have explained that 'once a judgment of validity and infringement has been entered … the calculus is markedly different because different economic factors are involved."). "Recognizing the importance of the jury's verdict, courts have uniformly held that the ***starting point*** for the … analysis of the ongoing royalty rate is the royalty rate found by the jury for the pre-verdict infringement period." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202, 2017 WL 3034655, at *7 (E.D. Tex. July 18, 2017) (emphasis added) (Bryson, J., Federal Circuit Judge sitting by designation) (collecting cases) (hereinafter, "*UroPep*"); *see also Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, No. 14-cv-62369, 2017 WL 7732873, at *1 (S.D. Fla. Jan. 3, 2017) ("Ongoing royalties are determined based on the assumption that the parties engage in post-verdict negotiation, with the jury's damages award as a starting point."), *aff'd,* 876 F.3d 1350 (Fed. Cir. 2017). "The burden is on [the patentee] to show that it is entitled to a royalty rate in excess of the rate initially determined by the jury." *Id.*

In determining an appropriate amount of an ongoing royalty the Court should take into account the "change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability." *XY*, 890 F.3d at 1297 (citation omitted). "The requirement to focus on changed circumstances is particularly important when, as in this case, an ongoing royalty effectively serves as a replacement for whatever reasonable royalty a later jury would have calculated in a suit to compensate the patentee for future infringement." *Id*. Because "[t]he later jury would

4

necessarily be focused on what a hypothetical negotiation would look like after the prior infringement verdict," "post-verdict factors should drive the ongoing royalty rate calculation." *Id*. Therefore, in ascertaining the appropriate royalty rate for ongoing infringement, the Court should consider "a ***post-judgment hypothetical negotiation***," and may "us[e] the *Georgia-Pacific* factors" in doing so. *Arctic Cat*, 876 F.3d at 1370 (emphasis added); *see, e.g.*, *Fresenius USA*, 582 F.3d at 1303 (stating that ongoing royalty rate that would result from a hypothetical negotiation is "influenced by the *Georgia-Pacific* factors"). The fifteen *Georgia-Pacific* factors are a set of factors that courts may rely upon to determine an appropriate royalty rate. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) (citing *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).

## IV.   <u>ARGUMENT</u>

### A.   Altria Is Entitled to a Reasonable Royalty for Reynolds's Ongoing Infringement

Altria is entitled to a reasonable royalty for Reynolds's post-verdict infringement based on the sales of VUSE Alto pod and device units that infringe Altria's Pod Patents. The Federal Circuit has held that, "absent egregious circumstances … the patentee remains entitled to an ongoing royalty." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, LLC, 807 F.3d 1311, 1332-33 (Fed. Cir. 2015) (en banc); *vacated in part on other grounds*, 137 S. Ct. 954 (2017); *see also*, *UroPep*, 2017 WL 3034655, at *2. Courts routinely award ongoing royalties where "the record [shows] that [the plaintiff] has not been compensated for [the defendant's] continuing infringement." *Telcordia Techs., Inc.*

5

*v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010); *see, e.g.*, *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012); *Fresenius USA*, 582 F.3d at 1303. That is because "it would be improper for the Court first to conclude that the damages awarded by the jury do not cover the post-verdict period, but then to rule that [the plaintiff] is not entitled to any relief for that period." *UroPep*, 2017 WL 3034655, at \*2. Without relief in such an instance, the patent owner is effectively forced to "resort to serial litigation" to receive compensation for future infringement. *Id.* (quoting *Whitserve*, 694 F.3d at 35).

There is no dispute that the jury's award accounted for only past infringement and did not include future infringement. *See* Doc. #470, ¶¶ 1-2 (parties jointly stipulating that jury's award was "for ***past*** infringement from May 28, 2019 through June 30, 2022, and ***did not include … damages after June 30, 2022***" (emphases added)). The Verdict Form specifically asked the jury to provide the "sum of money [that] Altria prove[d] … would be adequate compensation for Reynolds's ***past infringement***" (Doc. #458 at 5, Question 4 (emphasis added)), and the Court's Jury Instructions instructed the jury that it "may not award damages for any future losses Altria may incur" (Trial Tr. 110:23-25 (Preliminary Instructions); *see also* Final Instructions (stating same)). The jury awarded damages in an amount identical to the amount of damages that Mr. Malackowski testified would compensate Altria for past infringement alone. *Id.*; *see, e.g.*, Trial Tr. at 425:9-426:7 (Malackowski).

