# EXHIBIT 1



**ALTRIA CLIENT SERVICES LLC**

v.

**R.J. REYNOLDS VAPOR COMPANY**

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

Civil Action No. 1:20-cv-00472

**DECLARATION OF JAMES E. MALACKOWSKI**

**October 5, 2022**

1. Background ........................................................................................................................................ 1
2. Jury Verdict Regarding Damages .................................................................................................... 1
3. Post-Hypothetical Negotiation Legal and Economic Conditions ................................................. 2
    3.1. Legal Conditions ........................................................................................................................ 3
    3.2. Economic Conditions ................................................................................................................ 3
4. Opinion Regarding Ongoing Royalty Rate ................................................................................... 12
5. Signature ........................................................................................................................................... 13

## 1. BACKGROUND

This declaration is designated as containing Confidential Business Information under the Protective Order issued in this matter[1] as specified in the footer on each page. This declaration is to be used only for the purpose of this litigation. No part of this declaration may be published or used for any other purpose without written consent.

My name is James E. Malackowski and I am the Co-Founder and Senior Managing Director of Ocean Tomo, LLC ("Ocean Tomo"), a part of J.S. Held. Ocean Tomo was retained by counsel for Altria Client Services LLC ("Altria") in June 2020 to perform analyses in connection with this matter and has been asked to analyze the form and amount of the appropriate compensation resulting from the alleged patent infringement by R.J. Reynolds Vapor Company ("Reynolds" or "Defendant") of U.S. Patent No. 10,299,517 ("the '517 patent"), U.S. Patent No. 10,485,269 ("the '269 patent"), and U.S. Patent No. 10,492,541 ("the '541 patent") (the "Pod Patents").

In connection with this assignment, I testified at trial on August 31, 2022. On September 7, 2022, a jury returned a verdict in favor of Altria, finding infringement and validity of the Pod Patents and awarding total past damages through June 30, 2022 in the amount of $95,233,292.[2] As explained below, the amount awarded by the jury is identical to the total reasonable royalty damages that I calculated for Reynolds' infringement of the Pod Patents through June 30, 2022 and for which I provided testimony at trial.

I have been asked by counsel to consider the legal and economic conditions that have changed since the May 28, 2019 date of the hypothetical negotiation for the purposes of determining of a post-judgment continued royalty for use of the Pod Patents. My evaluation of post-judgment conditions and the required adjustment to the form and amount of royalties that should be paid to Altria are summarized in this declaration. In the event that any rebuttal declaration is submitted by Reynolds' expert(s), I reserve the right to respond accordingly.

At the time of trial, the latest date for which Reynolds produced infringing sales data was June 30, 2022. Recently, Reynolds produced updated financial data, reflecting sales of infringing Vuse Alto products from July 1, 2022 through August 31, 2022.[3]

## 2. JURY VERDICT REGARDING DAMAGES

On August 31, 2022, I testified that Altria's total reasonable royalty damages for Reynolds' infringement of the Pod Patents amounted to $95,233,292 for the period from May 28, 2019

---

[1] Stipulated Protective Order, November 10, 2020.
[2] Verdict Form, September 7, 2022, pp. 3-5.
[3] Excel Spreadsheet Profit & Loss Statement Actuals for 2022, RJRMDNC_000301736; Excel Spreadsheet Profit & Loss Statement Actuals for 2022, RJRMDNC_000301745.

through June 30, 2022.[4] On September 7, 2022, a jury returned a verdict in favor of Altria and awarded total damages in the exact same amount for the same period. My reasonable royalty damages analysis used a royalty rate of 5.25 percent ███████████ of infringing Vuse Alto products as set forth in Figure 1 below.[5]

███████████████████████████████████████████

Considering the jury's damages award, identical to mine by the exact dollar amount, and in light of the respective opinions presented at trial, I interpret the jury's award to reflect a royalty rate of 5.25 percent.

