NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALTRIA CLIENT SERVICES LLC,**
*Plaintiff-Appellee*

**v.**

**R.J. REYNOLDS VAPOR COMPANY,**
*Defendant-Appellant*

---

2023-1546

---

Appeal from the United States District Court for the Middle District of North Carolina in No. 1:20-cv-00472-NCT-JLW, Senior Judge N. Carlton Tilley, Jr.

---

Decided: December 19, 2024

---

MARK ANDREW PERRY, Weil, Gotshal & Manges LLP, Washington, DC, argued for plaintiff-appellee. Also represented by WILLIAM SUTTON ANSLEY, PRIYATA PATEL; ANISH R. DESAI, DANIEL LIFTON, ROBERT NILES-WEED, ELIZABETH WEISWASSER, New York, NY.

JASON BURNETTE, Jones Day, Atlanta, GA, argued for defendant-appellant. Also represented by LAURA KANOUSE; AMELIA A. DEGORY, Washington, DC; JOHN MARLOTT, Chicago, IL; ALEXIS ADIAN SMITH, Los Angeles,

CA; JOHN FRANKLIN MORROW, JR., Womble Bond Dickinson LLP, Winston-Salem, NC.

---

Before PROST, BRYSON, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PROST.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* BRYSON.

PROST, *Circuit Judge*.

Altria Client Services LLC ("Altria") sued R.J. Reynolds Vapor Co. ("Reynolds") for infringement of U.S. Patent Nos. 10,299,517 ("the '517 patent"), 10,485,269 ("the '269 patent"), and 10,492,541 ("the '541 patent"). At trial, the jury found that Reynolds infringed Altria's patents and awarded Altria over $95 million in damages. The jury also rejected Reynolds's invalidity defense. The district court denied Reynolds's post-trial motions for judgment as a matter of law ("JMOL") on infringement and damages and a new trial on the issues of infringement, invalidity, and damages. *Altria Client Servs. LLC v. R.J. Reynolds Vapor Co.*, 650 F. Supp. 3d 375 (M.D.N.C. 2023) ("*Post-Trial Opinion*"). Reynolds appeals, and we affirm.

## BACKGROUND

### I

Altria's patents, which have similar specifications, "relate[] to electronic vapor devices including self-contained articles including vapor precursors." '517 patent col. 1 ll. 20–21.[1] These electronic vapor devices are, at a high level, electronic alternatives to cigarettes. Claim 1 of the '517 patent is illustrative and recites:

---

[1] The '541 patent's specification has additional disclosures not relevant here.

> A pod assembly for an e-vapor apparatus, comprising:
>
> *a plurality of external surfaces including a front face, a rear face opposite the front face, a first side face between the front face and the rear face, a second side face opposite the first side face, a downstream end face, and an upstream end face opposite the downstream end face*, a portion of at least the front face or the rear face being transparent, the downstream end face defining an outlet;
>
> a liquid compartment configured to hold a liquid formulation such that the liquid formulation is visible through at least the front face or the rear face;
>
> a vaporizer compartment in fluidic communication with the liquid compartment, the vaporizer compartment being adjacent to the upstream end face, the vaporizer compartment configured to heat the liquid formulation, the vaporizer compartment including a heater and a wick;
>
> a vapor channel extending from the vaporizer compartment, through a center of the liquid compartment, and to the outlet, the vapor channel being visible through at least the front face or the rear face; and
>
> a plurality of electrical contacts having respective planar surfaces at the upstream end face and electrically connected to the heater in the vaporizer compartment, the vapor channel being between the outlet and the plurality of electrical contacts.

*Id.* at claim 1 (emphasis added).

## II

Altria sued Reynolds for infringing the ’517, ’269, and ’541 patents. The accused product is Reynolds’s VUSE Alto, a pod-style device. At the claim-construction stage of this case, Reynolds argued that “the front and rear faces” present in each claim “are distinct surfaces, which are each bounded by one or more edges.” J.A. 1749. Altria proposed a plain-and-ordinary-meaning construction, arguing that the patents “use the term ‘face’ consistent with its ordinary meaning—the surface of an object.” J.A. 1803. The district court agreed with Reynolds, concluding that “there must be an edge between the front face and side faces, and the rear face and side faces.” J.A. 4033.

