IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALTRIA CLIENT SERVICES LLC,      )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     1:20-cv-472
                                 )
R.J. REYNOLDS VAPOR COMPANY,     )
                                 )
          Defendant.             )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court are the following motions to seal:
Defendant's Motion to Seal Opening Brief in Support of Motion
for Relief from Judgment and Ongoing Royalty Order and Request
for Indicative Ruling and Exhibits 5 and 7, (Doc. 613),
Plaintiff's Motion to Seal Unredacted Opposition to Motion for
Relief From Judgment, (Doc. 621), Defendant's Motion to Seal
Reply Brief in Support of Motion for Relief from Judgment and
Ongoing Royalty Order and Request for Indicative Ruling, (Doc.
626), Plaintiff's Motion to Seal Unredacted Supplemental
Memorandum in Opposition to Motion for Relief from Judgment or
Order, (Doc. 641), Defendant's Motion to Seal the Hearing
Transcript for the Motion for Relief from Judgment and Ongoing
Royalty Order and Request for Indicative Ruling (DKT. 638),
(Doc. 645), and Plaintiff's Motion to Seal the October 29, 2024

Hearing Transcript for the Motion for Relief from Judgment and Ongoing Royalty Order (DKT. 638), (Doc. 647). For the reasons stated herein, all six motions to seal will be granted.

## I.    **PROCEDURAL HISTORY**

Following a jury verdict in favor of Plaintiff Altria ("Altria") and a series of unsuccessful motions by Defendant Reynolds ("Reynolds") challenging the jury's verdict, Reynolds filed a Motion for Relief from Judgment and Ongoing Royalty Order and Request for Indicative Ruling ("Motion for Relief from Judgment") on July 3, 2024. (Doc. 611.) In support, Reynolds filed two versions of its Opening Brief in Support of Motion for Relief from Judgment and Ongoing Royalty Order and Request for Indicative Ruling: a redacted public version, (Doc. 612), and an unredacted version filed under temporary seal, (Doc. 615). Reynolds filed a motion to seal the unredacted version, (Doc. 613), and a memorandum in support, (Doc. 614). On August 14, 2024, Altria filed a brief supporting Reynolds' motion to seal its opening brief. (Doc. 619.)

On August 14, 2024, Altria filed two versions of its Opposition to Reynolds' Motion for Relief from Judgment and Ongoing Royalty Order and Request for Indicative Ruling: a redacted public version, (Doc. 620), and an unredacted version

filed under temporary seal, (Doc. 622). Altria filed a Motion to Seal the unredacted version. (Doc. 621.)

On August 28, 2024, Reynolds filed two versions of its Reply Brief in Support of its Motion for Relief from Judgment and Ongoing Royalty Order and Request for Indicative Ruling: a redacted public version, (Doc. 625), and an unredacted version filed under temporary seal, (Doc. 627). Reynolds filed a Motion to Seal the unredacted version. (Doc. 626.)

On November 8, 2024, Altria filed two versions of its Supplemental Memorandum for Altria Client Services LLC in Opposition to Motion for Relief from Judgment or Order: a redacted public version, (Doc. 640), and an unredacted version filed under temporary seal, (Doc. 642). Altria filed a Motion to Seal the unredacted version. (Doc. 641.)

This court held a hearing on Reynolds' Motion for Relief from Judgment, (Doc. 611), on October 29, 2024, (see Docket Entry 10/29/2024). The hearing transcript was published, under temporary seal, on November 5, 2024. (Doc. 638.) On December 2, 2024, Reynolds filed a motion to seal the transcript, (Doc. 645), and a proposed version, with its requested redactions highlighted, (Doc. 646). On December 9, 2024, Altria filed a motion to seal the transcript, (Doc. 647), and a proposed version, with its requested redactions highlighted, (Doc. 648).

- 3 -

## II.  **LEGAL STANDARD**

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) (footnotes omitted). "[D]ocuments filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(d), 707 F.3d 283, 290 (4th Cir. 2013).