6

Therefore, the jury's damages award did not compensate Altria for Reynolds' future infringement, and Altria is entitled to an ongoing royalty for future infringing sales of VUSE Alto (i.e., sales after the date of judgment).

## B. Changed Circumstances Support a Higher Ongoing Royalty than the Jury-Awarded Royalty Rate

The legal and economic circumstances embodied in *Georgia-Pacific* Factors 2, 5, and 8 have changed since the original May 28, 2019 hypothetical negotiation date. These changed circumstances support awarding an ongoing royalty rate higher than the jury's implicit rate of 5.25%. As explained below, the appropriate ongoing royalty rate factoring in these changed circumstances is 10.5%.

### 1. GP Factor 5: Changed Circumstances Have Placed Altria in a Better Bargaining Position

*Georgia-Pacific* Factor 5, which addresses "[t]he commercial relationship between the licensor and licensee" (318 F. Supp. at 1120), supports awarding an ongoing royalty rate that is higher than the jury's implied rate. The parties' respective bargaining positions have changed dramatically since the original hypothetical negotiation date of May 2019. Not only has VUSE Alto overtaken the entire e-vapor category of products, including JUUL, as the leading e-vapor product, but the jury's verdict of infringement and no invalidity, and the U.S. Patent and Trademark Office's denial of Reynolds's petitions for

7

*inter partes* review have greatly improved Altria's bargaining position.[1]  As explained below, these changes apply upward pressure on the rate.

First, VUSE Alto has surpassed JUUL as the leading e-vapor product on the market. Ex. 1 at 7 (Malackowski).  The jury heard that, as of the hypothetical negotiation date of May 2019, JUUL became "number one" in the e-vapor market soon after it launched in June 2015, quickly overtaking the rest of the e-vapor category which began to evolve to pod-based e-vapor products.  *See* Trial Tr. at 600:1-602:18; 652:25-653:4; 654:10-14 (Figlar).  As of the jury verdict, however, VUSE Alto had meaningfully surpassed every other product in the e-vapor category, including JUUL, in sales and is now "the number one selling electronic cigarette in the country."  Trial Tr. at 666:3-7 (Figlar); *see also* Ex. 1 at 7 (Malackowski).

Second, Altria has a stronger bargaining position as of September 2022 in view of the jury's verdict finding all claims infringed and not invalid and because pod-based

---

[1] Some district courts have analyzed changes in bargaining position under *Georgia-Pacific* Factor 5.  *See, e.g.*, *Arctic Cat,* 2017 WL 7732873, at *2-4 (assessing "better bargaining position" under "*Georgia-Pacific* factor 5").  Other courts have addressed post-verdict changes in bargaining position separate from and in addition to the *Georgia-Pacific* factors. *See, e.g.*, *Mass Eng'r Design, Inc. g. Planar Sys., Inc.*, 3:16-cv-1510 (D. Or. Nov. 19, 2018), Doc. #423 at 8-12.  Indeed, while courts must account for the post-verdict change in bargaining position (*XY*, 890 F.3d at 1297), "[t]here is no magic to [using] the *Georgia-Pacific* factors" for doing so (*UroPep*, 2017 WL 3034655, at *12).  "District courts may, but are not required to, apply the *Georgia-Pacific* factors to determine whether changes in the parties' legal status or bargaining positions will affect [the] post-verdict hypothetical negotiation."  *UroPep*, 2017 WL 3034655, at *12.  Therefore, it is appropriate to analyze the shift in the parties' bargaining position that results from the jury's verdict and the IPR denials under *Georgia-Pacific* factor 5, as Altria has done here.

8

products have become the dominant product form in the e-vapor category. The Federal Circuit has held that a jury's verdict finding patent claims not invalid and infringed "amounts to a substantial shift in the bargaining position of the parties." *XY*, 890 F.3d at 1297 (citation omitted). Accordingly, district courts have relied on this to award ongoing royalty rates that are greater than the royalty rate awarded by the jury for past infringement. *See, e.g.*, *Arctic Cat*, 2017 WL 7732873, at *2-4 (doubling rate from $102.54 per unit awarded by jury to $205.08 per unit based, in part, on change in bargaining position), *aff'd* 876 F.3d at 1370; *XY LLC v. Trans Ova Genetics*, No. 1:13-cv-00876 (D. Colo. Mar. 28, 2019), Doc. #646 at 11 (awarding ongoing royalty rate that is 25% higher than jury rate based in part on the fact that "awarding 15% (the same as the jury) would likely be error because the jury was considering a reasonable rate for *pre-verdict* infringement and the Federal Circuit has emphasized that *the verdict itself* is a changed circumstance that strengthens the patentee's bargaining position" (emphases in original)); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 827 F. Supp. 2d 641, 657-58 (E.D. Va. Nov. 2011) (increasing ongoing royalty rate to $2.74 per subscriber from the jury awarded rate of $1.13 based in part on a determination that the patentee had "an increase in bargaining power"), *aff'd in relevant part*, 694 F.3d 1312 (Fed. Cir. 2012).[2]