3. **POST-HYPOTHETICAL NEGOTIATION LEGAL AND ECONOMIC CONDITIONS**

The Federal Circuit has stated that "there is a fundamental difference between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement."[7] "[C]ourts have uniformly held that the ***starting point*** for the … analysis of the ongoing royalty rate is the royalty rate found by the jury for the pre-verdict infringement period."[8] Furthermore, as recognized by one district court, the "Federal Circuit has instructed that post-verdict infringement should typically entail a higher royalty rate than the reasonable royalty found at trial."[9]

I understand that the determination of a post-judgment ongoing royalty rate requires consideration of the legal and economic conditions that have changed since the date of the hypothetical negotiation. Such changes may require that the post-judgment royalty rate be higher than that

---

[4] Transcript of Jury Trial Proceedings, pp. 465-467, 469-470.
[5] Transcript of Jury Trial Proceedings, pp. 425-426.
[6] Schedule 1.0.
[7] *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (internal citations omitted).
[8] *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202, 2017 WL 3034655, at *7 (E.D. Tex. July 18, 2017) (emphasis added) (Bryson, J., Federal Circuit Judge sitting by designation) (collecting cases).
[9] *Creative Internet Advertising Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 861 (E.D. Tex. 2009) citing *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 n.2 (Fed. Cir. 2008)

determined by the jury. Reynolds' damages expert, Dr. Nisha Mody, and I both agree that the hypothetical negotiation in this matter for past infringement occurred on May 28, 2019.[10]

### 3.1. Legal Conditions

Based on the record of the case and available public filings, certain legal conditions have changed since the date of the hypothetical negotiation. For example, a jury has found the Pod Patents to be valid and infringed, as discussed earlier in this declaration. Furthermore, I understand that the Patent and Trial Appeal Board made the decision not to institute an IPR proceeding on the Pod Patents.[11] Both of these conditions would weigh in Altria's favor in terms of the parties' respective bargaining positions.

### 3.2. Economic Conditions

There are several economic conditions that have changed since the date of the hypothetical negotiation. Importantly, the analysis of these economic changes should focus on the conditions attributable to (or having a nexus with) the Pod Patents, although general economic factors may also be considered. I have also looked to the *Georgia-Pacific* factors to evaluate the impact, if any, on the bargaining positions of the two parties since the time of the hypothetical negotiation.

#### 3.2.1. Vuse Alto Products

Since the May 28, 2019 date of the hypothetical negotiation, Vuse Alto sales have dramatically increased over time. [REDACTED]

---

[10] Transcript of Jury Trial Proceedings, pp. 430, 947.
[11] R.J. Reynolds Vapor Company v. Altria Client Services LLC, IPR2021-00744, Paper 9 (P.T.A.B. Oct. 8, 2021); R.J. Reynolds Vapor Company v. Altria Client Services LLC, IPR2021-00745, Paper 8 (P.T.A.B. Oct. 8, 2021); R.J. Reynolds Vapor Company v. Altria Client Services LLC, IPR2021-00746, Paper 8 (P.T.A.B. Oct. 8, 2021).
[12] Schedule 2.0A.
[13] Schedule 2.0A.



---

[14] Schedules 3.1A, 3.2A, 3.3A, and 3.4A.
[15] Schedule 4.0.
[16] Schedule 5.0.

Page 4



The non-Alto Vuse products—the Vuse Vibe, Vuse Solo, and Vuse Ciro—are not pod devices ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪ Reynolds has claimed that the Vuse Vibe, Vuse Solo, and Vuse Ciro were available non-infringing alternatives to the Pod Patents.[18] For the reasons described in my expert reports as well as the trial testimony provided by Mr. M<sup>c</sup>Alexander, I understand that the non-pod Vuse products are not acceptable non-infringing alternatives to the Vuse Alto.[19] As I testified at trial, the Vuse Vibe, Vuse Ciro, and Vuse Solo do not offer the same features and benefits as the Vuse Alto.[20] Notably, as seen in the table, the non-pod Vuse products deemed by Reynolds to be comparable alternatives ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

---

[17] Schedule 4.0.
[18] R.J. Reynolds Vapor Company's Second Supplemental Response to Altria Client Services LLC and U.S. Smokeless Tobacco Company LLC's First Set of Interrogatories (Nos. 1-5), Response to Interrogatory No. 5, July 27, 2021, p. 80; Transcript of Jury Trial Proceedings, p. 294.
[19] Transcript of Jury Trial Proceedings, pp. 294-295, 450-451.
[20] Transcript of Jury Trial Proceedings, p. 451.