The case proceeded to trial, and the jury found that Reynolds infringed claims 1, 9, and 10 of the ’517 patent, claim 19 of the ’269 patent, and claim 24 of the ’541 patent. J.A. 111. The jury also found that Reynolds did not show that any of the asserted claims are invalid. J.A. 112. The jury awarded $95,233,292 in damages “for past infringement through June 30, 2022.” J.A. 113.

Reynolds moved for JMOL, arguing that substantial evidence did not support the finding that the VUSE Alto had the requisite edge between its faces and that there was not substantial evidence to support the jury’s damages award. *Post-Trial Opinion*, 650 F. Supp. 3d at 385. Reynolds also moved for a new trial on invalidity based on “erroneous evidentiary rulings” and a new trial on damages, contending “that the jury’s damages award stems from legal error.” *Id.* at 401. The district court denied Reynolds’s motions for JMOL and a new trial, *id.* at 412, and entered final judgment, J.A. 105–08.

Reynolds appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Reynolds raises four issues on appeal. First, Reynolds argues that the district court erred in denying its motion for JMOL or a new trial on infringement. Second, Reynolds argues that the district court improperly excluded evidence of its invalidity defense and that a new trial on invalidity is warranted. Third, Reynolds argues that, given its challenge to the calculation of a per-unit royalty rate from a comparable license, the district court improperly denied its motion for JMOL or a new trial on damages. Fourth, Reynolds argues that the district court improperly allowed the jury to hear testimony from Altria's damages expert on apportionment and that this error requires JMOL or a new trial. We address each issue in turn.

We review a district court's procedural rulings under the standard of the regional circuit. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1367 (Fed. Cir. 2021). The Fourth Circuit reviews a district court's denial of a motion for JMOL de novo. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 279 (4th Cir. 2021). The Fourth Circuit reviews a district court's decision on whether to grant a new trial for abuse of discretion. *Mountain Valley Pipeline, LLC v. 8.37 Acres of Land by Terry*, 101 F.4th 350, 358 (4th Cir. 2024).

## I

We begin with Reynolds's challenge to the infringement verdict. Reynolds argues that the evidence presented at trial does not support the jury's finding that the accused VUSE Alto has the requisite edge between the claimed faces. We disagree.

Altria presented ample evidence that Reynolds's VUSE Alto meets this limitation. As Altria's infringement expert explained:

> But if—but if you just take the pod and hold it in your hands, . . . and just rotate it between my

> fingers, you can easily see, as you traverse from a front face to a side face, to a rear face, to a side face, to a front face, you can feel the edges. You can feel the transition between the different faces. And not only can you feel it, but you can see it. I mean, there is clearly edges. And they're rounded edges going from one face to the next.

J.A. 28141 (255:17–25). A photograph of the accused product itself clearly shows an edge between the different faces. J.A. 29493. The jury was even given physical samples of the VUSE Alto where they could feel the edge. J.A. 28133. And if that were not enough, Reynolds's expert admitted that a rounded edge, like the edges on the VUSE Alto, would constitute an edge between faces. J.A. 28767 (777:6–7) ("[E]very edge is rounded at some degree."); *see also* J.A. 28767 (777:13–15) ("In a practical world, yes. There's no way you can get something perfectly—I mean, at some—it's always rounded. But it doesn't matter for a lot of products, obviously.").

On this record, there is "no reason why jurors would have been unable to determine for themselves" that Altria established that the VUSE Alto meets the edge limitation, especially where "the technology at issue [is] easily understandable," as it is here. *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1292 (Fed. Cir. 2023). We thus affirm the district court's order denying Reynolds's motions for JMOL of noninfringement and a new trial on infringement.