For those records and documents that are judicial in nature, "[t]he right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004) (citation omitted). "While the common law presumption in favor of access attaches to all judicial records and documents, the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (internal quotation marks and citation omitted). "The distinction between the rights afforded by [these two sources] is significant," Balt. Sun Co. v. Goetz, 886 F.2d 60, 64 (4th Cir. 1989), because "the common law does not provide as much access to the press and

- 4 -

public as does the First Amendment." In re State-Record Co., 917 F.2d 124, 127 (4th Cir. 1990) (per curiam). However, "[r]egardless of whether the right of access arises from the First Amendment or the common law, it 'may be abrogated only in unusual circumstances.'" Va. Dep't of State Police, 386 F.3d at 576 (quoting Stone, 855 F.2d at 182).

"The common law presumes a right of the public to inspect and copy all judicial records and documents." Id. at 575 (internal quotation marks and citations omitted). This presumption can be overcome if "[t]he party seeking to overcome [it] . . . show[s] some significant interest that outweighs the presumption." Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988).[1] The following are among the factors to be weighed in the common-law balancing test: "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether

---

[1] Rushford articulates the burden of overcoming the common law right of access in two different sentences — one sentence says it will be rebutted if "countervailing interests heavily outweigh the public interests in access," and one says it will be rebutted if the movant shows "some significant interest that outweighs the presumption." Rushford, 846 F.2d at 253 (emphasis added). The Fourth Circuit in In re U.S. explained that cases subsequent to Rushford have not applied a "heavily outweigh" standard, and accordingly, "to overcome the common law presumption of access, the government's interests must merely outweigh the public's interest." In re U.S., 707 F.3d at 293 n.12.

- 5 -

release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984) (citation omitted). The common law right of access is a matter of a district court's "supervisory power," and it is one "best left to the sound discretion of the [district] court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon, 435 U.S. at 598-99.

Unlike the common law right of access, "the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone, 855 F.2d at 180 (citations omitted). "When the First Amendment provides a right of access, a district court may restrict access only on the basis of a compelling governmental interest, and only if the denial [of access] is narrowly tailored to serve that interest." Va. Dep't of State Police, 386 F.3d at 575 (internal quotation marks and citations omitted); see also Stone, 855 F.2d at 180. "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position," as opposed to conclusory assertions. See Va. Dep't of State Police, 386 F.3d at 575 (citing Press-Enter. Co. v. Superior Ct. of Cal.,

- 6 -

478 U.S. 1, 15 (1986)). The Fourth Circuit has held that the First Amendment's right of access applies to "documents filed in connection with plea hearings and sentencing hearings in criminal cases," "documents filed in connection with a summary judgment motion in a civil case," Rushford, 846 F.2d at 253, and "judicial opinion ruling[s] on a summary judgment motion," Doe v. Pub. Citizen, 749 F.3d 246, 267 (4th Cir. 2014).

In determining whether the First Amendment right of access applies to the materials sought to be sealed, courts consider "1) whether the place and process have historically been open to the press and general public, and 2) whether public access plays a significant positive role in the functioning of the particular process in question." Goetz, 886 F.2d at 64 (internal quotation marks and citation omitted); see also In re U.S., 707 F.3d at 291 (referring to these factors as the "experience and logic" test).

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." Va. Dep't of State Police, 386 F.3d at 576. A district court "must determine the source of the right of access with respect to each document" that is the subject of a motion to seal. Id. (citation omitted). "[O]nly then can it accurately weigh the competing interests at stake."

- 7 -

<u>Id.</u> (citation omitted). After determining whether the right of access arises under the common law or the First Amendment,

> a district court must then weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

<u>Va. Dep't of State Police</u>, 386 F.3d at 576 (citation omitted); <u>see also</u> <u>Rushford</u>, 846 F.2d at 253−54.