---

[2] Other courts have given this factor less weight in view of the fact that "[j]uries are already required to assume that the patent is valid and infringed when setting past damages." *UroPep*, 2017 WL 3034655, at *6 (citation omitted). Not only is this view inconsistent with Federal Circuit precedent cited above, but it also ignores that "[f]ailing to consider the parties' changed legal status would create an incentive for every defendant to fight each patent infringement case to the bitter end[.]" *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d. 620, 628 (E.D. Tex. 2009); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, No. 04-876-

9

Finally, Altria has a stronger bargaining position as of the jury's verdict in view of the fact that the U.S. Patent Trials and Appeal Board denied Reynolds's petitions for *inter partes* review of the Pod Patents. Courts have relied on denial of IPR petitions as a basis for awarding a higher ongoing royalty rate than the implied jury rate. *See, e.g.*, *Packet Intelligence LLC v. NetScout Sys., Inc.*, No. 2:16-cv-00230 (E.D. Tex. Sept. 7, 2018), Doc. #303 at 7-8 (awarding "an increase in the ongoing royalty above the implied base rate" based, in part, on the fact that patentee "successfully prevented institution of IPR proceedings on its patents"), Doc. #396 at 24 (finding same on remand).

Therefore, Factor 5 supports awarding an ongoing royalty rate that is higher than the implied jury rate of 5.25%.

### 2. GP Factors 8 and 11: Increased Profitability, Commercial Success, and Usage of VUSE Alto Support a Higher Rate

*Georgia-Pacific* Factor 8, which addresses the "established profitability of the product made under the patent; its commercial success; and its current popularity," and Factor 11, which addresses the "extent to which the infringer has made use of the invention," (318 F. Supp. at 1120) both support an increase in the ongoing royalty rate over that awarded by the jury based on the May 2019 hypothetical negotiation date. The economic circumstances surrounding VUSE Alto, and the e-cigarette market generally, changed substantially between May 2019 and September 2022. Over that approximately

---

GMS, 2014 WL 1457797, at *4 (D. Del. Apr. 14, 2014). Indeed, "without consideration of the changed legal status, there is essentially no downside to losing." *Id.*

40-month period, VUSE Alto experienced a ███████████████████████████
██████████████████████████

    First, as discussed in the Malackowski declaration, the profitability of VUSE Alto
███████████████████████ between May 2019 and September 2022. Over this period, the
operating margin for VUSE Alto ██████████████████████████████
███████████████████████ Ex. 1 at 12 (Malackowski). For comparison, the non-
pod, non-infringing VUSE Ciro and VUSE Vibe products were ███████████████████
███ in May 2019, and by September 2022 the operating profits of these products were
█████████████ and ████████ respectively. *Id.* at 6. VUSE Alto (a pod product) is
presently ██████████████████████ as the non-pod VUSE Vibe ████ This shows
that the infringing VUSE Alto pod design commands a ███████████████████ that of
the closest alleged non-infringing alternative design.

    An increase in profitability is a changed economic circumstance that other courts
have recognized as supporting an increase in the ongoing royalty rate over that awarded by
the jury. "[A]ll other factors being equal, parties engaged in a hypothetical negotiation at
the time of the verdict would understand that an anticipated increase in [defendant's]
incremental profits would likely produce a higher recovery for [patent owner], since the
size of the pie being divided is an important factor in determining the size of the slice
allocated to each of the interested parties." *UroPep*, 2017 WL 3034655, at *11; *see also*
*Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014) ("[A]nticipated
incremental profits under the hypothesized conditions are conceptually central to

11

constraining the royalty negotiation, as recognized in *Trans-World Mfg.*, 750 F.2d at 1568."); *ActiveVideo*, 827 F. Supp. 2d at 657-58 (increasing ongoing royalty rate to $2.74 per subscriber from the jury awarded rate of $1.13 based on a determination that the patentee had "an increase in bargaining power" and that it would be "reasonable for the parties to make an agreement whereby…[the patentee] would receive 40% of the profits."), *aff'd in part*, 694 F.3d 1312 (affirming royalty determination).