On average, the non-pod Vuse products have generated ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



---

[21] Schedule 4.0.
[22] Schedule 4.0.
[23] Schedule 4.0.

Page 6

During this time in which ████████████████████████████████████████████, Reynolds was also able to discount the price of the Vuse Alto, which in effect reduced the per unit royalty due to Altria. In August 2020, it was reported that Reynolds had "seen surging sales lately, as the tobacco company doubled down on price promotions and marketing…[w]ith Vuse Alto vaporizers selling for 99 cents each."[24] Reynolds' price discounting is evidenced by its produced sales information, which indicates that the positive net sales per unit of all Vuse Alto products averaged ████████████████████████████████████████████████████████.

My research of publicly available information demonstrates that, since 2019, Reynolds has successfully surpassed JUUL and every other competitor in the e-vapor market, largely due to the performance of the accused Vuse Alto. In particular, the performance and the popularity of the Vuse Alto has been attributed to designs and benefits enabled by the Pod Patents. Dr. James Figlar, former Reynolds Executive Vice President, testified during trial that the pod mod design enabled by the Pod Patents required Reynolds to develop the Vuse Alto, since pod systems were a growing segment of the vapor business and Reynolds wanted to compete with JUUL in that segment.[26]

Further, the Vuse Alto has reportedly become "one of the most popular vaping products worldwide" thanks in part to its "long-lasting pod with extraordinary leakage-proof performance."[27] An October 2019 review comparing the Vuse Alto and JUUL remarked that the Vuse Alto's "magnetic pods are nifty."[28] A September 2020 review touted the Vuse Alto's "transparent look that displays e-liquid levels," and identified the magnetic pods as a "cool feature of Vuse Alto."[29] A separate review in September 2020 labeled the Vuse Alto as "leak-free" and "one of the best pod systems available," while highlighting the magnetic functionality of the pod system.[30]

A reviewer in July 2021 stated that "[m]any people compare Alto Vuse with Juul since it looks very similar," while highlighting that the "pods for Alto Vuse devices are made of transparent plastic, so you can easily see how much liquid there is left."[31] In a July 2022 article comparing the Vuse Alto

---

[24] "Reynolds American Uses Discounts to Boost Vuse Sales," *NACS*, August 21, 2020, https://www.convenience.org/Media/Daily/2020/Aug/21/3-Reynolds-American-Discounts-Boost-Vuse_Marketing.
[25] Schedule 2.0A.
[26] Transcript of Jury Trial Proceedings, pp. 601-602.
[27] "Bluehole Publishes an Industry Comment on Vuse Overtaking Juul and Becoming the U.S Vaping Market Champion Again," *Business Wire*, May 12, 2022, https://www.businesswire.com/news/home/20220512005478/en/Bluehole-Publishes-an-Industry-Comment-on-Vuse-Overtaking-Juul-and-Becoming-the-U.S-Vaping-Market-Champion-Again.
[28] "Vuse Alto Vs. Juul: Which Pod Mod is Best?, *Vapor Scapes*, October 5, 2019, http://www.vaporscapes.com/vuse-alto-vs-juul-which-pod-mod-is-best/.
[29] "Vuse Alto Review," *UK Vaper Store*, September 24, 2020, https://ukvaperstore.co.uk/blog/post/vuse-alto-review.
[30] "Vuse Alto Pod System Review," *Nebula Vaping*, September 7, 2020, https://www.nebulavaping.com/2020/09/07/vuse-alto-review/.
[31] "Alto Vuse Review," *A Vape Shop*, July 1, 2021, https://apvapeshop.com/blogs/news/alto-vuse-review.

and JUUL, a reviewer wrote that the Vuse Alto had "gotten much attention because some reviews believe this kit outperforms the Juul," due to "many features and specifications that make it a better device in some areas."[32] Among the Vuse Alto's superior features over JUUL included the magnetic connection and leak-free operation.[33]