## II

We next proceed to Reynolds's challenge to the district court's exclusion of its invalidity evidence.

Reynolds offered several invalidity theories at trial. One sought to establish, using a JUUL electronic cigarette device, that "the claimed invention was . . . in public use . . . before the effective filing date of the claimed invention."

35 U.S.C. § 102(a)(1). Before trial, the district court excluded much of Reynolds's evidence on hearsay grounds, a ruling that Reynolds does not challenge on appeal. After excluding that evidence as hearsay, the district court was left with a muted video that Reynolds purports shows the JUUL product. The district court also excluded this video, stating:

> Again, if you just—I mean, it's set up to suggest that it is the [JUUL] device, but then the next thing you see is somebody holding it in profile, and you can't identify from that profile whether it's the [JUUL] device or not. I cannot find it sufficiently suggestive to come into evidence.

J.A. 27611 (80:10–15).

Reynolds challenges the district court's exclusion of the video. We review this ruling for abuse of discretion. *Mathis v. Terra Renewal Servs., Inc.*, 69 F.4th 236, 246 (4th Cir. 2023). One prerequisite for admissibility is that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Here, all Reynolds has shown is that a video contains some opaque, rectangular device that can be used as an electronic cigarette. Reynolds identifies nothing in the video itself showing that the device is a JUUL device. With nothing more in the record to explain what appears in this video (as Reynolds did not challenge the exclusion of other potentially informative evidence on appeal), we cannot say that the district court abused its discretion in excluding the video.

## III

We now turn to Reynolds's challenge to the calculation of a per-unit royalty rate from comparable licenses. Reynolds argues that the jury lacked sufficient evidence to conclude that the licenses at issue used a 5.25% royalty rate.

We first note that Reynolds did not challenge this portion of Altria's damages expert's testimony under Federal Rule of Evidence 702. Thus, we do not view Reynolds as challenging the particular methodology Altria's expert employed. Instead, we simply review this as a challenge to the evidentiary basis of the 5.25% royalty rate. "A jury's damages award must be upheld unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373 (Fed. Cir. 2020) (cleaned up).

Altria offered several theories supporting the proposition that a comparable license used a 5.25% royalty rate, and it suffices for our purposes to identify one supported by the evidence. Altria sought to use a comparable license to prove its damages. One was a license between two companies, Fontem and Nu Mark. One part of this license is a lump-sum payment from Nu Mark to Fontem of $43 million granting Nu Mark the right to practice Fontem's patents in the United States until at least 2030. To calculate the effective per-unit royalty rate from this lump-sum payment, Altria's damages expert relied on a projection made by Nu Mark. This projection applied a 5.25% royalty to sales from 2017 to 2023 and resulted in $44 million of estimated royalties. J.A. 28365–66. Thus, Altria's expert, noting the similarity between the $43 million lump-sum payment and the $44 million in projected sales, concluded that the $43 million lump-sum payment in the Fontem-Nu Mark license was calculated using a 5.25% per-unit royalty rate.

Reynolds offers two principal arguments for why sufficient evidence does not support the finding that the $43 million lump-sum payment reflects a 5.25% per-unit royalty rate. We find neither persuasive.

First, Reynolds contends that Altria's expert relied on the wrong projection, instead asserting that Altria's expert

should have used a different sales projection to arrive at a potential per-unit royalty rate. In the absence of a challenge to the methodology employed by Altria's expert in calculating the per-unit royalty rate, however, we confine ourselves to examining whether the jury had sufficient facts "with which to recalculate in a meaningful way the value of any of the [lump-sum] agreements to arrive at the . . . damage award." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009). The jury was presented with expert testimony explaining multiple different sales projections that the jury could use to "deriv[e] a [per-unit] rate from the lump-sum payments and projected sales." *MLC Intell. Prop.*, 10 F.4th at 1368. Given that Reynolds did not object to the admission or use of these projections, "[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject." *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). We conclude that Altria's projection-based theory provides a sufficient evidentiary basis for a 5.25% per-unit royalty rate. As such, we need not reach Altria's other theories, including its contentions that the Fontem-Nu Mark license reflects a 5.25% per-unit royalty rate on its face and in several clauses, and that an additional license between two companies, Fontem and Reynolds, also supports a 5.25% per-unit royalty rate. *See* J.A. 29385–439; J.A. 29667–841.