## III. <u>DISCUSSION</u>

The parties have submitted a total of six motions to seal, (Docs. 613, 621, 626, 641, 645, 647). Each motion requests that this court seal or redact the parties' confidential business information. All six of these motions seek to seal information either filed in connection with, or orally argued in connection with, Defendant Reynolds' Motion for Relief from Judgment pursuant to Rule 60(b). This Rule 60(b) motion and filings in support and in opposition of it clearly "play a role in the adjudicative process" and have the capacity to affect "substantive rights," because Rule 60(b) motions aim to undo or modify a prior judgment. <u>See</u> <u>In re U.S.</u>, 707 F.3d at 290; Fed. R. Civ. P. 60(b). Accordingly, the documents sought to be sealed and/or redacted are "judicial records" subject to the common

law's right of access and potentially subject to First Amendment protection.

The procedural requirements associated with motions to seal have been satisfied. The parties have filed their respective Motions to Seal in substantial compliance with Local Rule 5.4. LR 5.4.[2] The public has been given sufficient notice of the request to seal and an opportunity to challenge the request. Even the most recent motion has been on the docket for over two months. (See Doc. 647 (filed on December 9, 2024)); Stone, 855 F.2d at 181 (explaining that notice to the public may be satisfied by "docket[ing] [the motion] 'reasonably in advance of deciding the issue'" (citation omitted)); see also Branch Banking & Tr. Co. v. Hitachi Vantara Corp., No. 1:19-cv-1168, 2020 WL 13032698, at *1 (M.D.N.C. Apr. 14, 2020) ("The public has had notice of the motion to seal, since it has been on the public docket for over two months.").

### A. Plaintiff Altria's Claimed Confidential Information

Altria claims confidentiality as to Exhibit 5 of Reynolds' opening brief, (Doc. 615-5), and any information deriving from Exhibit 5. (Doc. 619 at 1.) Exhibit 5 is an amendment to a pre-

---

[2] Local Rule 5.4(c)(6) requires the submission of a "LR 5.4 Checklist and Summary Chart" within three business days of the filing of a motion to seal. This court is not able to locate this documentation in connection with the pending motions to seal. The parties should be aware and comply in the future.

existing licensing agreement between Altria and third party,
JUUL Labs, Inc. ("JUUL"). (Id. at 2.)[3] Altria seek to seal
Exhibit 5 in its entirety, as well as any references to Exhibit
5's content in the Rule 60(b) briefing and hearing transcript.
(See generally Doc. 619 (Altria supporting the sealing of this
information in Reynolds' opening brief); Doc. 621 (Altria
seeking to seal this information in its Opposition to Reynolds'
Motion for Relief from Judgment); Doc. 641 (Altria seeking to
seal this information in its Supplemental Memorandum); Doc. 647
(Altria seeking to seal this information in the Hearing
Transcript).)

Additionally, although not argued in the briefs, the
redacted versions of several of the relevant documents and
Altria's proposed redactions of the hearing transcript indicate
that Altria requests redactions of information relating to the
original Altria-JUUL Agreement, which is found at Docket Entry

---

[3] All citations in this Order to documents filed with the
refer to the page numbers located at the bottom right-hand
corner of the documents as they appear in CM/ECF

110-2. (<u>See</u> Doc. 615 at 6, 8, 20, 21, 22, 25, 26; Doc. 622 at 9, 27; Doc. 627 at 12, 15, 16; Doc. 648 at 16, 17.)[4]

## B. **Defendant Reynolds' Claimed Confidential Information**

Reynolds claims confidentiality as to Exhibit 7 of its opening brief, (Doc. 615-7), and any information related to Exhibit 7. (<u>See</u> Doc. 614 at 2.) Exhibit 7 is an intellectual property sublicense between Reynolds and JUUL. (Doc. 614 at 2; <u>see also</u> Doc. 615-7.) Reynolds seeks to seal Exhibit 7 in its entirety, as well as any references to Exhibit 7's content in the Rule 60(b) briefing and hearing transcript. (<u>See</u> Doc. 613 (Reynolds seeking to seal this information in its opening brief); Doc. 626 (Reynolds seeking to seal this information in its Reply Brief); Doc. 646 at 24, 31 (Reynolds seeking to redact language from Reynolds-JUUL Agreement from hearing transcript).)