Second, the increase in commercial success and popularity (usage) of the Alto warrants an increased ongoing royalty rate. As the jury heard at trial, when the Alto was first introduced, it was a success. Trial Tr. at 434:8-25 (Malackowski). Not only did its sales ██████ but the sales of Reynolds's prior products ████████████████████ ████████ *Id.*



████████████ Trial Tr. at 434:6-435:15 (Malackowski)

The red line in the figure above represents sales of VUSE Alto, a pod product. The blue, green, and pink lines are sales of the Solo, Ciro, and Vibe, alleged non-infringing

12

alternatives.  Mr. Malackowski explained that this chart (and the underlying data) shows that the features contained within the accused products are the ones that drive sales in this e-cigarette category.  *Id.* ████████████████████████████████████████ ████████████████████████████████████████ Indeed, the jury heard and saw that, by 2020, VUSE Alto ██████████████████████████ and in fact had the second highest market share (36%), second only to JUUL (42%).  Trial Tr. at 452:19-25 (Malackowski); PX-321.

VUSE Alto's commercial success is a changed circumstance because it has ███████████████████████████████████████████ as compared to the time of the original hypothetical negotiation.  Quarterly sales of VUSE Alto have █████████████ ████████████ since the date of the hypothetical negotiation in May 2019.  Ex. 1 at 4 (Malackowski) (██████████████████████████████████████████████ ███████).  VUSE Alto now has the highest market share in the e-cigarette market, having overtaken every other product in the e-vapor category including JUUL, which had a 16-point lead on Reynolds just two years ago.  Ex. 1 at 11 (Malackowski); *see also* Trial Tr. at 600:16-22 (Figlar) ("JUUL's gone from number one to number two.").  The jury determined that JUUL does not practice the asserted patents (Doc. #458 at 5), which means at the time of the post-verdict ongoing royalty negotiation there is no non-infringing product on the market more successful than VUSE Alto.  That was not the case in 2019 at the time of the original hypothetical negotiation for past infringement.

An increased ongoing royalty rate is especially warranted here because the ███████ ████████ and market share of VUSE Alto has been dramatic as the e-vapor category evolved to pod-based products. As explained by Mr. Malackowski, ████████████ █████████████████, which in effect reduced the per unit royalty due to Altria, while Alto has simultaneously been taking away market share from every other e-vapor product, including JUUL, due to benefits enabled by the asserted patents. Ex. 1 at 7 (Malackowski). Today, VUSE Alto holds the largest share of the e-cigarette market. *Id.* For this additional reason, the ongoing royalty rate resulting from a post-judgment hypothetical negotiation in September 2022 would be higher than the 5.25% royalty rate than the jury determined the parties would have agreed to at the hypothetical negotiation in May 2019.

Thus, evidence of increased commercial success weighs in favor of a higher ongoing royalty. *See Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 648 (E.D. Tex. 2011) ("[T]he Court primarily agrees with [patent owner's] argument that factors 8-10 weigh in favor of increasing the reasonable royalty rate determined by the jury. With respect to these factors, [patent owner] points out that as opposed to 2005, the patented technology in 2011 has proven to be more of a commercial success."), *aff'd sub nom. Mondis Tech. Ltd. v. Innolux Corp.*, 530 F. App'x 959 (Fed. Cir. 2013).

### 3. GP Factor 2: Changed Circumstances Relating to the Comparability of the Fontem Agreements Support a Higher Rate

*Georgia-Pacific* Factor 2, which addresses "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit," (318 F. Supp. at 1120) supports

14

awarding an ongoing royalty rate that is higher than the jury's implied rate. The jury heard testimony regarding the comparable license agreements with Fontem—the Fontem-Reynolds agreement and the Fontem-Nu Mark agreement. The jury was shown evidence that the Nu Mark agreement ███████████████████████████████ and that Reynolds ███████████████████████████████████████████████████████████████ ████████ *See, e.g.*, Trial Tr. at 440:11-23, 444:3-445:11 (Malackowski). The Fontem agreements, however, were executed in 2016 and 2018, many years prior to the September 2022 jury verdict. Notably, the Fontem-Nu Mark and Fontem-Reynolds agreements were executed prior to any judgment of infringement or validity by a jury. Thus, for the purposes of determining the royalty for a ***post-judgment hypothetical negotiation***,██████████████ ██████████████████████████. Altria has successfully prosecuted a jury trial to completion and defended its intellectual property rights in several IPR proceedings. As explained by Mr. Malackowski, a rationale licensor would not accept the same royalty rate pre- and post- litigation, or there would be little motivation for an infringer to willingly license the patents. Ex. 1 at 9 (Malackowski).