In 2021, Reynolds performed strongly in the U.S. market, increasing its market share to 32.5 percent as it "[benefited] from the success of Vuse Alto."[34] The Vuse Alto, "a driving force of growth," reportedly accounted for over 90 percent of Vuse revenues in the U.S. in 2021.[35] By June 2022, Reynolds overtook JUUL in U.S. market share, with Vuse holding 35.1 percent of the market compared with JUUL at 33.1 percent.[36] In just two years, Reynolds managed to close a 27 percent gap between Vuse and JUUL in terms of U.S. market share.[37]

### 3.2.2. General Macroeconomic Factors

Generally speaking, it is my opinion that other external macroeconomic conditions would remain unchanged compared to those during the hypothetical negotiation. This is true for the Vuse Alto as well as the other non-Alto Vuse products, resulting in the relative performance discussed above having a greater nexus to the Pod Patents. Importantly, as described above, from 2019 to 2022, Reynolds' market share and the performance of the Vuse Alto steadily inclined. In the case of the COVID-19 pandemic, I consider the effects of the economic downturn to have significantly recovered, as notably expressed by the U.S. Treasury Department.[38]

### 3.2.3. *Georgia-Pacific* Factors

During trial, I provided testimony outlining my consideration of the fifteen *Georgia-Pacific* factors.[39] For the purposes of evaluating an ongoing royalty, I have analyzed the *Georgia-Pacific* factors as well

---

[32] "The Vuse Alto Pod System Review: A Better Device Than The JUUL?." July 20, 2022, https://vapingdaily.com/best-pod-mods/vuse-alto-review/.
[33] "The Vuse Alto Pod System Review: A Better Device Than The JUUL?." July 20, 2022, https://vapingdaily.com/best-pod-mods/vuse-alto-review/.
[34] "Will Vuse Alto Get PMTA Pathaway?," *Recooltech*, February 18, 2022, https://recooltech.com/vuse-alto-get-pmta-pathaway/.
[35] "Bluehole Publishes an Industry Comment on BAT 2021 Preliminary Results," *Business Wire*, February 17, 2022, https://www.businesswire.com/news/home/20220217005051/en/Bluehole-Publishes-an-Industry-Comment-on-BAT-2021-Preliminary-Results.
[36] "With Juul electronic cigarettes potentially banned, Reynolds' Vuse will likely dominate the market," *Winston-Salem Journal*, June 23, 2022, https://journalnow.com/business/local/with-juul-electronic-cigarettes-potentially-banned-reynolds-vuse-will-likely-dominate-the-market/article_efa0ced8-f2a0-11ec-99eb-5752e99ec1de.html.
[37] "Bluehole Publishes an Industry Comment on Vuse Overtaking Juul and Becoming the U.S Vaping Market Champion Again," *Business Wire*, May 12, 2022, https://www.businesswire.com/news/home/20220512005478/en/Bluehole-Publishes-an-Industry-Comment-on-Vuse-Overtaking-Juul-and-Becoming-the-U.S-Vaping-Market-Champion-Again.
[38] See "Measuring the Strength of the Recovery," *U.S. Department of the Treasury*, May 26, 2022, https://home.treasury.gov/news/featured-stories/measuring-the-strength-of-the-recovery.
[39] Transcript of Jury Trial Proceedings, pp. 428, 449-450, 452-453.

as the changes, if any, on the bargaining positions of the two parties from the date of the hypothetical negotiation up until the jury's verdict.

### 3.2.3.1. Factor 2: The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

*Georgia-Pacific* factor 2 considers licenses entered into by the licensee which may provide insight into the hypothetical negotiation. The jury heard my testimony regarding two comparable agreements—the 2016 agreement between Nu Mark and Fontem, and the 2018 agreement between Reynolds and Fontem.[40] At trial, the jury was shown evidence that ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

These agreements, however, were executed in 2016 and 2018, many years prior to the September 2022 jury verdict. Moreover, both agreements were executed prior to any judgment of infringement or validity by a jury. Thus, for the purposes of determining the royalty for a post-judgment hypothetical negotiation, ████████████████████████████████████████████████ Altria has successfully prosecuted a jury trial to completion and defended its intellectual property rights in several IPR proceedings.[42]

A rationale licensor would not accept the same royalty rate pre- and post-trial, or there would be little motivation for an infringer to willingly license the patents. Therefore, factor 2 supports an upward adjustment to the ongoing royalty rate that is higher than the 5.25 percent ██████████████████████████.