Second, Reynolds argues that the maximum per-unit royalty rate the jury could calculate from the licenses in this record was 3.6%, or perhaps 2.1%. Reynolds and Altria presented the jury with several different per-unit royalty rates likely supportable on this record—5.25%, 3.6%, 2.1%, and 0.21%. In the face of this competing testimony, and again in the absence of an objection from Reynolds on the methodology that Altria's expert used to calculate a per-unit rate in a comparable license, we conclude that the jury could decide for itself which royalty rate best fit the facts of this case. We thus affirm the district court's denial of

JMOL and denial of a motion for a new trial on damages based on the per-unit royalty rate.

IV

We finally address Reynolds's challenges to apportionment. Reynolds argues that Altria's damages expert offered unreliable apportionment testimony and thus that the district court erred by not excluding it under Federal Rule of Evidence 702, by not granting Reynolds's motion for a new trial on damages, and by not granting Reynolds's motion for JMOL.

"No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). A common model, the one Altria used in this case, "begins with rates from comparable licenses and then accounts for the differences in the technologies and economic circumstances of the contracting parties" to value the asserted patents. *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) (cleaned up).

Here, Altria offered a detailed accounting for differences in the economic and technological circumstances of the contracting parties and explained how it valued Altria's patents. Altria's technical expert began by looking at the licensed technology in the Fontem-Nu Mark license and separating it into thirteen groups of patents. J.A. 28185. The technical expert gave four groups of these patents zero value because they reflected abandoned patent applications. J.A. 28185. He gave three other groups only nominal value because they were directed to small components of an e-cigarette device. J.A. 28185–86. He also gave a family of design patents nominal value as trivial to design around. J.A. 28186. For the remaining five patent families, Altria's technical expert examined the importance of the patents to the e-cigarette device licensed in the Fontem-Nu Mark license and

concluded that, because the five patent families covered the key features of an e-cigarette device, selling an e-cigarette device would necessarily require practicing Fontem's patents. J.A. 28188–92. Altria's technical expert also testified that Altria's patents covered the key features of a pod vapor device and thus that selling a pod vapor device would necessarily require practicing Altria's patents. J.A. 28192. Thus, Altria's technical expert concluded that the importance of the licensed patents to the Fontem-Nu Mark license were similar to the importance of Altria's patents to the hypothetical negotiation.

Altria's damages expert considered this testimony and then accounted for how the similarities and differences in licensed products and economic circumstances between the Fontem-Nu Mark license and the hypothetical negotiation to value Altria's patents. The damages expert accounted for similar markets between the licensed e-cigarette device in the Fontem-Nu Mark license and Reynolds's VUSE Alto, noting that the VUSE Alto was "a relatively significant success" and that "the sales of the prior products actually declined." J.A. 28358 (434:19–22). Altria's expert also, based on the technical expert's testimony, concluded that the importance of the patented features to Nu Mark was similar to the technical importance of the patented features from Altria's patents to the VUSE Alto. Altria's damages expert then accounted for these similarities and differences and ended at a damages amount that would reflect "the contributions that are made by Altria" (i.e., the patented features) and would leave Reynolds the rest of the value, including the value from unpatented features and Reynolds's business contributions. J.A. 28371–72 (447:15–448:2).