---

[4] Further, in Altria's Supplemental Memorandum, (Doc. 642), Altria has proposed a redaction of one phrase on page 28 which relates to information discussed in Reynolds' Opposition to an Ongoing Royalty Order. (<u>See</u> <u>id.</u> at 28.) In its Supplemental Memorandum, Altria cites this quoted confidential information from "Ex. 20 at 14," (<u>id.</u>), which, according to its Exhibit Table, is Plaintiff's Memorandum in Support of its Motion for an Ongoing Royalty at Document 477, (<u>id.</u> at 4.) However, upon review of the record, this court notes that the information actually derives from Defendant Reynolds' Opposition to Altria's Motion for an Ongoing Royalty. (<u>See</u> Doc. 508 at 21.) A different court in this district has already granted a motion to seal this information, analyzing it under a First Amendment right of access standard. (<u>See</u> Doc. 579 at 18-21). Accordingly, this court is satisfied that this information may be redacted in Altria's Supplemental Memorandum, (Doc. 642).

- 11 -

### C.   <u>**Application**</u>

#### 1.   <u>**Source of the Right of Access**</u>

All of the information sought to be sealed here is submitted in support of or in opposition to a Rule 60(b) motion. Neither the Supreme Court nor the Fourth Circuit have addressed whether documents or hearings related to a Rule 60(b) motion are subject to the First Amendment's right of access. Ultimately, however, this court need not decide whether the documents or hearing are protected by the First Amendment's right of access, because even assuming the First Amendment standard applies, movants have put forth compelling interests in sealing the order and the proposed sealing is narrowly tailored such that the First Amendment right of access has been overcome. <u>See</u> <u>United States v. Doe</u>, 962 F.3d 139, 146 (4th Cir. 2020) ("Because Defendant's compelling interest in sealing the district court's order outweigh the public's interest in accessing it under either the common law standard or the more rigorous First Amendment standard, we assume without deciding that the First Amendment applies.").

#### 2.   <u>**Weighing Competing Interests**</u>

As explained above, the First Amendment right of access will only be denied "on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve

that interest." Va. Dep't of State Police, 386 F.3d at 575
(citation omitted); see also In re Wash. Post Co., 807 F.2d at
390 ("Access may be denied if 'closure is essential to preserve
higher values and is narrowly tailored to serve that interest.'"
(citation omitted)). But courts in this Circuit have recognized
that "private interests might also implicate higher values
sufficient to override . . . the First Amendment presumption of
public access." Duke Energy Carolinas, LLC v. NTE Carolinas II,
LLC, No. 3:19-cv-515, 2022 WL 1127107, at *1 (W.D.N.C. Apr. 14,
2022) (quoting Level 3 Commc'ns, LLC v. Limelight Networks,
Inc., 611 F. Supp. 2d 572, 580 (E.D. Va. 2022)). For example,
"[i]n the appropriate case, the interest in preserving the
confidentiality of sensitive business information can override
the public's First Amendment right of access." Natera, Inc. v.
NeoGenomics Lab'ys, Inc., No. 1:23-CV-629, 2024 WL 1464744, at
*2 (M.D.N.C. Apr. 4, 2024) (cleaned up) (citation omitted).

    Courts in the Middle District of North Carolina have
considered the following factors when deciding whether to grant
motions to seal based on claims of confidential business
information: 1) "whether the party has shown that the
information sought to be sealed is confidential," and if so, 2)
"whether disclosure would harm the party's competitive standing
or otherwise harm its business interests," 3) "whether the

- 13 -

motion is narrowly tailored," and 4) "whether the interests in non-disclosure are compelling and heavily outweigh the public's interest in access to the information." Id. (quotation marks and citations omitted).