Therefore, Factor 2 supports awarding an ongoing royalty rate that is higher than ███████████████████████████████████████████████████████████████.

### 4. The Remaining GP Factors are Unchanged and Neutral

The jury also heard testimony from both experts regarding the remaining *Georgia-Pacific* factors, including Factor 9 (non-infringing alternatives), Factor 12 (customary industry royalties), Factor 15 (amount deemed reasonable). *See, e.g.*, Trial Tr. at 449:18-

453:14, 463:5-464:20 (Malackowski); Trial Tr. at 958:4-960:6 (Mody). Based on this evidence, the jury awarded a 5.25% royalty rate as of May 2019. Altria is not aware of any new non-infringing alternatives or any other facts that would establish that the circumstances embodied in the remaining factors have changed as of September 2022. The jury clearly rejected the non-infringing alternatives that Reynolds proposed at trial. Therefore, these factors do not provide upward or downward pressure on the post-judgment hypothetical negotiation of the ongoing royalty rate.

### C. Quantitative Assessment of the Ongoing Royalty Rate

Courts routinely use the royalty rate implied by the jury's verdict as a "starting point" when determining the appropriate ongoing royalty amount. *See, e.g.*, *UroPep*, 2017 WL 3034655, at *7 (collecting cases); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys. LLC*, No. 2:15-cv-00037 (E.D. Tex. Apr. 23, 2018), Doc. #550 at 43 (using jury rate as starting point for evaluating ongoing royalty rate). The jury awarded the exact amount that Altria requested, and, as Mr. Malackowski testified, that amount was calculated based upon a 5.25% royalty rate applied to positive net sales of VUSE Alto. *See, e.g.*, Doc. #458 at 5, Question 4; Trial Tr. at 425:19-426:7 (Malackowski); *see also* Trial Tr. at 506:8-13 (Malackowski) (testifying that his damages calculation was based off of the understanding that the JUUL pod does not practices the Pod Patents). Accordingly, there can be no meaningful dispute here that the starting point for negotiation of a royalty for ongoing infringement is 5.25%.

The form of royalty—i.e., a running royalty based on a percentage of positive net sales—should not be altered post-verdict. The parties' experts agreed at trial that both parties would have been amenable to a running royalty rate at the 2019 hypothetical negotiation. Tr. at 977:3-5 (Mody); 464:21-465:7 (Malackowski). The circumstances today continue to support a running royalty. A percentage-based royalty accounts, in part, for changes in the quantity of VUSE Alto units sold. Ex. 1 at 12 (Malackowski). And the parties would not agree to a lump sum post-verdict royalty given the uncertainty associated with the adoption by Reynolds of its proposed non-infringing alternatives. *Id.* The royalty *rate*, however, should be adjusted upward by 5.25% (i.e., increased to 10.5%) as detailed below.

The ███████████████████████████████ of the Alto between the original hypothetical negotiation (May 2019) and the post-verdict hypothetical negotiation conservatively warrants an ongoing royalty rate of 10.5%. Ex. 1 at 13 (Malackowski). In May 2019, VUSE Alto had substantially lesser market share than JUUL, who was the market leader (*id.* at 7-8) and the fastest growing e-vapor product at that time. The ██████████████████████████████████████████████ ███████████████████████████████████████████ As explained in the accompanying declaration of Mr. Malackowski, ██████████ should be fairly attributed to the infringing pod patent architecture over the next-best, non-infringing, non-pod option, which presently is ████████████ than the pod-based VUSE Alto. *Id.* at 7, 13. In view of the Court's judgment, however, Reynolds owes royalties of 5.25% of

17

positive net sales of the Alto since the May 2019 hypothetical negotiation date.  Accounting for this baseline rate of 5.25%, the ████████████████████████████████████ ████.[3]  If Altria and Reynolds were to split ██████████████ 50/50, it would result in an additional royalty of ██████ (i.e., a total ongoing royalty of ██████).  *Id.*  To be conservative, Mr. Malackowski adjusts this figure down to 10.5%, which results in an ongoing royalty rate that is twice the royalty rate awarded by the jury.  *Id.* at 13.  This rate is based on a conservative calculation, as it is based on a 50/50 split, despite Altria having a stronger bargaining position, and it leaves Reynolds with the majority of the Alto's ████ ██████████.  *Id.* at 6, 13.