### 3.2.3.2. Factor 5: The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

I understand from counsel that courts have considered the effect of a jury verdict on the parties' relative bargaining position under Factor 5. I understand that under this case law, the jury's verdict finding infringement and validity of the Pod Patents would improve Altria's bargaining position post-verdict and supports an upward adjustment to the ongoing royalty rate that is higher than the 5.25 percent.

---

[40] Transcript of Jury Trial Proceedings, pp. 438-439.
[41] Transcript of Jury Trial Proceedings, pp. 440, 444-445.
[42] R.J. Reynolds Vapor Company v. Altria Client Services LLC, IPR2021-00744, Paper 9 (P.T.A.B. Oct. 8, 2021); R.J. Reynolds Vapor Company v. Altria Client Services LLC, IPR2021-00745, Paper 8 (P.T.A.B. Oct. 8, 2021); R.J. Reynolds Vapor Company v. Altria Client Services LLC, IPR2021-00746, Paper 8 (P.T.A.B. Oct. 8, 2021).

### 3.2.3.3. Factor 8: The established profitability of the product made under the patent; its commercial success; and its current popularity.

As discussed in Section 3.2.1, the Vuse Alto has ████████████████████████
████████████████████████████████████████ Furthermore, the success of the Vuse Alto since May 28, 2019 has allowed Reynolds to surpass every other e-vapor competitor, including JUUL, in terms of U.S. market share. Reynolds' growing success and market share in 2022 would now require an even higher royalty rate for use of the Pod Patents as compared to the original hypothetical negotiation.

### 3.2.3.4. Factor 9: The utility and advantages of the patent property over old modes or devices, if any, that had been used for working out similar results.

As I testified at trial, the advantages of the Pod Patents are reinforced by the lack of acceptable, available non-infringing alternatives to the Vuse Alto.[43] Reynolds has claimed that the Vuse Vibe, Vuse Solo, and Vuse Ciro were available non-infringing alternatives to the Pod Patents.[44] For the reasons explained in Section 3.2.1, above, I understand that this is not the case.[45] Notably, since the hypothetical negotiation, ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

At trial, Reynolds presented the jury with two proposed non-infringing alternatives through the modifications of the Vuse Alto. The first involved affixing a label to prevent viewing of the vapor channel.[47] The second modification involved roughening the exterior surface of the cartridge to prevent viewing of the vapor channel, while still allowing for viewing of the liquid.[48]

Mr. M<sup>c</sup>Alexander testified at trial that the proposed design-arounds above "would not eliminate practicing the claimed invention" of the Pod Patents.[49] Furthermore, Mr. M<sup>c</sup>Alexander testified that he has never seen an example of a pod device that was roughened in a manner that you could see the liquid but not see the vapor channel.[50]

To my knowledge, while Reynolds claims that the Vuse Alto could have been modified in several ways to design around the patented technology, it has yet to do so. The continued lack of acceptable non-infringing alternatives in 2022—three years after the hypothetical negotiation—as

---

[43] Transcript of the Jury Trial Proceedings, pp. 450-451.
[44] R.J. Reynolds Vapor Company's Second Supplemental Response to Altria Client Services LLC and U.S. Smokeless Tobacco Company LLC's First Set of Interrogatories (Nos. 1-5), Response to Interrogatory No. 5, July 27, 2021, p. 80; Transcript of Jury Trial Proceedings, p. 294.
[45] Transcript of Jury Trial Proceedings, pp. 294-295, 450-451.
[46] Schedule 4.0.
[47] Transcript of Jury Trial Proceedings, p. 363.
[48] Transcript of Jury Trial Proceedings, p. 364.
[49] Transcript of Jury Trial Proceedings, p. 364.
[50] Transcript of Jury Trial Proceedings, p. 410.

well as the superior performance of the accused Vuse Alto compared to the proposed Reynolds alternatives, would suggest upward pressure on the royalty rate.