Reynolds presents several challenges to the methodology and evidentiary basis for Altria's damages expert's apportionment testimony. What Reynolds's challenges amount to, though, are disagreements with the particular adjustments that Altria's damages expert made

to the royalty rate in the Fontem-Nu Mark license. While our law requires Altria to "account for differences in the technologies and economic circumstances of the contracting parties," *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010), we do not require any specific adjustment to a royalty rate based on those differences. Rather, what matters is that Altria's damages expert employed "reliable principles and methods," Fed. R. Evid. 702(c), that were "based on sufficient facts or data," *id.* 702(b), and that the expert's opinion "reflects a reliable application of principles and methods to the facts of the case," *id.* 702(d). Reynolds has not shown that the district court abused its discretion in concluding that Altria's damages expert employed a reliable methodology based on sufficient facts and data in presenting an ultimate damages amount that "reflect[s] the value attributable to the infringing features of the product, and no more." *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

We likewise reject Reynolds's challenge to the apportionment jury instruction. The district court did not misstate the law but rather properly instructed the jury that it must account for the differences between the Fontem-Nu Mark license and the hypothetical negotiation between Altria and Reynolds. And the district court did not err in instructing the jury that, if it found that Altria demonstrated sufficient comparability between the circumstances of the Fontem-Nu Mark license and the hypothetical negotiation, the jury could accept Altria's damages expert's proposed adjustments to the royalty rate. We thus affirm the district court's denial of Reynolds's motion to exclude the apportionment testimony under Rule 702, motion for a new trial, and motion for JMOL on damages.

CONCLUSION

We have considered Reynolds's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the district court's order denying Reynolds its requested post-trial relief.

**AFFIRMED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

**ALTRIA CLIENT SERVICES LLC,**
*Plaintiff-Appellee*

**v.**

**R.J. REYNOLDS VAPOR COMPANY,**
*Defendant-Appellant*

2023-1546

Appeal from the United States District Court for the Middle District of North Carolina in No. 1:20-cv-00472-NCT-JLW, Senior Judge N. Carlton Tilley, Jr.

BRYSON, *Circuit Judge*, concurring in part and dissenting in part.

I join parts I, II, and IV of the court's opinion. With respect to part III of the opinion, however, I respectfully dissent.

The court's opinion relies on the Fontem-Nu Mark license, under which Nu Mark paid Fontem a lump sum of $43 million for the right to practice Fontem's patents until at least 2030. Altria's expert noted that Nu Mark prepared a number of projections. One projected a level of sales under that license between 2017 and 2023 that would yield

a total royalty payment of $44 million at a royalty rate of 5.25%. Altria's expert testified that the similarity between the $43 million actually paid under the Fontem-Nu Mark license and the $44 million expected to be paid at a royalty rate of 5.25% for the years 2017 through 2023 gave him "great confidence" that the 5.25% rate "was the real benchmark." App. 28366.

The problem with that line of analysis is that the $44 million projected royalty payment was based on projected sales only through 2023, while the $43 million actually paid for the license was for rights extending all the way to 2030, seven more years than the 2017–2023 period. What that means is that if the projected sales for 2024 through 2030 were similar to the projected sales from 2017 through 2023, the $43 million paid for the license would represent a royalty rate of only about half the 5.25% claimed by Altria. *See* App. 28403. Put another way, Altria's expert attributed the entire $43 million in royalties to the first seven years of projected sales, rather than spreading out the royalties over the entire Fontem license period.[1] Altria pointed to no basis in the record to ignore the years between 2024 and 2030, so the expert's testimony on the Fontem-Nu Mark license provides no support for the 5.25% royalty figure adopted by the jury.

Altria identifies various other pieces of evidence that it argues support the 5.25% royalty rate. Like the majority, however, I view the Nu Mark projections as the strongest piece of evidence as to the proper royalty rate. The

[1] The fact that Nu Mark prematurely withdrew from the market after entering into the agreement does not change the relevant timeframe for evaluating the agreement, as the parties have identified no evidence suggesting that Nu Mark's later decision to withdraw factored into the negotiations over the terms of the agreement.

remaining pieces of evidence are not sufficient to support the jury's verdict.

I would therefore grant a new trial to Reynolds on the damages issue unless Altria agreed to a remittitur of approximately half of the $95.3 million award.