This court finds Exhibit 5, which is an amendment to a licensing agreement between Altria and JUUL, and its contents, to be confidential. Altria, as the party claiming confidentiality, argues that "the entirety of the agreement is illustrative of Altria's licensing and other confidential business practices." (Doc. 619 at 7–8.) Although "[a]ttorneys' arguments in briefs are not evidence, [] their representation to the Court that documents contain confidential business information can be considered as some evidence that is weighed against competing interests." Altria Client Servs. LLC v. R.J. Reynolds Vapor Co., 2023 WL 1069744, at *2 (M.D.N.C. Jan. 27, 2023) (internal quotation marks and citations omitted). Further, Altria's Vice President, Enterprise, Strategy, Planning and New Ventures, Brian F. Blaylock, attested in a declaration that the amendment, like the original agreement, "contains sensitive commercial and financial information." (See Doc. 619-1 at 1, 2.)

This court also finds that disclosure of Exhibit 5 and/or references to its contents would "harm the party's competitive standing or otherwise harm its business interests." See Natera,

2024 WL 1464744, at *2. Mr. Blalock submitted by declaration that disclosure of the contents of this licensing agreement "could harm Altria because it would aid competitors and future business partners in competitive negotiation scenarios and may allow them to leverage such information against Altria," and "would also disadvantage Altria in future contract negotiations by revealing business and licensing strategies to the public." (Doc. 619-1 at 2.)

This court also finds Exhibit 7, which is a copy of a licensing agreement between Reynolds and JUUL, and its contents to be confidential. Exhibit 7 explicitly includes a provision whereby both Reynolds and JUUL agree to keep its terms confidential. (See Doc. 615-7 at 7.) Further, Charles A. Leyes, who is responsible for patent matters within the "Reynolds family of companies," stated in a declaration that this agreement "consists of a confidential intellectual property sublicense and discussion of its confidential terms." (Doc. 614-1 at 1-2.)

Additionally, this court finds that disclosure of Exhibit 7 and/or references to its contents would "harm the party's competitive standing or otherwise harm its business interests." Natera, 2024 WL 1464744, at *2. Leyes stated in his declaration that disclosure of the contents of this licensing agreement

- 15 -

could "aid competitors and future business partners in competitive negotiation scenarios" and "would further disadvantage Reynolds in future contract negotiations by revealing its business and patent licensing strategies to the public." (Doc. 614-1 at 2.) Additionally, Leyes attested that disclosure of this information "may be considered non-public . . . and as such could impact the share price of Reynolds's publicly traded parent company." (Id.)

This court further finds that Altria's and Reynolds' interests in keeping their respective information private is compelling. Both Exhibit 5 and Exhibit 7 are complex licensing agreements between sophisticated parties. They reveal specific terms that other companies could very well use as leverage against Altria and Reynolds respectively. See Hutton v. Hydra-Tech, Inc., No. 1:14-cv-888, 2018 WL 1363842, at *9 (M.D.N.C. Mar. 15, 2018) (finding that the interest in "preserving the confidentiality of . . . the specific purchase price paid by Altec, LLC for its acquisition of its competitor's assets" to be "sufficiently compelling to overcome the First Amendment presumptive right of access"). Additionally, the contents of Exhibits 5 and 7 would not usually be available to the public. See Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275, 2011 WL 901958, at *2 (E.D.N.C. Mar. 15, 2011) (finding that the

- 16 -

First Amendment's right of access was overcome where the information sought to be sealed was "highly sensitive financial and business information . . . which is of utmost importance to them but not generally available to the public or bearing importance to any public matters").

In weighing all of these factors, "courts consider, among other things, whether the public needs access to the evidence or briefing to understand the case and the degree of harm that disclosure would likely cause." Natera, Inc., 2024 WL 1464744, at *2. The public does, of course, have an interest in these documents, to some extent, because the Rule 60(b) motion and subsequent arguments by the parties revolve in large part around the content of these two agreements. But ultimately, these agreements do not "bear[] importance to any public matters," Silicon Knights, Inc., 2011 WL 901958, at *2, so the public's interest in them is minimal, yet the parties' interest in safeguarding this information is compelling and the potential harm to the parties is great.

Further, the motions to seal are narrowly tailored. The parties seek to seal only Exhibits 5 and 7, in their entirety, and seek to redact discrete references to confidential information throughout the briefs and hearing transcript. Accordingly, the "public has access to all non-confidential

- 17 -

information contained [in the relevant documents] because the [parties] ha[ve] filed appropriately redacted versions of the same." See <u>Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.</u>, No. 5:20-cv-46, 2020 WL 2543787, at *2 (E.D.N.C. May 19, 2020).