District courts have raised ongoing royalty rates by a factor of two—or more— based on increased profitability of the infringing product.  For example, in *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, the court adopted an ongoing royalty rate of "twice the rate awarded by the jury for the pretrial infringement period" based on a finding that "the increase in [defendant's] profits on infringing sales during the post-verdict period would be approximately twice the level of its profits for the pretrial infringement period as a whole."  2017 WL 3034655, at *13.  In *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, the court awarded an ongoing royalty rate ($2.74 per subscriber) that was 2.4 times the jury awarded royalty rate ($1.13 per subscriber) based on a determination that it "would have been reasonable for the parties to make an agreement whereby [defendant]

---

[3] ██████████████████████████████████████

would receive 60% of the profits and [the patent owner] would receive 40% of the profits from the [infringing system]." 827 F. Supp. 2d at 657-658.  In *DataTreasury Corp. v. Wells Fargo & Co.*, the court awarded an ongoing royalty rate of $0.005 per check as compared with the jury's rate of $0.002 per check based, in part, on profitability due to "significant" cost savings.  No. 2:06–CV–72 DF, 2011 WL 8810604, at *17, *19 (E.D. Tex. Aug. 2, 2011).

For the above reasons, the appropriate ongoing royalty is 10.5% of net Alto positive net sales.

### D.     The Court Should Impose Appropriate Procedures for the Ongoing Royalty

If the Court grants Altria's request for ongoing royalty, Altria respectfully requests that the Court also order procedures for accounting, audit, and payment—as set forth in Altria's proposed order filed herewith—to ensure compliance with the judgment.

This Court has the discretion to set the terms of an ongoing royalty.  *See Paice*, 504 F.3d at 1313-14 (noting that terms imposed by the district court, including quarterly payments, accounting of sales, and the right to request audits, were within the court's powers but remanding for the district court to reevaluate the royalty rate); *id.* at 1316 (Rader, J., concurring) (noting that "[d]istrict courts have considerable discretion in crafting equitable remedies").   Indeed, courts routinely order accounting, audit, and payment terms along with ongoing royalties.  *E.g.*, *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, No. 2:17-cv-07639 (C.D. Cal. Apr. 28, 2020), Doc. #738 at 1-2 (setting accounting, audit, and payment terms); *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 1:15-cv-00152

19

(D. Del. Aug. 14, 2019), Doc. #578 at 5 (same); *Server Tech., Inc. v. Am. Power Conversion Corp.*, No. 3:06-cv-00698 (D. Nev. May 12, 2017), Doc. #702 at 2-3 (same); *Syntrix Biosystems, Inc. v. Illumina, Inc.*, No. 3:10-cv-05870 (W.D. Wash. July 1, 2013), Doc. #359 at 3-4 (same). *I/P Engine, Inc. v. AOL Inc.*, No. 2:11-cv-00512 (E.D. Va. Aug. 14, 2013), Doc. #963 at 6-7 (same); *Affinity Labs of Texas, LLC v. BMW N. Am., LLC*, No. 9:08-cv-00164 (E.D. Tex. Apr. 12, 2011), Doc. #554 at 2-3 (same); *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, No. 08-cv-00335 (S.D. Cal. Aug. 5, 2010), Doc. #367 at 11 (same).

As set forth in Altria's proposed order, Altria requests that the following accounting, audit, and payment procedures be implemented for ongoing royalties:

1.    For the period beginning on the date judgment is entered (October 5, 2022 (Doc. #473)) and continuing until the expiration of the last to expire of the '517 patent, the '269 patent, and the '541 patent,[4] Defendant shall pay Altria an ongoing royalty of 10.5% of positive net sales of VUSE Alto products manufactured in, sold in, imported into, or exported from the United States. *See, e.g.*, *Server Tech*, Doc. #702 at 2 (ordering ongoing royalties from the date that judgment was entered); *Affinity*, Doc. #554 at 2-3 (ordering ongoing royalties for sales after entry of final judgment).