However, given that the jury considered this evidence regarding non-infringing alternatives and similarly rejected the aforementioned non-infringing alternatives to arrive at the royalty rate of 5.25 percent, I conservatively do not consider that this factor would increase the ongoing royalty rate.

### 3.2.3.5. Factor 11: The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

Reynolds' alleged use of the Pod Patents facilitated its growth in market share in the U.S. to the second highest market share in 2020, as shown in Figure 6, below.

**Figure 6: U.S. E-Cigarette Market Shares by Manufacturer 2020[51]**



My review of newly available public information summarized above in Section 3.2.1 indicates that, largely due to the success of the Vuse Alto, Reynolds has now surpassed JUUL to become the market leader in the U.S. by June 2022.[52]

The greater commercial success and market share derived from Reynolds' greater use of the Pod Patents support an upward adjustment to the ongoing royalty rate that is higher than the 5.25 percent.

---

[51] "Dollar Share of e-cigarette sales in the United States in 2020, by brand," Statistica, November 26, 2020, https://www.statista.com/statistics/1097004/e-cigarette-market-share-us-by-brand/; Transcript of Jury Trial Proceedings, p. 452; PX-321.
[52] Section 3.2.1.

### 3.2.3.6. *Georgia-Pacific* Factors Conclusion

The additional factors discussed above since the hypothetical negotiation suggest an upward adjustment to the 5.25 percent royalty rate awarded by the jury. Notably, as illustrated above, there have been no such economic conditions that have changed the bargaining position in favor of Reynolds.

## 4. OPINION REGARDING ONGOING ROYALTY RATE

The form of royalty (i.e., running royalty, lump sum, per unit) should not be altered. A royalty reflected as a percentage will account, in part, for changes in the quantity of Vuse Alto units sold based on changes in price or for some other reason. The parties would not agree to a lump sum post-judgment royalty given the potential and uncertainty associated with the adoption by Reynolds of its proposed non-infringing alternatives or with Reynolds' pending PMTA application for the Vuse Alto.

The changing conditions since the May 28, 2019 hypothetical negotiation date do not favor Reynolds, and therefore justify a higher royalty rate. As discussed in Section 3.1, I understand from counsel that the legal conditions—specifically, the jury's verdict and the fact that the IPRs were denied—places Altria in a stronger bargaining position. Moreover, the changed economic circumstances described in Section 3.2 support a higher ongoing royalty. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ any per unit amount should be greater than the 5.25 percent accepted by the jury as of the date of the hypothetical negotiation.

My opinion is that an ongoing royalty rate should be 10.50 percent, and is supported by the following economic considerations:



---

[53] Schedule 5.0.
[54] Schedule 8.0.

- ███████████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████████
  ███████████████████████████████████

- As discussed under the *Georgia-Pacific* factors, Altria's bargaining position has improved since the time of the hypothetical negotiation. Reynolds' bargaining position has not improved.

Although Altria's bargaining position since the time of the hypothetical negotiation has improved, the ███████████████████████████████ can be conservatively shared between the two parties. In view of the judgment, however, Reynolds owes royalties of 5.25 percent since the hypothetical negotiation date. Accounting for this baseline rate of 5.25 percent, ███████████████████████████████████████████ which, equally shared, amounts to ███████████. As another element of conservatism, it is my opinion that rather than simply adding ███████████ to 5.25 percent (resulting in an ongoing royalty rate of ███████████), it is most likely that the parties would apply a multiplier of 2 against the jury determined rate of 5.25 percent and reach an agreement at 10.50 percent.

## 5. SIGNATURE

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Respectfully submitted,

_____          October 5, 2022_____
James E. Malackowski                    Date

---

- ███████████████████████████



200 West Madison
Suite 1020
Chicago, IL 60606
(312) 327-4400 Ph
www.oceantomo.com

Page 14

# Schedules 1 - 8 Redacted in Entirety