Although this court has considered less drastic alternatives to sealing, the parties have already redacted their filings so as to allow public access to as much information as possible without compromising sensitive business information. It is this court's view that the parties' proposed redactions reflect the least drastic alternative at this time.

Finally, as discussed above, Altria proposes redactions, from the Rule 60(b) briefing and hearing transcript, of information related to its original 2018 licensing agreement with JUUL, (Doc. 110-2). The confidentiality of this information was not addressed in the present Motions to Seal and corresponding memoranda, although Altria stated, in support of its request for this court to seal information related to the agreement's <u>amendment</u>, that "[t]he Amendment and its contents, <u>like the original Agreement</u>, are strictly confidential." (Doc. 619 at 2 (emphasis added).) Additionally, in his Declaration, Mr. Blaylock stated: "For the same reasons Altria successfully sought to maintain the original agreement under seal (<u>see</u> Dkt.

- 18 -

No. 290), the amendment contained in Exhibit 5 similarly contains sensitive commercial and financial information . . . ." (Doc. 619-1 at 2.)

It is true that this document is already filed under seal; the court that granted the motion to seal Document 110-2 stated that "[t]his Court has held that a public right of access does not generally attach to discovery motions or documents filed with discovery motions." (Doc. 290 at 11 (citation omitted).) The court then analyzed the motion to seal under the "good cause" standard of Federal Rule of Civil Procedure 26(c) for documents "where no public right of access applies." (Id.) But at this stage of litigation, the references to information from Document 110-2 are part of "judicial records or documents," and as discussed above, a public right of access applies.

Ultimately, despite Altria's failure to explain in the motions currently pending why this court should seal information related to Document 110-2, this court is satisfied that these proposed redactions are appropriate. Altria, in its earlier motion to seal Document 110-2, (Doc. 109), explained that the document includes "[Altria's] and JUUL's sensitive business information," and that "release of this information would irreparably harm both Plaintiffs and JUUL." (Id. at 8.) In light of this assertion and the aforementioned statements and

arguments that the original agreement is as confidential as the amended agreement, this court finds that the analysis as to the amended agreement applies with equal force to requests to redact information related to the original agreement.

Additionally, the public has had adequate notice of the request, because the publicly filed redacted versions of the documents at issue showed redactions with corresponding citations to Document 110-2, thereby alerting the public that the requested redacted information derived from Document 110-2. Finally, these proposed redactions are narrowly tailored and permit the public to view all non-confidential information.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Seal Opening Brief in Support of Motion for Relief from Judgment and Ongoing Royalty Order and Request for Indicative Ruling and Exhibits 5 and 7, (Doc. 613), Plaintiff's Motion to Seal Unredacted Opposition to Motion for Relief from Judgment, (Doc. 621), Defendant's Motion to Seal Reply Brief in Support of Motion for Relief from Judgment and Ongoing Royalty Order and Request for Indicative Ruling, (Doc. 626), Plaintiff's Motion to Seal Unredacted Supplemental Memorandum in Opposition to Motion for Relief from Judgment or Order, (Doc. 641), Defendant's Motion to Seal the Hearing Transcript for the Motion for Relief from Judgement and Ongoing Royalty Order and Request for

- 20 -

Indicative Ruling (DKT. 638), (Doc. 645), and Plaintiff's Motion to Seal the October 29, 2024 Hearing Transcript for the Motion for Relief from Judgment and Ongoing Royalty Order (Dkt. 638), (Doc. 647), are **GRANTED.**

**IT IS FURTHER ORDERED** that Documents 615, 622, 627, and 642 shall remain **SEALED.** With respect to Document 638, the hearing transcript, the parties are directed to confer and submit a transcript fully redacted as agreed upon. If the parties are not able to agree, this court will schedule a hearing.

This the 25th day of February, 2025.

_____
United States District Judge