2.    Defendant must pay ongoing royalties quarterly to Altria in certified funds or by wire transfer, accompanied by a statement certifying under penalty of perjury the

---

[4] The Pod Patents expire on April 22, 2035.

20

U.S. positive net sales revenue for VUSE Alto in dollars and the calculation of the royalty payment. *See, e.g.*, *I/P Engine*, Doc. #963 at 6 (ordering similar terms); *Juno*, Doc. #738 at 2 (ordering quarterly payments and an accounting of revenue); *Server Tech*, Doc. #702 at 3 (ordering quarterly payments and an accounting certified under penalty of perjury); *Syntrix*, Doc. #359 at 3 (ordering quarterly payments and certification of compliance).

3.    Defendant must make such payment and provide the required statement to Altria no later than 30 days after the end of each calendar quarter. *See, e.g.*, *I/P Engine*, Doc. #963 at 6 (ordering payment within 20 days); *Juno*, Doc. #738 at 2 (ordering payment by the second Monday following the end of each quarter); *Server Tech*, Doc. #702 at 2 (ordering payment within 60 days); *Syntrix*, Doc. #359 at 3 (ordering payment within 30 days).

4.    Payments not made by the due date shall accrue interest at the prime interest rate compounded quarterly, consistent with the parties' pre-judgment interest stipulation (Doc. #470 at 3). *See, e.g.*, *Juno*, Doc. #738 at 2 (ordering interest on late payments at the prime rate compounded quarterly); *Server*, Doc. #702 at 3 (ordering interest on late payments at 1.5% per month); *Syntrix*, Doc. #359 at 4 (ordering interest on late payments at rate between Treasury bill rate and prime rate, compounded quarterly).

5.    Altria shall have the right to request audits of Defendant's sales figures, by Defendant providing its records to Altria's designated auditor. *See, e.g.*, *I/P Engine*, Doc. #963 at 6 ("Plaintiff shall have the right to request audits of relevant revenues figures and have its designated auditor review said data."); *Juno*, Doc. #738 at 2 (ordering right to have

21

auditing firm inspect and audit relevant books and records); *Server Tech*, Doc. #702 at 3

(ordering similar auditing term); *Syntrix*, Doc. #359 at 4 (ordering similar auditing term).

## V.     <u>CONCLUSION</u>

Altria respectfully requests that the Court should grant Altria's motion for an

ongoing royalty and adopt Altria's proposed order.

22

Dated: October 5, 2022

*/s/ Robert C. Van Arnam*
Robert C. Van Arnam
N.C. Bar No. 28838
Andrew R. Shores
N.C. Bar No. 46600
WILLIAMS MULLEN
301 Fayetteville Street Suite 1700
Raleigh, NC 27601
Tel: (919) 981-4055

Elizabeth S. Weiswasser*
Anish R. Desai*
John J. Nolan*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000

Diane P. Sullivan*
WEIL GOTSHAL & MANGES LLP
17 Hulfish Street
Princeton, NJ 08542
Telephone: (609) 986-1120

W. Sutton Ansley*
Amanda K. Branch*
Priyata Y. Patel*
Matthew D. Sieger*
Isha Agarwal*
Eric C. Westerhold*
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Tel: (202) 682-7000

Adrian C. Percer*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000

23

*Counsel for Plaintiff Altria Client Services LLC*

*\* Special Appearance Under Local Rule 83.1(d)*

24

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will give notice of such filing to all attorneys currently of records in the above-captioned case.

Dated: October 5, 2022

*/s/ Robert C. Van Arnam*
Robert C. Van Arnam
N.C. Bar No. 28838
WILLIAMS MULLEN
301 Fayetteville Street Suite 1700
Raleigh, NC 27601
Tel: (919) 981-4055

*Counsel for Plaintiff Altria Client Services LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief contains 5,666 words, as calculated by the "Word Count" feature of Microsoft Word 2010, the word processing program used to create it, and therefore complies with the word count limitation of Local Rule 7.3(d).

Dated: October 5, 2022

*/s/ Robert C. Van Arnam*
Robert C. Van Arnam
N.C. Bar No. 28838
WILLIAMS MULLEN
301 Fayetteville Street Suite 1700
Raleigh, NC 27601
Tel: (919) 981-4055

*Counsel for Plaintiff Altria Client Services LLC*